**EXHIBIT E**

**Westlaw.**

1996 WL 328596                                                                                   Page 1
1996 WL 328596 (D.Del.)
**(Cite as: 1996 WL 328596 (D.Del.))**

**H**
Only the Westlaw citation is currently available.

United States District Court, D. Delaware.

PURSUIT ATHLETIC FOOTWEAR, INC.,
Plaintiff,
v.
SAVE POWER LIMITED, Extravest Holdings Limited, Silver Eagle Holdings Limited, and The Grande Holdings Limited, Defendants.

**Civ. A. No. 96-40 MMS.**

June 7, 1996.

Edward M. McNally, Kent A. Jordan, and John D. Demmy, Morris, James, Hitchens & Williams, Wilmington, Delaware, for plaintiff.

Laura Davis Jones, and Janet Z. Charlton, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware (Alan W. Harris, and John C. Wynne, Andrews & Kurth L.L.P., Dallas, Texas, of counsel), for defendants.

*MEMORANDUM OPINION*

MURRAY M. SCHWARTZ, District Judge.

I. Introduction
*1 Before the Court is the motion of defendants Save Power Limited ("Save Power"), Silver Eagle Holdings Limited ("Silver Eagle"), Extravest Holdings Limited ("Extravest"), and The Grande Holdings Limited ("Grande") (collectively, "defendants") to transfer venue ("Motion to Transfer") of the pending Adversary Proceeding which has been filed by plaintiff Pursuit Athletic Footwear, Inc. ("Pursuit" or "plaintiff"). Docket Item ("D.I.") 6. Defendants have moved to transfer this Adversary Proceeding to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a), the general transfer statute, and 28 U.S.C. § 1412, the transfer statute specifically applicable to proceedings under Chapter 11 of the Bankruptcy Code. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157, and venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409(a). For the reasons set forth below, defendants' Motion to Transfer will be granted.

II. The Parties

Pursuit is a Delaware corporation with its principal place of business in Tarrant County, Texas. D.I. 13 at ¶ 1 (First Amended Complaint ("Complaint")), ¶ 1; D.I. 8, Exhibit ("Exh.") 6, at ¶ 2. Pursuit is engaged in the business of selling athletic footwear. D.I. 13 at ¶¶ 8-9. Riddell Athletic Footwear, Inc. ("Riddell") is Pursuit's affiliated, non-operating holding company, and while not a party to this Adversary Proceeding, filed for bankruptcy protection simultaneously with Pursuit in the Bankruptcy Court for the District of Delaware, the court in which this Adversary Proceeding was initially filed. Riddell is a Nevada corporation with its principal place of business in Texas. Riddell is a leading manufacturer of football helmets. *Id.* ¶ 8. Pursuit is wholly owned by Riddell, and is the licensee of the "Riddell" trademark (the "Riddell License"), which has been fundamental to Pursuit's business. *Id.* Pursuit's business plan was to combine the valuable Riddell trademark with moderately priced athletic shoes for ultimate use by consumers. *Id.* ¶¶ 8-9.

Save Power is a Hong Kong corporation with its principal place of business in Kowloon, Hong Kong. Save Power is engaged in the business of manufacturing and supplying athletic shoes, and conducts its business throughout the United States. *Id.* ¶ 2. Extravest is a Nevada corporation with its principal place of business in Farmers Branch, Texas. *Id.* ¶ 3. Extravest serves as a collection agent on behalf of Save Power under the agreement which has spawned the dispute between the parties to this litigation. D.I. 13, Exh. A. Silver Eagle is a Bermuda corporation with its principal place of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1996 WL 328596  
1996 WL 328596 (D.Del.)  
**(Cite as: 1996 WL 328596 (D.Del.))**

Page 2

business in Hong Kong. Complaint, ¶ 4. Silver Eagle owns 100% of the stock of Save Power and Extravest. *Id.* ¶ 4. Grande is a Cayman Islands corporation with its principal place of business in Hong Kong. *Id.* ¶ 5. Grande owns a controlling interest in Silver Eagle. *Id.*

### III. Factual Background

**\*2** The controversy between the parties has its genesis in a Finance and Security Agreement (the "Finance Agreement"), entered into by Pursuit, Save Power and Extravest, dated February 15, 1994. D.I. 13, Exh. A. Under the terms of the Finance Agreement, Save Power contracted to provide both working capital and athletic footwear to Pursuit. *Id.* Pursuit acknowledged indebtedness to Save Power of $23 million, and received an additional loan of approximately $5 million, the total amount of indebtedness never to exceed $28 million without Save Power's consent. *Id.* The proceeds from the sales of Pursuit's shoes were to be paid to any "Senior Lender," as defined, who would then pay Save Power through its collection agent, Extravest. *Id.* In return for the financing commitment, Save Power received a senior lien on the Riddell License and a second lien on Pursuit's accounts receivable and inventory. *Id.*

