# **EXHIBIT C**

Not Reported in F.Supp.2d
2004 WL 548240 (S.D.N.Y.)
(Cite as: 2004 WL 548240 (S.D.N.Y.))

Page 1

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

FLEET CAPITAL CORP., Plaintiff,
v.
Billy J. MULLINS, Jr., et al., Defendants.

No. 03 Civ.6660(RJH)(KNF.

March 18, 2004.

*Memorandum Opinion and Order*

HOLWELL, J.

*1 Fleet Capital Corporation ("Fleet") filed this action seeking declaratory judgment and an injunction against Billy J. Mullins, Jr. and Faraway Enterprises, Inc. (collectively "Mullins"). Mullins has moved to dismiss, stay, or transfer this action. HIG Capital, LLC, HIG TestAmerica Cayman, Inc., and TestAmerica Environmental Services, LLC (collectively "HIG") have moved to intervene in the present case. Sagaponac Partners, L.P. and Marc Weisman (collectively "Sagaponac") have also moved to intervene and have submitted an opposition brief in response to Mullins's motion to dismiss, stay, or transfer this action. For the following reasons, Mullin's motion to stay the case is granted. HIG's and Sagaponac's motions are denied without prejudice.

FACTS

The following facts are gleaned from Fleet's complaint, as well as HIG's and Sagaponac's motions, and are assumed true for the purposes of resolving the present motions. *See Astor Holdings, Inc. v. Roski,* No. 01 Civ.1905(GEL), 2002 WL 72936, at *7 (S.D.N.Y. Jan. 17, 2002) ("For the purposes of deciding Defendants' motion to dismiss for improper venue or, in the alternative, to transfer the case to another judicial district, the Court must accept all of the uncontroverted allegations in Plaintiffs' complaint as true and construe all reasonable inferences in plaintiffs' favor."); *Herman v. New York Metro Area Postal Union,* No. 97 Civ. 6839(KMW), 1998 WL 214787, at *1 (S.D.N.Y. Apr. 30, 1998) ("The applicants' well pleaded allegations must be accepted as true for purposes of considering a motion to intervene, with no determination made as to the merits of the issues in dispute.").

In 1997, Sagaponac, an investment partnership, provided debt financing to a company called TestAmerica Inc. [FN1] *See* Mem. of Law in Supp. of Mot. to Intervene on Behalf of Sagaponac at 1 (hereinafter "Sagaponac Mot."). As part of the financing arrangement, Sagaponac received the right to block any sale by TestAmerica of a substantial portion of its assets. *See id.* at 2; Compl. ¶ 21.

> FN1. The name "TestAmerica" is presently found within the companies affiliated with HIG. However, that name was not associated with HIG in 1997 and, for ease of reference, the Court uses "TestAmerica" to refer to the entity, regardless of corporate form or affiliation, that owns the assets in which Sagaponac acquired an investment interest in 1997.

In 1998, Fleet entered into an agreement to provide TestAmerica with an additional $37 million in debt financing. *See* Compl. ¶ 7. TestAmerica used part of this additional financing to purchase from Mullins all the assets of Mullins Environmental Testing Company. *See id.* ¶ 10. In exchange for the assets, Mullins received, among other things, over $8 million in cash and an 8% Subordinated Convertible Note valued at approximately $2 million. *See id.* ¶ 11.

The purchase transaction was executed through a set of agreements, one of which was a Subordination Agreement signed by Mullins, Fleet, and Sagaponac. *See* Sagaponac Mot. at 3; Compl. ¶ 12. The Subordination Agreement made Mullins TestAmerica's juniormost subordinated creditor, effectively placing Mullins's right to repayment of any debt owed by TestAmerica behind Fleet's and Sagaponac's rights to repayment by TestAmerica. *See* Sagaponac Mot. at 3; Compl. ¶ 13. The Subordination Agreement also stated:
*2 ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT

MAY BE BROUGHT IN A COURT OF RECORD IN THE STATE OF NEW YORK, COUNTY OF NEW YORK, OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, THE COMPANY, THE SUBORDINATED CREDITOR AND ALL OTHER PRESENT OR FUTURE HOLDERS OF SUBORDINATED DEBT HEREBY CONSENTING AND SUBMITTING TO THE JURISDICTION THEREOF ... AND MUTUALLY WAIVE TRIAL BY JURY AND ANY CLAIM THAT NEW YORK COUNTY OR THE SOUTHERN DISTRICT OF NEW YORK IS AN IMPROPER OR INCONVENIENT FORUM OR VENUE. [FN2] Compl. ¶ 15.

