UNITED STATED BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                          )
                                )   Case No. 00-4397 to 00-4399
LERNOUT & HAUSPIE SPEECH        )   Adver. No. 04-54842
                                )
                    Debtor      )
                                )   November 23, 2004

TELEPHONE CONFERENCE CALL
BEFORE THE HONORABLE JUDITH H. WIZMUR
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

Scott L. Baena,                 DAVID   W. TRENCH, ESQUIRE
Litigation Trustee of the       BILZIN, SUMBERG, BAENA, PRICE &
Lernout & Hauspie Speech          AXELROD, LLP
Products N.V. Litigation        2500 First Union Financial Center
Trust                           200 S. Biscayne Blvd.
                                Miami, FL 33131-2336

Scott L. Baena,                 LISA L. COGGINS, ESQUIRE
Litigation Trustee of the       THEODORE J. TACCONELLI, ESQUIRE
Lernout & Hauspie Speech        FERRY, JOSEPH & PEARCE, P.A.
Products N.V. Litigation        824 Market Street, Suite 904
Trust                           P.O. Box 1351
                                Wilmington, DE  19899-2306

                                BRETT FALLON, ESQUIRE
                                MORRIS, JAMES, HITCHENS & WILLIAMS
                                PNC Bank Center
                                222 Delaware Avenue, 10th Floor
                                Wilmington, DE  19899-2306

Audio Operator:                 NORMA SADER

Transcribed by:                 DIANA DOMAN TRANSCRIBING
                                P.O. Box 129
                                Gibbsboro, New Jersey  08026-129
                                (856) 435-7172
                                FAX:  (856) 435-7124
                                Email:  Dianadoman@comcast.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

(Appearances continued)

SUONG T. NGUYEN, ESQUIRE
MICHAEL FLYNN, ESQUIRE
DAVIS, POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017

I N D E X

PAGE

Motion                                    3

ARGUMENT:

BY:  Ms. Nguyen                           3

BY:  Mr. Trench                           8

THE COURT:

Decision                                 19

```
 1          (Hearing in session)

 2               THE COURT:  Hello.

 3               MR. TRENCH:  Good morning, Your -- good afternoon,

 4     Your Honor.

 5               THE COURT:  Good afternoon. Mr. Trench?

 6               MR. TRACY:  Yes, Your Honor.

 7               THE COURT:  Yes, and I have Mr. Fallon, Ms. Nguyen,

 8     Mr. Flynn, Mr. Tacconelli, and Ms. Coggins.

 9               A FEMALE SPEAKER:  Good afternoon, Your Honor.

10               THE COURT:  Good afternoon.  Mr. Trench?

11               MR. TRENCH:  Yes.  I'm on speaker.  Can you hear me

12     clearly?

13               THE COURT:  Yes, I can.

14               MR. TRACY:  Okay.  Well, this I think is -- is KPMG's

15     motion.  I'm glad to present the argument in any fashion or

16     sequence you would like, but --

17               THE COURT:  But you're right.  I'll gladly hear from

18     a representative of KPMG first.  Who will speak for KPMG?

19               MS. NGUYEN:  Your Honor, this is Suong Nguyen from

20     Davis Polk on behalf of KPMG, LLP.

21               THE COURT:  Yes, Ms. Nguyen.

22               MS. NGUYEN:  We made the motion, and we're

23     respectively requesting a transfer of this case to the District

24     of Massachusetts.  The reason we're making this request is

25     because Massachusetts is where numerous cases that are related
```

Argument - Nguyen                                         5

1     to Lernout & Hauspie have been pending and continue to be

2     pending for several years now, the first case filed in 2000.

3             So when the L&H litigation trust had filed their case

4     several months ago against KPMG, U.S. and KPMG Belgium, it was

5     against this back -- backdrop of litigation that had been

6     pending before Judge Saris and also before Magistrate Judge

7     Collings in Massachusetts, and it was only by virtue of the

8     fact that Lernout & Hauspie at the time was in bankruptcy that

9     L&H was not named in those cases.

10            So the basis for our transfer is that Judge Saris and

11    Magistrate Judge Collings have familiarity with the facts and

12    issues that are overlapping with this case.  All the

13    Massachusetts cases relate to L&H's demise.  It relates to its

14    1998 and 1999 financial statements and also KPMG, U.S. and

15    KPMG, Belgium's respective role in connection with L&H's

16    bankruptcy.