Contemporaneously with the execution of the Finance Agreement, Save Power, Pursuit and Heller Financial, Inc. ("Heller"), a California-based commercial lender, entered into an agreement whereby further financing would be provided to Pursuit from Heller in return for a senior lien on Pursuit's accounts receivable and inventory (the "Subordination Agreement"). D.I. 13, Exh. B. Save Power agreed to subordinate $20 million of its outstanding indebtedness and its security interest in the collateral in order to facilitate further funding of Pursuit by Heller. *Id.* Under the Subordination Agreement, Save Power may not exercise its rights of foreclosure as long as any "Senior Debt," as defined therein, remains unpaid. *Id.* Pursuit's customers were to pay Heller directly, and Heller, in turn, was to apply a portion of the payments to Pursuit's indebtedness, and the remainder to Extravest on behalf of Save Power. *Id.*

Troubles began, however, even before the Finance Agreement was executed and implemented.

Because the parties dispute the facts surrounding the breaches of contract alleged by each, both accounts will be given. Pursuit alleges that labor difficulties at the Save Power/Silver Eagle production facilities caused a disruption in the production of shoes. Complaint, ¶ 11. At the same time, Pursuit alleges that defendants were of questionable financial stability, which seriously impaired their ability to provide working capital according to the Finance Agreement. *Id.* ¶ 12. Notwithstanding these alleged impediments, Save Power entered into the Finance Agreement without disclosing them to Pursuit, and a short time thereafter, Save Power failed to deliver shoes to Pursuit in accordance with the Finance Agreement, and of the shoes Save Power did deliver, many were of dubious quality. *Id.* ¶¶ 11-15. Pursuit alleges that defendants began to assume control over the Pursuit operations with the intent to cause Pursuit to default on its royalty obligations to Riddell, at which point, defendants would foreclose upon the Riddell License. *Id.* ¶¶ 16-19. However, the Finance Agreement contained a provision precluding Save Power from foreclosing on the Riddell License when any Senior Lender remains unpaid. *Id.* ¶ 20. Pursuit alleges that Heller, as Senior Lender, was still owed money from Pursuit, and thus foreclosure was an unavailable option for Save Power. Pursuit further alleges that defendants exerted pressure on Heller to not renew the financing arrangement with Pursuit. Heller acceded to that pressure. *Id.* ¶¶ 21-22. Left without financing, Pursuit was forced to seek financing elsewhere, and was able to obtain refinancing of the loan with Syntek Finance Corporation ("Syntek"), a commercial lender, whereby Syntek purportedly assumed the rights and obligations of Heller as Senior Lender under the Subordination Agreement. *Id.* ¶ 23.

**\*3** Defendants present a different version of the facts. Defendants' position is that Pursuit exceeded the maximum indebtedness of $28 million allowable under the Finance Agreement, which had the effect of terminating Save Power's obligations to provide working capital and supply shoes. D.I. 8, Exh. 6, ¶¶ 10-11. [FN1] Defendants also take the position that Heller, as Senior Lender, had been fully repaid and therefore, under the Finance Agreement, all customer payments were to be paid directly to Extravest on behalf of Save Power. *Id.* ¶

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1996 WL 328596  
1996 WL 328596 (D.Del.)  
**(Cite as: 1996 WL 328596 (D.Del.))**

Page 3

13. Rather than allow the customer payments to go to Save Power through Extravest, as provided in the Finance Agreement, Pursuit wrongfully diverted the payments to itself. *Id.* This act, among others, constituted a default under the Finance Agreement, which triggered the rights of Save Power to foreclose on its collateral. *Id.* ¶¶ 16-18.

Pursuit and Riddell brought a state civil action in the 236th Judicial District Court of Tarrant County, Texas on May 26, 1995, raising several claims against Save Power, Extravest, Silver Eagle and Grande. [FN2] The complaint alleged the following causes of action: (1) a declaration that the financing provided by Syntek is Senior Debt, as that term is defined in the Finance Agreement, that Syntek is a Senior Lender under the Finance Agreement, and that Save Power's liens are subordinated to the indebtedness resulting from the refinancing of the loan by Syntek; (2) breach of contract by reason of Save Power's failure to provide adequate working capital, failure to timely deliver athletic shoes, and delivering of defective athletic shoes; (3) tortious interference with contractual and business relations among Pursuit, Riddell and Heller; (4) economic duress and breach of duty of good faith and fair dealing; and (5) attorneys' fees.