> FN2. Mullins alleges that the other contracts in the set of agreements expressly provide Texas courts with exclusive jurisdiction and venue. See Mem. of Law in Supp. of Defs.' Mot. to Dismiss at 1-3 (hereinafter "Mullins Mot."). Sagaponac responds that the Subordination Agreement is the only agreement in the set signed by Mullins, Fleet, and Sagaponac and, thus, that Fleet and Sagaponac have never agreed to adjudication in a Texas forum. See Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 2 (hereinafter "Sagaponac Opp'n").

On August 10, 2001, Fleet sent a notice of default to TestAmerica, a copy of which was also sent to Mullins. Compl. ¶ 17. TestAmerica's default to Fleet resulted in a cross-default under TestAmerica's agreement with Sagaponac. See Sagaponac Mot. at 3.

In Fall 2002, HIG, a private equity management company, began looking into purchasing the assets of TestAmerica. See Mem. of Law in Supp. of HIG's Mot. to Intervene at 1 (hereinafter "HIG Mot."). HIG discovered that TestAmerica owed Fleet over $26 million. See id. at 2. HIG also discovered that TestAmerica could not sell its assets without Sagaponac's consent. See id. After extensive negotiations, HIG reached an agreement with TestAmerica, Fleet, and Sagaponac whereby, in exchange for acquiring TestAmerica's assets, HIG would pay Fleet approximately $23 million in full settlement of the debt owed by TestAmerica and Fleet, in turn, agreed that Sagaponac would be paid the remaining approximately $3 million for Sagaponac's consent to the sale of TestAmetica's assets. See id. at 2-3; Compl. ¶¶ 22-25.

On January 3, 2003, HIG consummated this agreement by wiring the agreed upon sums to Fleet and Sagaponac. See Sagaponac Mot. at 4. However, HIG's payment to Sagaponac did not reduce TestAmerica's debt to Sagaponac. See id. TestAmerica used the remaining proceeds from the sale of assets to pay off part of its debt to Sagaponac, but the debt was not fully paid off. See id. Mullins, as the most subordinated debt holder, did not receive any sums owed under the Subordinated Note. See id.

In Winter 2002, just before HIG consummated the agreement, Mullins filed suit against TestAmerica and Sagaponac in Texas state court. See id. The case was removed to the United States District Court for the Northern District of Texas. See id. The Texas district court promptly dismissed Sagaponac from the suit, upon Sagaponac's motion, for lack of personal jurisdiction. See id . Neither Fleet nor HIG were named as parties originally. See id. However, on July 17, 2003, Mullins sought leave from the Texas district court to amend his complaint to, among other things, add Fleet, Sagaponac, and HIG. [FN3]

> FN3. Mullins asserts that discovery since the Texas court's prior decision will show that the Texas court does indeed have personal jurisdiction over Sagaponac. See Defs.' Reply Br. in Further Supp. of Motion to Dismiss at 6-7, n. 6.

On September 3, 2003, Fleet filed the present action in the United States District Court for the Southern District of New York. The complaint seeks a declaratory judgment decreeing that the approximately $3 million payment to Sagaponac did not violate Mullins's rights and that the claims asserted against Fleet in Mullins's Texas action lack merit. Compl. ¶ 34. The complaint also seeks an injunction against Mullins from prosecuting any claim against Fleet related to this dispute in any action other than the present action. Compl. ¶ 35.

*3 On October 16, 2003, Mullins moved to dismiss, stay, or transfer the present action in light of the Texas action. That same day, Sagaponac moved to intervene in the present action. On October 28, 2003, HIG similarly moved to intervene in the present action.