17            The review of the complaint in this case as compared

18    to the complaints that have been filed in Massachusetts showed

19    that they rely on the same documents at issue, the same factual

20    allegations at issue, and an example of that relates to KPMG,

21    U.S.'s role in reviewing various Korean contracts, LDC

22    (phonetic) contracts, and similar accounting issues.

23            Massachusetts is also where the cases had been

24    transferred from both the Delaware District Court and also

25    Pennsylvania.  About two years ago, Judge Robinson from the

1    District of Delaware had transferred four cases that dealt with

2    the Dictaphone and Dragon transaction to Massachusetts, and the

3    rational for that transfer was because the other L&H related

4    lawsuits had already been pending in Massachusetts.

5          The Dragon and Dictaphone transactions are the same

6    transactions that are issue in the L&H litigation trust's

7    action against KPMG, U.S.

8          THE COURT:  What's your reaction to the plaintiff's

9    argument that the first filed rule shouldn't apply here because

10   KPMG -- there are no common parties at this point since KPMG

11   apparently has settled all of its -- all of the claims against

12   it, asserted against it in the Massachusetts actions?

13         First, with respect to the fact that KPMG, U.S. and

14   KPMG, Belgium have settled or are in the process of finalizing

15   the settlements of the Massachusetts action, it really misses

16   the point, because our basis for transfer is because

17   Judge Saris and Magistrate Judge Collings had familiarity with

18   the issues here which the trust conceived are overlapping with

19   those in this case.

20         With respect to the first filed rule and the fact

21   that they're different parties or different theories, we cited

22   numerous cases in our reply brief which show that courts have

23   -- have transferred cases where there are different parties and

24   different legal theories at issue, and, in fact, the Filler

25   case, which is the one by Judge Robinson, the District of

1   Delaware, when Judge Robinson transferred the Dictaphone and

2   Dragon cases, they dealt with different legal theories, and the

3   Baker, Filler, all those other plaintiffs were not plaintiffs

4   in the Massachusetts action.

5          THE COURT:  Uh-huh.

6          MS. NGUYEN:  So we think that the law is very clear

7   that it -- it's -- it's of no moment that the parties or the

8   legal theories in this case are -- are not the same, because

9   Judge Collings and Saris have gone through the same issues that

10  would be relevant here.  These issues, for instance, relate to

11  KPMG, Belgium's production of documents.  There's Belgium

12  secrecy issues at stake.  We -- KPMG, U.S. has also produced

13  documents in the Massachusetts case, and we had various motions

14  about the scope of our production before

15  Judge Collings already.

16          In addition, other parties, including ourselves, have

17  produced documents in the case, and those documents are

18  governed by a confidentiality agreement that Judge Collings has

19  entered.  So that if there's any disputes about the designation

20  of certain documents as confidential or transcripts of

21  depositions that would quote from those documents as

22  confidential, Judge Collings would be the one overseeing that,

23  and we expect the same issues that, you know, were presented in

24  the Massachusetts case to be presented here.

25          The other reason why Massachusetts makes sense is

1    because the trustee in this case concedes that Massachusetts is

2    the center of gravity of the alleged conduct in this case, and

3    there are numerous witnesses who are present in Massachusetts.

4    L&H's U.S. offices was in Massachusetts.  There's a claim by

5    the litigation trustee for the -- violation of the

6    Massachusetts consumer protection statute.  There's allegations

7    that the auditing functions at issue here occurred in

8    Massachusetts.

9         So I -- we think that that is the reason why several

10   months ago the trustee had initially agreed to transfer, and

11   while the trustee has a right to change its mind, we submit

12   that the basis for transfer remains the same here.