Save Power removed the action to the Northern District of Texas, Fort Worth Division, on the grounds of diversity jurisdiction (the "Fort Worth Action"). [FN3] Save Power also filed a counterclaim after removal. D.I. 8, Exh. 6. Save Power sought (1) damages for breach of contract due to Pursuit's failure to pay amounts owed and failure to recognize Save Power's security interests under the Finance Agreement; (2) injunctive relief prohibiting Pursuit from selling, transferring or otherwise disposing of its assets and from collecting or converting Save Power's collateral; and (3) a declaration that Pursuit is in default of the Agreement, which default allows Save Power to take possession of its secured collateral. Finally, Save Power sought the right to judicially foreclose on that collateral. *See id.*

On August 21, 1995, Save Power filed a complaint in the Northern District of Texas, Dallas Division, against Ernest Wood, Jr., Harry D. Wood, Linda B. Wood, Stanley Wood, High Five Athletic, Inc., Stan's Sports Center, Inc. and E. Wood & Associates, Inc. *See Save Power Ltd. v. Wood,* Civil Action No. 3-95-CV-1811-H (the "Wood Action"); D.I. 8, Exh. 7. The action was brought against these defendants who were acting as directors and officers of Pursuit and other related sporting goods retailers. The gravamen of the complaint was a claim for breach of fiduciary duty, fraudulent conveyances from Pursuit to the sports retailers, and other equitable grounds. *See id.* Save Power's theory centered on the alleged misappropriation and diversion of funds from Pursuit by its directors and officers, facilitated by their positions as directors and officers, to the detriment of Save Power, who continued to provide funding pursuant to the Finance Agreement. This action was transferred from the Dallas Division to the Fort Worth Division of the Northern District of Texas by Order dated August 28, 1995, D.I. 8, Exh. 12, because of the pendency of the Fort Worth Action. Judge Terry R. Means, before whom the Fort Worth Action was pending, ordered consolidation of the cases by Order of August 31, 1995. D.I. 8, Exh. 14.

*4 On September 11, 1995, Save Power filed a complaint in the Fort Worth Division of the Northern District of Texas against Syntek, requesting a declaration that Save Power holds a perfected security interest under the Finance Agreement that is superior to that of Syntek; that Save Power is entitled to foreclose on its security interest in the Pursuit assets; and that Syntek does not possess any rights under the Subordination Agreement. D.I. 8, Exh. 17. *See Save Power Ltd. v. Syntek Finance Corp.,* Civil Action No. 495-CV-665-A (the "Syntek Action").

On November 3, 1995, Pursuit and Riddell filed voluntary petitions for protection pursuant to Chapter 11 of 11 U.S.C. § 101 *et seq.* in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Proceeding"), and continued to operate the business as debtors in possession under 11 U.S.C. §§ 1107 and 1108. D.I. 20, Exh. 2 at ¶ 1. Pursuit contemporaneously filed the present Adversary Proceeding, Adv. Pro. No. A-95-100, in the Bankruptcy Court, naming Save Power, Extravest, Silver Eagle and Grande as defendants. *See* Complaint. By joint stipulation, the parties agreed to Withdraw the Reference of the Adversary Proceeding to the Bankruptcy Court, and an Order Withdrawing the Reference was entered on

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1996 WL 328596 <span style="float:right">Page 4</span>
1996 WL 328596 (D.Del.)
**(Cite as: 1996 WL 328596 (D.Del.))**

February 20, 1996. D.I. 3.

In its complaint, Pursuit alleges that Save Power (1) breached its contractual obligations to provide adequate working capital and supply products; (2) made false statements and omitted material facts during the negotiations of the Finance Agreement, thereby fraudulently inducing Pursuit to enter into the Finance Agreement; (3) made misrepresentations which caused Pursuit to enter into the Finance Agreement; (4) exercised dominion and control over Pursuit, assuming fiduciary obligations to Pursuit which it breached; (5) affiliates aided and abetted the breach of fiduciary duties; (6) engaged in inequitable conduct for which equitable subordination of Save Power's liens is appropriate; (7) tortiously interfered with the Subordination Agreement between Heller and Pursuit, as well as contracts between Pursuit and its customers; (8) tortiously interfered with prospective economic advantage; (9) benefitted from a lien fraudulently conveyed, in that Pursuit did not receive adequate consideration therefor; and finally, Pursuit sought a declaration that Save Power may not foreclose on the Riddell License or any other asset so long as any Senior Debt remains outstanding.