On December 16, 2003, the Texas court granted Mullins leave to amend his complaint, and Mullins has since filed an amended complaint in that action naming Fleet, Sagaponac, and HIG as parties. On January 30, 2004, Sagaponac again moved in the Texas action to dismiss the complaint as against

Not Reported in F.Supp.2d  
2004 WL 548240 (S.D.N.Y.)  
**(Cite as: 2004 WL 548240 (S.D.N.Y.))**

Sagaponac for lack of personal jurisdiction.

## DISCUSSION
### I. *Motion to Dismiss, Stay, or Transfer*

Mullins's arguments for dismissing, staying, or transferring this case revolve around the fact that a Texas action is already pending. Mullins expounds on judicial economy, deference to the Texas federal court, the avoidance of forum shopping, the propriety of the Texas venue, and the interests of justice. [FN4] *See* Mullins Mot. at 11-16.

> FN4. Mullins also argues that defendants were not properly served. *See* Mullins Mot. at 15. Because the Court grants Mullins's motion on other grounds, the Court does not address this claim.

Fleet counters that, pursuant to the forum selection clause in the Subordination Agreement, it is contractually entitled to bring this suit in the Southern District of New York. *See* Mem. in Opp'n to Def.'s Mot. at 9-10 (hereinafter "Fleet Opp'n"). Fleet argues that "the parties freely contracted to litigate in New York and Mullins should be prevented from evading his contractual obligation by adding Fleet to a two-year-old lawsuit in Texas concerning a host of issues unrelated to the precise issue" in this suit. *Id.* at 10. Fleet also argues that this suit has "first-filed" priority over the Texas suit. *See id.* at 10-13.

In reply, Mullins argues that "the special circumstances of this case merit a dismissal or stay in favor of the Texas action". Def.'s Reply Br. in Further Supp. of their Mot. at 1 (hereinafter "Mullins Reply"). These special circumstances, Mullins argues, show that the "forum selection clause only authorizes suit in New York courts rather than providing an exclusive forum." *Id.* Furthermore, Mullins alleges that he filed for leave to amend his Texas complaint after having numerous telephone conversations with Fleet regarding the basis for his amended complaint and after providing Fleet copies of the proposed amended complaint. *See id.* at 4-5. Mullins argues that Fleet should not profit from Mullins's forthrightness by having the first-filed rule mechanically applied to favor Fleet. *See id.* at 4-6.

In a sur-reply submission, Fleet argues that this Court should deny Mullins's motion because, according to the plain language of the Subordination Agreement's forum selection clause, Mullins has waived any claim that New York is an improper or inconvenient forum or venue. *See* Pl.'s Surreply in Opp. to Def.'s Mot. at 1.

The Court finds that, according to the language of the forum selection clause, Mullins indeed has agreed to waive any claim that New York is an improper or inconvenient forum or venue. However, the Court also finds that, as Mullins contends, that same forum selection clause *"empowers* the New York courts to adjudicate this matter, but does not indicate that New York is the *exclusive* or the only appropriate forum where the case may be heard." *Credit Alliance Corp. v. Crook*, 567 F.Supp. 1462, 1465 (S.D.N.Y.1983) (emphasis in original). Thus, the Court's inquiry does not end with the language of the forum selection clause, even striking Mullins's arguments regarding the propriety of the Texas forum. While Fleet may be contractually entitled to file suit in New York, the parties to the Subordination Agreement appear not to have contracted to litigate only in New York and Mullins cannot be said to "evade his contractual obligations" solely by attempting to add Fleet as a party to a lawsuit in a different forum.

*4 The Court begins it analysis, then, by examining the relationship between this matter and the Texas litigation. Ignoring for the moment the issue of which lawsuit was filed first, it is clear this litigation is intended to shield Fleet from liability in the Texas litigation. That intent is expressly stated in Fleet's claim for relief: "By virtue of the foregoing, Fleet is entitled to a declaratory judgment providing that ... all the claims asserted by [Mullins] in their proposed amended complaint in the Texas action lack merit." Compl. ¶ 34. Thus, although the two actions may not be identical in every aspect, a decision in one would likely have *res judicata* effect in the other and, in fact, a decision in the Texas action might extinguish completely this action.