13        The last thing I would add, Your Honor, is that since

14   our transfer motion had been filed, Judge Robinson of the

15   District of Delaware had withdrawn the reference with respect

16   to a core proceeding.  It was a preference complaint that the

17   trust had filed against KPMG, U.S.  And so this suggests that

18   in this particular case, which is a noncore case dealing with

19   prepetition events, that there would also be a withdraw of the

20   reference and that this case really should probably belong on

21   the district court, and we submit it should be transferred to

22   the District Court of Massachusetts.

23        THE COURT:  Uh-huh.  Understood.  Mr. Trench, will

24   you be speaking on behalf of the -- or Mr. Tacconelli?

25        MR. TRENCH:  I will, Your Honor.  This is David

1   Trench.  I'll speak on behalf of the trustee.

2              THE COURT:  All right.  What about the jury trial

3   situation?  I didn't see that taken up in the papers.

4              MR. TRENCH:  We -- we briefly took it up, Your Honor,

5   and it was to the point that the jury trial issue is not a

6   transfer motion consideration.  The question that KPMG poses is

7   should this case be tried in Delaware or Massachusetts.  If

8   there's --

9              THE COURT:  What --

10             MR. TRENCH:  -- a right to a jury trial and the

11  Bankruptcy Court in Delaware is not empowered to conduct a jury

12  trial, then the proper remedy for the one seeking the jury

13  trial is to withdraw the reference from the Bankruptcy Court to

14  the District Court in Delaware.

15             THE COURT:  Uh-huh.

16             MR. TRENCH:  It has nothing to do with whether or not

17  this case more properly belongs in Massachusetts or in

18  Delaware.  So with respect to the issue in front of the Court

19  today, which is should the case be transferred to Delaware, the

20  fact that they have a right to a jury trial, which they have

21  not yet asserted, but the fact that they have a right to one is

22  not a factor in whether or not Massachusetts should be the

23  venue or Delaware should be the venue.

24             So I think that's a red herring, if you will.  It's

25  not something which should weigh in your determination about

Argument - Trench                                    10

1    whether or not the case should be transferred to Massachusetts.

2            THE COURT:  Help me to understand your assertions

3    regarding the Delaware nexus here.  Clearly, the bankruptcy

4    proceeding has been pending here since 2000.  That -- what

5    aspect of that or anything else should compel me to honor the

6    plaintiff's choice of forum to defer to it in these

7    circumstances?

8            MR. TRACY:  The way the rules work with respect to

9    consideration of transfer is for the Court considering the

10   transfer to look at a series of well-established factors, and

11   there's some that are outside the 12 that are listed, but the

12   very first factor is the plaintiff's choice of forum.  If the

13   plaintiff -- and here, we are the plaintiff.  If the plaintiff

14   chooses a forum that has jurisdiction, which we've done, then

15   that's to remain the forum unless there's reason shown to

16   change that.

17           Now, we did choose this forum, and we chose it for

18   several reasons.  We chose it because we appear here regularly,

19   and it's a convenient forum for us in that respect.  We chose

20   it because this claim is the largest cause of -- largest asset

21   of this estate and will affect how the estate continues to be

22   administered.

23           We also chose it because one of the factors in

24   determining whether or not a transfer should occur is the speed

25   with which cases are handled in the respective jurisdictions,

1   and the cases in Bankruptcy Court move with a certain speed

2   which is not matched in District Court anywhere by my

3   experience in this court and other Bankruptcy Courts and in

4   District Courts throughout the country, and, in fact, we

5   attached I think as an amendment or an addendum or an exhibit

6   to our motion a printout with respect to Judge Saris' average

7   time of trial.  And this is not a criticism of her.  It's just

8   a measure of the time that it takes for a case to work its way

9   through District Court as opposed to Bankruptcy Court and a

10  quick resolution of something that we have an interest in.  So

11  that's another reason why we chose this -- this forum.

12          Another reason is that under the documents which

13  authorize and empower the litigation trustee to bring this

14  action, any settlement which may be reached must be approved by

15  you.  We must bring a claim before -- file a motion before this

16  Court for approval of any such settlement.  In addition, KPMG,

17  the moving party, is a -- is an entity that's organized and

18  existing under the laws of the State of Delaware.