Defendants filed the present Motion to Transfer the Adversary Proceeding to the Fort Worth Division of the Northern District of Texas. Defendants argue that (1) all parties, except those in the Far East, are located in Texas, while none have any substantive connection with Delaware; (2) the vast majority of relevant witnesses and documents are located in Texas, not Delaware; and (3) the Adversary Proceeding raises claims which arise out of the same facts and circumstances that are the subject of the Fort Worth Action, which has already been significantly advanced. D.I. 7. Pursuit has opposed the Motion to Transfer, arguing that the interests of justice disfavor transfer in that (1) there is a presumption against transfer in a bankruptcy case; (2) Pursuit is financially unable to retain Texas counsel; (3) Save Power unnecessarily delayed in filing this motion; (4) the balance of convenience does not favor Texas because (a) the locations of witnesses and documents are not in Texas; (b) plaintiff's choice of forum should be accorded deference; and (c) and the situs of the events giving rise to the claims and applicable law does not favor Texas; and finally, (5) the Texas District Court lacks jurisdiction over the Fort Worth Action, which was removed from state court, and thus the pendency of that case does not warrant transfer. D.I. 12.

### IV. Analysis

**\*5** This analysis begins with the language of the transfer statutes, 28 U.S.C. §§ 1404(a) and 1412, both of which provide for transfer of venue upon fulfillment of certain conditions. The general transfer statute found at section 1404(a) provides:
> For the convenience of the parties and the witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

The transfer statute governing bankruptcy matters, found at 28 U.S.C. § 1412, provides:
> A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

The decision to transfer venue under either section 1404 and 1412 has been determined to turn on the same issues. *In re Emerson Radio Corp.*, 52 F.3d 50, 55 (3d Cir. 1995) ("[S]ection 1412 largely include[s] the same criteria for transfer of cases as section 1404(a), *i.e.*, 'the interest of justice' or 'the convenience of the parties' ...."). The only factor not expressly listed in section 1412 is the convenience of witnesses factor. [FN4] However, courts which use section 1412 to determine the transfer motion subsume the convenience of witnesses inquiry into the convenience of the parties inquiry. See, e.g., *In re Oklahoma City Assocs.*, 98 B.R. 194, 199 (Bankr. E.D. Pa. 1989); *In re Indus. Pollution Control, Inc.*, 137 B.R. 176, 181 (Bankr. W.D. Pa. 1992). [FN5]

In *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), the Third Circuit Court of Appeals listed a number of factors which have been deemed relevant to this inquiry, beyond those enumerated in the statute itself. The factors listed by the *Jumara* court are set forth as follows:
> In ruling on § 1404(a) motions, courts have not limited their consideration to the three

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1996 WL 328596  
1996 WL 328596 (D.Del.)  
**(Cite as: 1996 WL 328596 (D.Del.))**

Page 5

enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." While there is no definitive formula or list of factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a).

The private interests have included: plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses -- but only to the extent that witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

The public interests have included: the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases.

*6 *Id.* at 879-80 (citations omitted). For analytical clarity, those factors set forth by the Third Circuit appellate court which are found in the statute itself will be discussed under separate headings. All other relevant considerations will be addressed under the broad interests of justice inquiry.

A. *Convenience of Parties*

A brief review of the parties and their respective citizenships indicates a preference for this litigation to proceed in the Northern District of Texas. Pursuit maintains its principal place of business in Tarrant County, Texas. The fact that Texas is Pursuit's "home turf" suggests that it would be a more appropriate forum for the litigation, given that all its officers, directors, employees and other individuals with pertinent knowledge are located in the same state. D.I. 8 at A-2-3 (Declaration of John C. Wynne ("Wynne Decl.")). Defendants Save Power, Silver Eagle and Grande all maintain their principal places of business in Hong Kong, a location geographically remote from both Texas and Delaware. Litigation in the United States, regardless of the location, would presumably be inconvenient for the Hong Kong defendants in all respects: thus, the convenience of the parties factor with respect to these defendants does not cut strongly in either direction. However, defendant Extravest maintains its principal place of business in Dallas County, Texas. With respect to Extravest officers, directors and employees acting on behalf of the company, Texas would be a more convenient forum. Therefore, on balance, the convenience of the parties factor weighs somewhat in favor of transfer to Texas.