This conclusion, which suggests that the two actions should not go forward simultaneously, brings the Court to the first-filed rule. Under this rule, well established in the Second Circuit, "where two actions involve substantially the same issues, the first suit should have priority absent the showing of a balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." *Regions Bank v. Wieder & Mastroianni, PC*, 170 F.Supp.2d 436, 439 (S.D.N.Y.2001) (quotations omitted). The purposes behind this rule are to avoid duplication of judicial effort, to avoid vexatious litigation in multiple forums, to achieve comprehensive disposition of litigation among parties over related issues, [FN5] and to eliminate the risk of inconsistent judgments.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

*See id.*

> FN5. The first-filed rule may apply even if the two actions in question involve different parties. *See Regions Bank,* 170 F.Supp.2d at 441.

However, the first-filed rule is not to be applied in a mechanical way, disregarding other considerations. *See Tucker Anthony, Inc. v. Bankers Trust Co.,* No. 93 Civ. 0257(SWK), 1994 WL 9683, at *9 (S.D.N.Y. Jan. 10, 1994). The Second Circuit has cautioned courts against acting as "umpires on 'race to the courthouse' disputes," and courts, in response, have paid careful attention to a variety of factors, taken as a whole, in adjudicating such disputes. *See Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.,* 774 F.Supp. 858, 867 (S.D.N.Y.1991). Thus, in applying the rule, a court may use its discretion to dismiss, stay, or transfer a proceeding. *See Regions Bank,* 170 F.Supp.2d at 439 ("Ultimately, '[t]he decision whether or not to stay or dismiss a proceeding rests within the district judge's discretion." '); *Tucker Anthony,* 1994 WL 9683, at *9 ("[T]he decision to transfer is within the court's discretion.").

Fleet filed the present action after Mullins moved for leave to file an amended complaint adding Fleet as a party in the Texas action, but before the Texas court granted Mullins's motion. Thus, this action may be considered the first-filed with respect to Fleet. *Cf. Aerotel, Ltd. v. Sprint Corp.,* 100 F.Supp.2d 189, 195-96 (S.D.N.Y.2000) (explaining amended complaint does not relate back to filing date of original complaint in considering first-filed rule unless, *inter alia,* added party knew or should have known that, but for mistake, original complaint would have been brought against added party).

*5 However, the Court finds that there are special circumstances that justify giving priority to the Texas action despite it being the second-filed action. The Texas action has been proceeding for two years and contains issues broader than in this action. In contrast, this action has yet to even begin the discovery stage. Given the history and scope of the Texas action, it cannot reasonably be stayed in favor of this action nor transferred to this Court. These special circumstances justify giving priority to the Texas action. Having determined that this action and the Texas action are sufficiently similar so as to pose a risk of conflicting judgments and duplication of judicial efforts should both proceedings go forward simultaneously, the Court finds that the most efficient and equitable way to resolve both litigations is to stay this action.

II. *Motions to Intervene*

Mullins's opposition to the motions of HIG and Sagaponac to intervene in the present action is based on the same arguments that Mullins makes in support of the motion to dismiss, stay, or transfer this case. The crux of Mullins's arguments is that the motions should be denied so that the litigation in Texas could proceed properly and efficiently. *See* Mem. of Law in Opp'n to Mots. to Intervene at 10-15.

These arguments do not address the requirements for intervention set forth in Fed.R.Civ.P. 24(b)(2), a rule that is to be construed liberally. *See German v. Fed. Home Loan Mortgage Corp.,* 899 F.Supp. 1155, 1166 (S.D.N.Y.1995). Nor do these arguments address whether, as HIG and Sagaponac assert, the Court has supplemental subject matter jurisdiction over the claims of HIG and Sagaponac pursuant to 28 U.S.C. §§ 1332 and 1367.

Having decided to stay the present action, the Court declines to rule on the merits of HIG's and Sagaponac's respective motions to intervene. Thus, the Court denies HIG's and Sagaponac's motions without prejudice to the movants renewing their motions to intervene when the stay of the present action is lifted.

CONCLUSION

For the foregoing reasons, defendant Mullins's motion to dismiss, stay, or transfer this action [5-1] is GRANTED. Sagaponac's and HIG's motions to intervene [7-1 and 10-1, respectively] are DENIED without prejudice.

SO ORDERED.

2004 WL 548240 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

• 1:03CV06660 (Docket) (Sep. 03, 2003)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.