19          So we have used those reasons, and that's why we

20  first chose this particular venue, and with all due respect, I

21  think it is up to KPMG to say that there are compelling reasons

22  to move this from where we chose to bring the action to another

23  jurisdiction.

24          THE COURT:  Well, let's take a look at those reasons

25  from your vantage point.  You've acknowledged a substantial

 1      overlap at least in facts.  You've asserted differences in

 2      legal theories, and indeed, there are other legal theories

 3      propounded in the other actions in terms of securities fraud

 4      and the like and some of the same causes as well.

 5              What about those types of issues that have -- and

 6      nobody is talking about res judicata or collateral estoppel

 7      here.  Obviously, the trustee of L&H was not a party to, nor

 8      L&H for that matter, to anything that was decided in

 9      Massachusetts, and I don't think there is question that the L&H

10      trustee would have the opportunity to litigate any and all of

11      those questions.

12              But when we're talking about questions involving, for

13      instance, Belgium secrecy laws in connection with discovery

14      demands, when we're talking about other aspects of

15      international law that apparently have become familiar to

16      Judge Saris and Judge Collings, isn't that a -- the kind of use

17      of judicial resources that the first filed policy, whether or

18      not it applies specifically to this case, was intended to

19      foster?

20              MR. TRENCH:  I think it's very close to that,

21      Your Honor, but let me -- before I address those things

22      directly, let me make a comment about the -- the status and the

23      nature of the two cases.  Because KPMG has effectively settled

24      all of their claims and are only in the most nominal sense a

25      party in those cases, there is no common party between this

1    action and any of the pending Massachusetts actions.

2            THE COURT:  Does that matter?

3            MR. TRENCH:  Yes, it does, Your Honor, because we've

4    looked and I think KPMG has looked, and we have never found a

5    single case in the United States in which there is no common

6    party between cases that has resulted in a transfer.

7            THE COURT:  Do you think that the basic premises of

8    the first filed rule are undercut to the extent that the

9    principal of that rule should not be applied?  In other words,

10   you acknowledge that there is the same set of facts or

11   virtually so.  You -- and, by the way, KPMG was a party to

12   those proceedings.  It's not as if there -- you know, there's

13   no connection in terms of the identification of parties by the

14   vociferous nature of your memorandum which I will tell you

15   probably crossed the line.

16           I was dismayed to read it I will tell you.  The

17   arguments are certainly sound and worthy of consideration, but

18   the tone I would ask you to tone down, if you would.

19           MR. TRENCH:  Of course.

20           THE COURT:  But the basic concept that the facts and

21   -- and some of the law are identical, doesn't that really

22   dictate that there ought not to be a division of the -- the

23   basic controversy, what happened with the collapse of L&H and

24   the preceding events to that collapse, particularly the

25   transactions involving Dragon and Dictaphone and KPMG's

1    involvement, U.S. and Belgium, in that entire debacle.  That's

2    the fundamental nature of what's still there, what was there to

3    begin with, what's still there even without KPMG and what's

4    here in this case, is it not?

5        MR. TRENCH:  Well, to some extent that's right,

6    Your Honor, but as I understand the -- the factors that are to

7    be weighed, they include judicial economy, which is what I

8    think the matters that you discussed relate to, and judicial

9    economy traditionally and often in transfer actions -- and I

10   think when Judge Robinson transferred the four cases from

11   Delaware means that there would -- if not for a transfer, there

12   would be a party defending or prosecuting the -- virtually the

13   same claim in two separate jurisdictions with the risk of

14   duplication of discovery and inconsistent rulings.

15       Now, in this particular case, there -- that won't

16   happen.  Discovery is effectively closed in Massachusetts.