B. *Convenience of Witnesses*

The convenience of witnesses factor overwhelmingly favors transfer of this action to Texas. The witnesses with information from Pursuit include Ernest Wood, Chairman of the Board of Directors; Harry Wood, President; Linda Wood, former Vice President; Jeffrey Mattich, Chief Financial Officer; Joe McCarthy, Credit Manager; Michael Cahill, Vice President of Operations; Herman Franke, collections manager; Holly Ramone, financial assistant; and Sandy Aguilar, accounts payable. D.I. 8 at A-3 (Wynne Decl.). All of these witnesses are located in Texas. Other Pursuit witnesses are Stanley Wood, who resides in Oklahoma; Fred Brooks, a consultant who resides in Connecticut; and Arthur Tse, a Director, who resides in Hong Kong. *Id.* As to the majority of these witnesses, litigation in Texas would be vastly more convenient.

In addition to Messrs. Wood, Mattich, McCarthy and Cahill, Save Power's witnesses may include the following witnesses residing in Hong Kong: Yvonne Ho, Silver Eagle Managing Director; Charles Chan, assistant financial controller; and S.Y. Lee, Silver Eagle Board Member. *See, e.g.,* D.I. 8, Exh. 15. Additionally, Christopher Ho, Silver Eagle Chairman of the Board, and Rose Kong, Senior Manager of Special Projects, both of whom will be witnesses, reside in Singapore. *See id.* By Pursuit's own admission, Rose Kong, who will

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1996 WL 328596  
1996 WL 328596 (D.Del.)  
**(Cite as: 1996 WL 328596 (D.Del.))**

Page 6

likely be an important witness for Save Power, maintains an apartment in Dallas and spends most of her time there. D.I. 8, Exh. 10 at 3. With respect to these witnesses, with the exception of Rose Kong, litigation in Delaware would not be any more or less convenient than in Texas.

*7 Third party witnesses likely to be called include the following witnesses located in Texas: Terry Schumate, an officer of International Health Products, the one-third owner of Pursuit's parent and Syntek; Scott Miller, former Syntek officer; Gene Philips, a principal behind International Health Products and Syntek; Steve Winarcyzk, former Vice President of Finance for Extravest; and Anita Stacey, former product development manager for Pursuit. Additional third party witnesses include Joe Grosz, from New York; Rob Christy, located in Hong Kong; and Harry Friedman of Heller, located in California. D.I. 8 at A-3 (Wynne Decl.). As to the majority of these third party witnesses, litigation in Texas would be more convenient.

The overwhelming majority of these witnesses are in Texas. It is beyond dispute that litigating this matter in Texas will be more convenient for these Texas-based witnesses. Pursuit dismisses this fact with the self-serving statement that "no witness will be more inconvenienced by trying this case [in Delaware], except possibly Mr. E. Wood and other Pursuit employees. That, however, is not Save Power's problem." D.I. 12 at 22. Whether Save Power need concern itself with Pursuit's witnesses is not the issue: the Court must determine whether the convenience to *all* witnesses weighs strongly in favor of a transfer. The Court finds that it does.

The Court also notes that at least at some point, Pursuit was in agreement with this Court's belief that the convenience of witnesses factor favors the Northern District of Texas. On the issue of proper forum in the Fort Worth Action, Judge Means had requested briefing on the applicability of the forum selection clause of the Finance Agreement, which provided that New York would be the appropriate forum. See D.I. 8, Exh. 10. Pursuit submitted a memorandum arguing that the forum selection clause should not be enforced for "compelling" and "countervailing" reasons, stating that "all of the Plaintiffs' choice of forum is the Northern District of Texas, and the convenience of the parties and witnesses require the forum to be the Northern District of Texas." D.I. 8, Exh. 10 at 2. The claims in the Fort Worth Action, which has been administratively closed due to the pendency of the Bankruptcy Proceeding, and the claims in this Adversary Proceeding are, for all intents and purposes, identical. [FN6] *Compare,* Complaint, D.I. 13 at B-1, *with* Fort Worth Action Complaint. Thus, many of the witnesses will also be identical. With respect to the Fort Worth Action, Pursuit observed:

> In the Riddell case, [FN7] the witnesses for Plaintiffs will be Ernest Wood, Jr., Jeffrey Mattich, Harry Wood, Frederic Brooks, Joseph McCarthy, David Sheridan and possibly Linda Wood. All of these individuals with the exception of Frederic Brooks are residents of Dallas County, Texas. Frederic Brooks is a resident of Connecticut.
> The main witnesses for Defendants in the Riddell case will be Rose Kong, Yvonne Ho and Carmen Eggleston. Carmen Eggleston is an expert witness for Defendants and she resides in Texas. Yvonne Ho is a resident of Hong Kong. Rose Kong, although legally a resident of Hong Kong, maintains an apartment in Dallas and spends most of her time in Dallas.
> *8 Extravest Holdings Limited, one of the Defendants in the Riddell case, is a Nevada corporation with its principal place of business in Dallas, Texas.