17   There won't be inconsistent rulings, because there is no ruling

18   that has involved L&H or the litigation trustee in

19   Massachusetts.

20       THE COURT:  No, there isn't, but there are rulings

21   that I would probably be -- not -- perhaps not me, but perhaps

22   the District Court if this were -- if the reference were

23   withdrawn.  Should the Belgium -- KPM, Belgium matter be

24   transferred to Belgium on the ground of forum non conveniens,

25   what are the impacts of the secrecy laws of Belgium on these

1    matters, confidentiality orders apparently entered.

2           It may not be between the same parties, but there are

3    identical -- as a matter of fact, one of the parties is the

4    same.  I suspect that KPMG, Belgium was involved in the motion

5    to transfer venue to Belgium.

6           MR. TRENCH:  Yes, Your Honor.  They did move to

7    dismiss for forum non conveniens.  That motion was denied by

8    Judge Saris.  It was in connection with the motion to dismiss

9    the securities fraud claims against a number of defendants, by

10   a number of defendants, and Judge Saris did, in fact, determine

11   that the allegations were sufficiently pled to meet the

12   requirements of the securities act which are different

13   requirements that we have, and there -- there were other

14   decisions relating to securities fraud standards which do not

15   relate to us.

16          None of her decisions affected any of the causes of

17   action or touched on any of the causes of action that we bring

18   here.  The closest that any of her decisions came to that was

19   her -- her order dismissing or granting a motion to dismiss an

20   action brought by the Dictaphone trustee who did assert a

21   Massachusetts Consumer Protection Act claim.  She dismissed it,

22   however, not because she considered that claim and found that

23   it was wanting but because the Dictaphone trustee representing

24   new Dictaphone was effectively seeking damages to old

25   Dictaphone and didn't have standing to bring the action, and

1   that's an entirely different issue from the issue of the L&H

2   trustee who represents the former client of KPMG, LLP and KPMG,

3   Belgium who's bringing a malpractice action based on that

4   relationship, a breach of -- aiding and abetting breach of

5   fiduciary duty claim based on that relationship and a violation

6   of the Massachusetts Consumer Protection Act.  We have an

7   entirely different circumstance.

8           And you've mentioned the Belgium security -- secrecy

9   act, and that's interesting, because that's an act which was

10  created in Belgium to prohibit accountants and others from

11  disclosing secrets of their clients and holding them liable for

12  sanctions if they do it, and in the case in Massachusetts, the

13  court found that there were exceptions to that act which

14  allowed plaintiffs who were not in privity with either party to

15  see those records and get those records, notwithstanding the

16  fact that the Belgium secrecy act would appear to prohibit it.

17          In our case, Your Honor, there's something entirely

18  different, something none of the courts approached, and that is

19  there's an exception to the Belgium secrecy act which relates

20  to consent by the client.  Well, we're the client, and -- and

21  if we seek these records and KPMG, Belgium says you can't see

22  them because we are prohibited from the -- from the disclosure

23  of these secret records, which are effectively records of L&H's

24  representation, we will give consent to them to supply them to

25  us, and none of the judges or magistrates consider that

1   argument because those facts weren't present.  That's a

2   different circumstance.

3           So it's true that the magistrate and the court did

4   consider that act in expert affidavits on Belgium law and did

5   make rulings and, in fact, even enjoined KPMG, Belgium from

6   seeking a -- the enforcement of a writ in Belgium to prevent

7   the plaintiffs from getting those documents after the -- the

8   Court in Massachusetts said they could.

9           Those things are all true, but we have a different

10  position in this as we do in all the other claims.  We are the

11  former client, and the considerations as to whether or not that

12  applies are new considerations, whether you make them,

13  Judge Robinson makes them, Judge Saris makes them.  They're

14  going to be things that haven't been considered before.

15          THE COURT:  I understand.  Let me understand that

16  you've acknowledged that some of the witnesses remain in

17  Massachusetts.  Others are in other places, as I recall,

18  Houston, Atlanta, and the like.

19          MR. TRENCH:  Yeah.

20          THE COURT:  Who's in Delaware?

21          MR. TRENCH:  I don't think that there's -- there's a

22  witness that we -- that we're aware of right now that's in

23  Delaware, Your Honor, but the number of witnesses that are in

24  Massachusetts is few, and we frankly don't know where all of

25  the witnesses are until we do our discovery, but --

1          THE COURT:  Are the books and records of KPMG, U.S.

2    in Massachusetts as well?