* * *

> In the case brought by Save Power [FN8], Defendants Linda Wood, Ernest Wood and Harry Wood reside in the Northern District of Texas. Defendant Stanley Wood is a resident of Tulsa, Oklahoma. Defendant High Five Athletic Shoe Warehouse, Inc. is located in Dallas, and Defendant Stan's Sports Center, Inc. is located in Tulsa.

D.I. 8, Exh. 10 at 2-3.

Pursuit continued in its argument by stating that it would be more convenient for the witnesses for *both* parties to the Fort Worth Action, as well as the Wood Action, if the case were tried in Texas:

> Since all of Plaintiffs' major witnesses in the Riddell case, with the exception of Frederic Brooks, live in the Northern District of Texas,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1996 WL 328596                                                                                    Page 7
1996 WL 328596 (D.Del.)
**(Cite as: 1996 WL 328596 (D.Del.))**

> *obviously, the convenience of Plaintiffs' witnesses would be best served by leaving the case in the Northern District of Texas.*
> In the suit brought by Save Power, all of the individual defendants, with the exception of Stanley Wood who lives in Oklahoma, live in Texas. *Obviously, the convenience of these Defendants would be served by leaving the case in Texas.*
> Additionally, Rose Kong, the most important witness for both Save Power and the other Defendants in the Riddell case, maintains an apartment in Dallas. The office of Defendant Extravest Holdings Limited in also located in Dallas.

*Id.* at 5-6 (emphasis supplied). Pursuit concluded its memorandum by capaciously stating:

> Since there is absolutely no connection between the State of New York and either the Riddell case or the case brought by Save Power, and *since all parties and witnesses would be greatly inconvenienced rather than convenienced by transfer of this case to New York, the case should remain in the Northern District of Texas. Also, to require Riddell and Pursuit whose officers, directors, employees, warehouse and office are all located in Tarrant County and Dallas County, to go to New York to litigate this matter would be unjust and unreasonable.*

*Id.* at 6-7 (emphasis supplied).

Pursuit's argument has been quoted extensively to illustrate that the concerns about the virtual absence of a connection of the Fort Worth Action to any forum *other* than the Northern District of Texas, and the correlative inconvenience and expense of having to travel out-of-state, are concerns which are equally weighty in the present Adversary Proceeding. Pursuit has not provided any reason why the same concerns which prompted its desire to remain in Texas in the Fort Worth Action would not also be present in litigating this matter in Delaware. The only difference which Pursuit highlights allegedly favoring litigating the matter in Delaware is the fact that at this point, Pursuit's documents are located in Delaware, pursuant to Save Power's document request, an allegation Save Power denies. *See* D.I. 20 at C-3, ¶ 3 ("The fact of the matter is that Save Power never requested that the documents be shipped to Delaware and, indeed, would not have done so, as the counsel handling the Bankruptcy Proceeding and [this action] are in Texas.") (Second Declaration of John C. Wynne ("Second Wynne Decl.")).

*9 This factor, assuming *arguendo* that it is true, does not overcome the substantial inconvenience to the parties and witnesses so carefully laid out in Pursuit's memorandum submitted in connection with the Fort Worth Action. With respect to convenience of witnesses, Pursuit merely argues that defendants failed to show that any key witnesses "will fail to appear in Delaware" and failed to explain "what exactly it is that the Save Power witnesses who live in Texas will say that is so important." D.I. 20 at 21. In a footnote, Pursuit obliquely notes that "[t]he Pursuit witnesses will all come to Delaware to testify." *Id.* at n.11. Pursuit, however, confuses the issue of convenience with that of compulsory attendance: that the witnesses will appear does *not* mean that their appearance is convenient, or more convenient in one location than in another. At any rate, Pursuit certainly appeared to appreciate the nature of Save Power's witnesses' testimony when it authored its memorandum in the Fort Worth Action. To the extent that Pursuit still remains unclear, defendants have provided explicit record evidence detailing the subject matter of each of their witnesses' proposed testimony. *See* D.I. 13, Exh. 15 (Rule 26(a)(1) Initial Disclosures) [FN9]; D.I. 20 at C-9, ¶¶ 21-23 (Second Wynne Decl.).