3          MR. TRENCH:  I -- I do not know the answer to that,

4    Your Honor.  I mean, we have not been able to do any discovery

5    yet.  So where their books and records are I don't know.  I do

6    know that one of the prominent members of KPMG, U.S. is out of

7    Dallas, and he is perhaps the most prominent of those who acted

8    in this matter, and I expect that his records are -- are in

9    Dallas.  I don't know the answer to that, but I don't know

10   whether they're in -- in Massachusetts either.

11         I have heard -- well, I don't want to talk about what

12   I've heard, because I -- I don't know the answer to that

13   question.

14         THE COURT:  Well, they've acknowledged that the --

15   the alleged conduct by KPMG, U.S. at least occurred in

16   Massachusetts.

17         MR. TRENCH:  Your Honor, one of the things we pled

18   and we assert is that the center of gravity of the conduct that

19   forms the basis of our claims is in Massachusetts.  We do plead

20   that, and that was absolutely true.

21         That, however, I must point out, was an event that

22   occurred in 1998, 1999, 2000 when L&H's U.S. headquarters were

23   present in Massachusetts.  We are now in 2004.  L&H has no

24   headquarters in Massachusetts, has no employees in

25   Massachusetts, and that connection which caused the center of

1    gravity of the cause of action to be in Massachusetts is no

2    longer a present fact.  So for considering -- for the

3    consideration of transfer purposes, I think the Court must look

4    at the way things are today on November 23, 2004, and that is

5    that L&H has no presence in Massachusetts.  It did back then,

6    and that's significant for the cause of action, but today it

7    does not.

8            In fact, L&H's presence is in the form of Scott

9    Baena, the litigation trustee who is in Miami but who does

10   travel to Delaware from time to time and, you know, that's --

11   that's the connection.  It's no longer Massachusetts.

12           THE COURT:  Understood.  Let me offer the opportunity

13   to KPMG to reply.  Any other comments?

14           MS. NGUYEN:  Your Honor, with respect to the location

15   of documents, the allegations that the plaintiffs have made is

16   that the auditing functions here occurred in Massachusetts.

17   KPMG, U.S. has a Boston, Massachusetts office, and its work

18   papers with respect to the work that it performed are, you

19   know, collected and reside in Boston, Massachusetts.

20           We have a number of witnesses who work in the office

21   who are still located in Massachusetts, and the fact that the

22   -- you know, the plaintiffs point out that discovery has closed

23   in the Massachusetts action would not be relevant with respect

24   to discovery should the Court decide that discovery could

25   proceed against the litigation trust in Massachusetts, because

The Court - Decision                          20

1    they would be on a separate schedule, and there are other

2    parties that are on -- on a different scheduling, including the

3    Dictaphone litigation trust.  So it's not true that fact

4    discovery would apply here and preclude the litigation trust

5    from conducting discovery.

6            THE COURT:  Understood.

7            MR. TRENCH:  Your Honor, may I make a comment about

8    that?  Because I think there's a misunderstanding about what

9    our position on that is.

10           THE COURT:  Last comment.  Go ahead.

11           MR. TRENCH:  We -- we have not contended that we

12   would be precluded from discovery by virtue of a transfer to

13   Massachusetts.  What we have asserted is there would be no

14   economy of discovery by virtue of the transfer to

15   Massachusetts.  Whatever discovery we would take would be new

16   discovery, whether it's in Massachusetts or in Delaware.

17           So the economy as it relates to the parties, to the

18   Court, and to the witnesses is not present and is not a factor

19   in -- in the transfer.  That's the point that we were trying to

20   make.

21           THE COURT:  Understood.  Let me reflect that we are

22   working on a -- the defendant's motion to transfer the venue to

23   Massachusetts.  This action charges the defendants, we all

24   know, with violations of Massachusetts law, with breach of

25   fiduciary duties and with fraud in connection with serving as

The Court - Decision                               21

1    accountants for L&H, L&H which collapsed in 2000 after

2    purchasing two other entities, Dragon and Dictaphone.