C. *Interests of Justice*

Defendants argue that the interests of justice factor weighs in favor of transfer. Defendants argue that plaintiffs' first choice of forum, *i.e.* the situs of the Fort Worth Action, was in the Northern District of Texas, and therefore, plaintiffs' choice of forum in this action, raising substantially similar claims, deserves little weight. Defendants also argue that this litigation has no connection with Delaware, whereas the interest in litigating in Texas is substantial, given the fact that related actions are pending in Texas. The Court agrees. The Fort Worth Action had been pending in the Northern District of Texas since August, 1995, a period of time in which several motions were filed, orders were entered and hearings were held. As Bankruptcy Judge Balick noted, "Judge Means has

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1996 WL 328596  
1996 WL 328596 (D.Del.)  
**(Cite as: 1996 WL 328596 (D.Del.))**

Page 8

already heard testimony on the merits of the allegations and issued a 15 page decision. He has thus advanced significantly along the judicial learning curve." D.I. 8, Exh. 1 at 10. As noted above, the issues before Judge Means in the Fort Worth Action are virtually indistinguishable from those in the present case.

Further supporting this conclusion is the fact that the related Syntek Action was transferred to Judge Means, who then ordered the two actions consolidated, because of the similarity of parties and issues and resultant savings of judicial resources. Denying this Motion to Transfer would necessarily result in duplicative proceedings and a waste of judicial resources. *See Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); *see also Smithkline Corp. v. Sterling Drug, Inc.,* 406 F. Supp. 52, 55 (D. Del. 1975) ("One of the prime components of the 'interest of justice' is the maintenance of sound judicial administration. Central to efficient and effective judicial administration is a policy, implied in section 1404(a), of proper conservation and utilization of judicial resources.") (citations omitted). Another consideration motivating this conclusion is the specter of inconsistent judgments. There is a very real possibility that the claims raised in the Fort Worth Action could yield a certain result, while those very same claims could yield a different result in this Court. The possibility of inconsistent verdicts further weighs in favor of transfer.

*10 Pursuit argues that the interests of justice would not be served by transfer to Texas because it would be unable to retain counsel in Texas to litigate this matter there, as it lacks the funds necessary to pay such counsel. However, over $800,000 of attorneys' fees have already been expended in connection with the Fort Worth Action. *See* D.I. 8 at A-1-2 (Wynne Decl.). Further, Pursuit has applied in the Bankruptcy Court for authorization to retain different Texas counsel. Save Power has not objected to Pursuit's retention of Texas counsel, but opposes the use of collateral to pay that counsel. In answer to Pursuit's argument,

this Court is confident that the Bankruptcy Court will rule on Pursuit's request for authorization to retain Texas counsel in a manner consistent with the merits as presented to that court.

Pursuit also argues that defendants delayed in filing the Motion to Transfer, which prejudiced Pursuit to an extent where it would be "just plain unfair" to transfer the case to Texas. *See* D.I. 12 at 19. Defendants respond that they made it clear "from the outset of the filing made in this [Action] that [they] considered Delaware to be an improper, inconvenient forum and that Save Power would soon be filing a Motion to Transfer." D.I. 20, at C-3, ¶ 5 (Second Wynne Decl.). Furthermore, nothing in the record indicates that defendants engaged in any dilatory tactics which would make it inequitable to transfer this action to Texas.

Pursuit argues that because Save Power has only moved for transfer of the Adversary Proceeding, rather than the entire Bankruptcy Proceeding, which is still pending in the Bankruptcy Court, there is a presumption against transfer and in favor of keeping the entire case in the same locus of the Bankruptcy Proceeding. However, at present, the Bankruptcy Proceeding and the Adversary Proceeding are already separate and distinct. Pursuit agreed to Withdraw the Reference to the Bankruptcy Court for this Adversary Proceeding. Thus, Pursuit has already agreed to litigate these matters separately, and there are now two courts which must familiarize themselves with the issues and facts presented and render decisions on the merits. Secondly, to the extent there exists a "presumption" against transfer of an adversary proceeding away from the district where the bankruptcy proceeding is pending, the analysis is quite different where related proceedings are pending in the proposed transferee forum, and most of the relevant witnesses are located in that forum. *See In re Leedy Mortgage Co.,* 62 B.R. 303 (Bankr. E.D. Pa. 1986) (adversary proceeding transferred away from district in which bankruptcy proceeding was pending because most of the witnesses were situated in the proposed transferee forum). In conclusion, the Court finds that the interests of justice favor transfer to the Northern District of Texas.

V. Conclusion

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1996 WL 328596
1996 WL 328596 (D.Del.)
**(Cite as: 1996 WL 328596 (D.Del.))**

Page 9

The balance of considerations relevant to this transfer of venue issue weighs in favor of transfer to the Northern District of Texas. Accordingly, defendants' Motion to Transfer will be granted. An appropriate order will be entered.