3          The -- it is asserted by the defendants that the same

4    underlying facts have been extensively litigated in

5    Massachusetts.  There are various actions, including

6    shareholder actions, pending in Massachusetts.  The defendants

7    apparently have settled their cases in Massachusetts and are no

8    longer active in the cases as of late, but the cases are still

9    pending.

10         Of course, our framework for deciding these issues

11   starts with Bankruptcy Rule 7087 which refers to 28 U.S.C.

12   Section 1412 which poses the opportunity to transfer venue,

13   "..in the interest of justice or the convenience of the

14   parties."  Seems to be that in this context, both of those

15   prongs favor the transfer of venue in this case, and the most

16   critical aspect of why that's so is the commonality of facts

17   that is actually acknowledged by the plaintiff here, the fact

18   that those cases, which have been pending for four years in

19   Massachusetts, deal with the collapse of L&H, the role of the

20   -- of, among others, KPMG, U.S. and Belgium in formulating the

21   financial statements for 1998 and 1999 and 2000, for being

22   involved in the transactions involving Dragon and Dictaphone

23   and their involvement in the collapse of L&H.  Those common

24   facts I think compel the conclusion that the convenience of the

25   parties and the interests of justice favor the transfer.

1           Indeed, we have it is recognized Massachusetts State

2    law issues and Massachusetts as the center of gravity for this

3    complaint.  Of course, the plaintiff is right.  The trustee is

4    correct that a bankruptcy court or a district court let's say

5    in Delaware would, of course, be qualified and able to apply

6    the state laws of another jurisdiction.  That's not

7    fundamental, but I take note of it.

8           In passing, I note as well that there is really no

9    nexus to Delaware here, the fact that the trustee is accustomed

10   to coming to Delaware occasionally is not sufficient nexus,

11   although clearly, there is a jurisdiction by the fact that the

12   -- the bankruptcy is still pending and the -- and KPMG we note

13   is a Delaware corporation.  But basically, other than the

14   bankruptcy, there are witnesses still in Massachusetts.  The

15   exact number is unknown, certainly witnesses in other places as

16   well, but not Delaware.

17          It appears at first blush, although it's not pivotal

18   to this decision, that at least some of the books and records

19   are located in Massachusetts.  It seems to me that the import

20   of this -- the import of the first filed rule really compels

21   this case to be situated in Massachusetts, and it is a question

22   of judicial economy and the appropriate designation of judicial

23   resources.

24          There is a learning curve when we talk about Belgian

25   secrecy laws, even if we understand, as counsel for the

The Court - Decision                                23

1    plaintiff has described, that the issues in terms of applying,

2    for instance, those Belgium secrecy laws, may be different here

3    because it is L&H, the actual client who is asserting the cause

4    of action.  Never the less, the familiarity with those matters

5    does involve a learning curve as other matters do as well,

6    matters that have been litigated for an extensive period of

7    time in Massachusetts.

8            I do not take -- I don't consider the trustee's

9    position that it is more likely that the case will be -- will

10   have a speedier result in the Bankruptcy Court in Delaware or

11   the District Court in Delaware for that matter than it would in

12   Massachusetts.  In fact, contrary speculation might be in order

13   in light of the learning curve that has already been traversed

14   by the Massachusetts District Court.

15           Plaintiff is certainly correct that some deference to

16   its choice of forum is appropriate, but it seems to me that

17   that deference is substantially outweighed here by the pendency

18   of the Massachusetts actions which overlap to such a great

19   extent in terms of factual underpinnings as well as certain

20   legal concepts that might be applicable to discovery and to

21   substance.