>    FN1. Save Power stated its position in a prior filing with the United States District Court for the Northern District of Texas, in a counterclaim to an action brought by Pursuit. *See infra.* The Court has set forth Save Power's contentions solely to provide context for this Adversary Proceeding.

>    FN2. Because none of the parties included the complaint in the state court action as part of the record, the Court takes judicial notice, pursuant to Federal Rule of Evidence 201, of the complaint, filed on May 26, 1995, in the 236th Judicial District in the District Court of Tarrant County, Texas; removed to the Northern District of Texas, Fort Worth Division, on August 11, 1995. *See Riddell Athletic Footwear, Inc. v. Save Power Ltd.,* Civil Action No. 4-95-CV-594-Y.

>    FN3. Pursuit and Riddell promptly filed a motion to remand the action to state court on the ground that the district court did not have diversity jurisdiction over the parties. D.I. 8, Exh. 20. Briefing on the motion to remand has been completed, but no disposition of the motion had occurred before the case was administratively closed on November 22, 1995, due to the pendency of the Bankruptcy Proceeding. *See* D.I. 8, Exh. 5.

>    FN4. Also absent from section 1412 is a requirement that the proposed transferee forum be one in which the original action could have initially been brought. In this case, the petition for bankruptcy could have been filed in the Bankruptcy Court for the Northern District of Texas pursuant to 28 U.S.C. § 1408(1), and this Adversary Proceeding would similarly have been properly filed in that court pursuant to 28 U.S.C. §§ 1334 and 157. Accordingly, this difference between the statutes will not be further addressed.

>    FN5. Defendants have moved to transfer this action pursuant to both sections 1404(a) and 1412, although they argue that the appropriate transfer statute to be applied is section 1404(a). As authority for this proposition, defendants cite *Goldberg Holding Corp. v. NEP Prods., Inc.,* 93 B.R. 33, 34 (Bankr. S.D.N.Y. 1988), where the Bankruptcy Court for the Southern District of New York held that section 1404 governs transfer motions for "*related to*" actions, since section 1412, by its own terms, only governs actions *arising under* title 11. Defendants argue that this Adversary Proceeding is non-core, and therefore is a "related to" proceeding within the meaning of the Bankruptcy Code. Pursuit has not contested the transfer provision preference of defendants. Since the Third Circuit Court of Appeals has expressly held that the inquiry under both provisions is largely the same, the Court declines to address whether the action is a "core" or "related to" proceeding.

>    FN6. This Court is not the first to recognize the virtually identical nature of the claims raised in the Fort Worth Action with those raised in the present action. In ruling on motions filed in connection with the Bankruptcy Proceeding, Bankruptcy Judge Balick made the following observations about the similarity of the claims:
>    ... Pursuit has filed an adversary proceeding here with *allegations that are substantially identical to those in the [Fort Worth] action.* The complaint seeks damages based on breach of contract, fraud, breach of fiduciary duty, tortious interference. *The complaint seeks identical declaratory relief as the [Fort Worth]*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1996 WL 328596
1996 WL 328596 (D.Del.)
(Cite as: 1996 WL 328596 (D.Del.))

Page 10

*action.* In addition, the complaint seeks to avoid the security interest as a fraudulent conveyance, and equitably subordinate the defendants' claims, liens and interests.
D.I. 8, Exh. 1 at 9 (Memorandum Opinion of Bankruptcy Judge Balick) (emphasis supplied).

FN7. Pursuit's reference to the "Riddell case" refers to the Fort Worth Action, the original action filed by Pursuit and Riddell against defendants in Texas state court, subsequently removed to the Northern District of Texas.

FN8. Pursuit's reference to the "case brought by Save Power" refers to the Wood Action, which has been transferred and consolidated with the Fort Worth Action.

FN9. The Court acknowledges that the Initial Disclosures were filed in connection with the Fort Worth Action rather than with the Adversary Proceeding. While these persons were not named in connection with this matter, given the similarity of the claims between this Adversary Proceeding and the Fort Worth Action, it is reasonable to assume that most, if not all, of these same parties will also have knowledge pertinent to the present action. *See also* D.I. 8 at A-3 (Wynne Decl.); D.I. 20 at C-9-10, ¶¶ 21-23 (Second Wynne Decl.). The Court also notes that both parties exhibit substantial agreement as to which persons will be integral to resolution of this dispute.

1996 WL 328596 (D.Del.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.