22           It seems to me that Judge Robinson in the Filler

23   case, that her rational for applying the first filed rule is

24   applicable here as well.  Indeed, KPMG was common to each of

25   the I think three matters that were the subject of

1    Judge Robinson's review in the Filler case, but I think her
2    rational applies -- I think the first filed rule applies even
3    if there are different parties, but even if it doesn't, the
4    basic concept that the rules, quote, encourages sound judicial
5    administration and promotes comity among Federal Courts --
6    that's from the decision, and I omit the quotes -- is
7    applicable here as well, and I quote further --

8                "The decision to transfer or stay the second action
9                is within the discretion of the trial court.
10               However, invocation of the rule will usually be the
11               norm, not the exception.  Courts must be presented
12               with exceptional circumstances before exercising
13               their discretion to depart from the first filed
14               rule."

15               And Judge Robinson noted that where you have the same
16   set of facts, although not necessarily the same claims that
17   there is compelling reason for invoking the rule, for granting
18   a motion to transfer.

19               It seems to me that the other concerns expressed by
20   the trustee do not overcome this conclusion.  The fact that
21   KPMG, U.S. and Belgium have settled all their claims in
22   Massachusetts does not defeat this cause.  The basic
23   proposition is that there has been a substantial emersion in
24   the facts of this scenario by the judicial team in
25   Massachusetts, and that needs to be capped to resolve this

The Court - Decision                                    25

1    matter as expeditiously as possible.

2            So nor is it a concern that discovery has closed in

3    Massachusetts and that no consolidation of discovery is

4    possible.  It is understood that the trustee will pursue, will

5    not doubt have the chance to pursue discovery, but the

6    discovery issues which are complex and out of the norm in this

7    case, at least in some degree, I think will be better handled

8    in terms of the familiarity with -- with the underpinnings and

9    the opportunity to be in harmony with the other decisions.

10           The trustee will have every opportunity to assert its

11   own positions.  I have no, of course, as the trustee asserts in

12   his papers, he and the plaintiff are entitled to impartial

13   consideration, and I have no doubt that they will get it.  The

14   entire import of the first filed rule has no room for concern

15   about prejudgments or ideas that impressions about a case are

16   formed by the first judge who has those cases.  We all I'm sure

17   have enough faith in the system, and in particular, judges to

18   understand that they have the capacity and then some to face

19   each set of parties with the positions that they take and to

20   resolve their disputes in an impartial way.

21           So for those reasons, I will enter an order granting

22   the motion of KPMG, U.S. for transfer of venue to the District

23   of Massachusetts.  I'm not sure if a form of order has been

24   submitted.

25           MR. FALLON:  Your Honor, this is Brad Fallon.  There

1    was a form of order submitted with the motion which is at

2    docket number four.  We're happy to submit that order or --

3           THE COURT:  Yes.  That would be helpful.  Thank you.

4    I will note that I did find the stipulation and order that was

5    signed by -- between these parties on November 5th about KPMG,

6    Belgium's requirements to answer and respond and so forth, and

7    that has been entered.  So I would appreciate a hard copy of

8    the order on this motion.

9           MR. FALLON:  We'll do that, and we'll run it by the

10   plaintiff.

11          THE COURT:  Very good.  Anything else on this call?

12          MR. TRENCH:  I think not, Your Honor.  I think this

13   was the only matter.  We're --

14          THE COURT:  All right.

15          MR. TRACY:  -- before --

16          A FEMALE SPEAKER:  Your Honor --

17          MR. TRENCH:  -- before next Thursday on other

18   matters.

19          THE COURT:  Indeed, and I thank you all and wish you

20   a good holiday.

21          A FEMALE SPEAKER:  You too, Your Honor.  Thank you.

22          MR. TRENCH:  Thank you, Your Honor.

23          A MALE SPEAKER:  Thank you, Your Honor.

24          THE COURT:  Bye bye.

25          MR. TRENCH:  Bye bye.

The Court - Decision                          27

1          (Hearing Adjourned)

2                              * * * * *

3                    C E R T I F I C A T I O N

4          I, Maureen Emmons, court approved transcriber,

5     certify that the foregoing is a correct transcript from the

6     official electronic sound recording of the proceedings in the

7     above-entitled matter.

8

9     *Maureen Emmons*                    Date: 10/15/04

10    MAUREEN EMMONS

11    DIANA DOMAN TRANSCRIBING

12