UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

SCOTT L. BAENA, Litigation Trustee of : 
the Lernout & Hauspie Speech Products, :
N.V. Litigation Trust, :                    04-CV-12606-PBS
                               :

              Plaintiff, :

                    :

      v. :

KPMG LLP and :
KLYNVELD PEAT MARWICK :
GOERDELER BEDRIJFSREVISOREN, :

              Defendants. :

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KLYNVELD PEAT MARWICK GOERDELER BEDRIJFSREVISOREN'S MOTION TO DISMISS THE COMPLAINT

Michael J. Stone, Esq.
PEABODY & ARNOLD
30 Rowes Wharf
Boston, MA 02110
(617) 951-4702
*Counsel for Klynveld Peat Marwick*
*Goerdeler Bedrijfsrevisoren*

Of Counsel:
George A. Salter, Esq.
John A. Redmon, Esq.
Nicholas W.C. Corson, Esq.
HOGAN & HARTSON LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT..............................................................................................................2

I.    L&H'S MALPRACTICE AND AIDING AND ABETTING
      BREACH OF FIDUCIARY DUTY CLAIMS ARE TIME-BARRED .......2

II.   PLAINTIFF'S CLAIMS ARE BARRED BY L&H'S
      ORCHESTRATION OF THE ALLEGED WRONGDOING ...................4

      A.    Plaintiff Lacks Standing to Sue KPMG-B .......................................4

      B.    Plaintiff's Claims Are Barred by the Doctrine of In Pari
            Delicto ............................................................................................5

III.  MASSACHUSETTS' DECEPTIVE TRADE PRACTICE STATUTE
      DOES NOT APPLY TO PLAINTIFF'S CLAIMS.....................................5

      A.    The G.L. c. 93A Claim Fails Because KPMG-B is Not
            Alleged to Have Committed Unfair Acts Primarily and
            Substantially in Massachusetts........................................................5

      B.    Chapter 93A Does Not Apply to Negligence Claims.......................7

IV.   THE COURT LACKS PERSONAL JURISDICTION OVER KPMG-
      B .................................................................................................................8

      A.    Plaintiff's Claims Against KPMG-B Do Not Arise From Any
            Business Transacted by KPMG-B in Massachusetts ......................8

      B.    The Assertion of Personal Jurisdiction Over KPMG-B Would
            Violate Constitutional Due Process.................................................11

V.    THE COMPLAINT SHOULD BE DISMISSED ON THE GROUND
      OF FORUM NON CONVENIENS ............................................................12

      A.    Belgium is an Adequate Alternative Forum.....................................13

      B.    The "Private Interest" Factors Favor Belgium as a Forum .............14

      C.    The "Public Interest" Factors Favor a Belgian Forum ....................16

VI.    THE COURT SHOULD DEFER TO THE BELGIAN
       BANKRUPTCY  PROCEEDING ON THE BASIS OF
       INTERNATIONAL COMITY .................................................................... 18

CONCLUSION ............................................................................................................. 20

TABLE OF AUTHORITIES

Page

Advanced Janitorial Services v. Kligman,
    2000 WL 33170886 (Mass. Super. Ct. Oct. 25, 2000) ................................................. 7

Alfadda v. Fenn,
    159 F.3d 41 (2d Cir. 1998) ................................................................................. 13, 17

Alliance Assurance Co. v. Luria Bros. & Co.,
    No. 86 Civ. 1151, 1987 WL 10031 (S.D.N.Y. Apr. 22, 1987) ................................... 14

Allstate Life Ins. Co. v. Linter Group Ltd.,
    994 F.2d 996 (2d Cir. 1993) ............................................................................... 16, 17

American Energy Technologies, Inc. v. Colley & McCoy Co.,
    No. Civ. A. 98-398, 1999 WL 301648 (D. Del. April 15, 1999) ............................... 2

American Tissue, Inc. v. Arthur Andersen, LLP,
    275 F. Supp.2d 398 (S.D.N.Y. 2003) ........................................................................ 5

Bamberg v. SG Cowen,
    236 F. Supp.2d 79 (D. Mass. 2002) .......................................................................... 3

Barrett v. Lombardi,
    239 F.3d 23 (1st Cir. 2001) ................................................................................ 8, 11

Breeden v. Kirkpatrick & Lockhart LLP,
    336 F.3d 94 (2d Cir. 2003) ....................................................................................... 5

Brown v. Hearst Corp.,
    862 F. Supp. 622 (D. Mass. 1994) ........................................................................... 2

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985) ............................................................................................... 11

Calavo Growers of California v. Generali Belgium,
    632 F.2d 963 (2d Cir. 1980) ................................................................................... 14

Caplin v. Marine Midland Grace Trust Co.,
    406 U.S. 416 (1972) ................................................................................................. 4

Coleman v. PricewaterhouseCoopers LLC,
    854 A.2d 838 (Del. 2004) .................................................................................... 2, 3

Cosme v. Whitin Machine Works, Inc.,
    417 Mass. 643, 632 N.E.2d 832 (1994) ................................................................. 18

D'Almeida v. Stork Brabant B.V.,
    71 F.3d 50 (1st Cir. 1995) ..................................................................................... 12

Darviris v. Petros,
    442 Mass. 274, 812 N.E.2d 1188 (2004) ................................................................. 7

Demoulas v. Demoulas Super Markets, Inc.,
    424 Mass. 501, 677 N.E.2d 159 (1997) .................................................................... 2

Fike v. Ruger,
    754 A.2d 254 (Del. Ch. Ct. 1999) ............................................................................ 2

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501 (1947) ............................................................................................... 14

Henry v. National Geographic Society,
    147 F. Supp.2d 16 (D. Mass. 2001) .......................................................................... 7

Hirsch v. Arthur Anderson & Co.,
    72 F.3d 1085 (2d Cir. 1995) ...................................................................................... 5

Howard v. Klynveld Peat Marwick Goerdeler,
    977 F. Supp. 654 (S.D.N.Y. 1997) ......................................................................... 10

Howe v. Goldcorp Investments Ltd.,
    946 F.2d 944 (1st Cir. 1991) ................................................................................... 17

Hudson Valley Partners L.P. v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren,
    No. 20371/02 (N.Y. Sup. Ct. Oct. 23, 2003) ........................................................... 9

In re Commodore Int'l Ltd.,
    242 B.R. 243 (Bankr. S.D.N.Y. 1999) .................................................................... 19

In re Lernout & Hauspie Sec. Litig.,
    208 F. Supp.2d 74 (D. Mass. 2002) ........................................................... 12, 14, 17

In re Lernout & Hauspie Sec. Litig.,
    230 F. Supp.2d 152 (D. Mass. 2002) ...................................................................... 10

In re Mediators, Inc.,
    105 F.3d 822 (2d Cir. 1997) ...................................................................................... 5

iv

In re Royal Ahold N.V. Securities & ERISA Litig.,
    C.A. No. 03-01539, 2004 WL 2955934 (D. Md. Dec. 21, 2004)............................ 10

Iragorri v. Int'l Elevator Inc.,
    203 F.3d 8 (1st Cir. 2000) ...................................................................... 16

Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc.,
    329 F.3d 216 (1st Cir. 2003) .................................................................... 6

Kuwaiti Danish Computer Co. v. Digital Equip. Corp.,
    781 N.E.2d 780  (Mass. 2003)................................................................... 6

Lindner Fund, Inc. v. Polly Peck Int'l, PLC,
    143 B.R. 807 (S.D.N.Y. 1992) ................................................................ 17

Lyle Richards Int'l, Ltd. v. Ashworth, Inc.,
    132 F.3d 111 (1st Cir. 1997) .................................................................... 9

In re Maxwell Comm. Corp.,
    93 F.3d 1036 (2d Cir. 1996) ................................................................... 19

Mercier v. Sheraton Int'l, Inc.,
    981 F.2d 1345 (1st Cir. 1992) ................................................................. 13

MHI Shipbuilding, LLC v. Nat'l Fire Ins. Co. of Hartford,
    286 B.R. 16 (D. Mass. 2002)..................................................................... 3

Newhall v. Posner,
    No. Civ. A. 03-11279, 2004 WL 413275 (D. Mass. March 4, 2004) ........................ 2

Nisselson v. Lernout,
    C.A. No. 03-10843-PBS ...................................................................... 4, 5

Nowak v. Tak How Invs. Ltd.,
    94 F.3d 708 (1st Cir. 1996) ........................................................ 12, 14, 17

Olin Corp. v. Fisons PLC,
    47 F. Supp.2d 151 (D. Mass. 1999)........................................................... 12

Piper Aircraft Co. v. Reyno,
    454 U.S. 235 (1981) ......................................................................... 14, 16

PT United Can Co. v. Crown Cork & Seal Co.,
    138 F.3d 65 (2d Cir. 1998) ..................................................................... 13

Reingold v. Deloitte Haskins & Sells,
    599 F. Supp. 1241 (S.D.N.Y. 1984) ......................................................................... 10

Rudisill v. Sheraton Copenhagen Corp.,
    817 F. Supp. 443 (D. Del. 1993)................................................................................ 14

Scottish Air Int'l, Inc. v. British Caledonian Group PLC,
    81 F.3d 1224 (2d Cir. 1996) ...................................................................................... 13

Shearson Lehman Hutton, Inc. v. Wagoner,
    944 F.2d 114 (2d Cir. 1991) ........................................................................................ 4

St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP,
    223 F. Supp.2d 171 (D. Mass. 2002)......................................................................... 18

Stonington Partners, Inc. v. Lernout & Speech Products, NV,
    310 F.3d 118 (3d Cir. 2002) ...................................................................................... 18

Travelers Indemnity Co. v. Lake,
    594 A.2d 38 (Del. 1991)............................................................................................ 17

Van Dusen v. Barrack,
    376 U.S. 612 (1964) .................................................................................................... 2

Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,
    825 F.2d 709 (2d Cir. 1987) ...................................................................................... 18

## PRELIMINARY STATEMENT

Plaintiff is the Litigation Trustee for the L&H Litigation Trust, appointed in the Lernout & Hauspie Speech Products N.V. ("L&H") United States bankruptcy proceeding. Plaintiff stands in the shoes of the now defunct L&H, a Belgian company, suing its Belgian auditor, Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren ("KPMG-B"). The relationship between L&H and KPMG-B is governed by Belgian law, will involve significant Belgian legal issues, and has a much stronger connection to Belgium than to the United States.

Prior to its bankruptcy, L&H was a Belgian speech recognition technology company whose stock was publicly traded in Europe and in the United States. Following announcements of accounting irregularities with respect to its reported revenues for the years 1998, 1999 and 2000, L&H filed for bankruptcy protection in both Belgium and in the United States. L&H's Chapter 11 bankruptcy petition in the United States was filed on November 29, 2000. (Cplt. ¶ 88.)

In this action, Plaintiff, on behalf of the estate of L&H, purports to state claims against KPMG-B and KPMG LLP ("KPMG US") based on theories of: (1) professional malpractice; (2) aiding and abetting a breach of fiduciary duty by the management of L&H; and (3) violation of the Massachusetts deceptive trade practices act, Mass. G.L. c. 93A. This case was transferred to this Court from the Bankruptcy Court for the District of Delaware, pursuant to the motion of KPMG US. KPMG-B took no position on the motion to transfer since, as demonstrated below, the United States is not the appropriate forum for the resolution of the claims against KPMG-B.

The Complaint against KPMG-B is legally deficient for a number of independent reasons, each of which requires its dismissal as a matter of law. First, Plaintiff's claims for malpractice and aiding and abetting a breach of fiduciary duty are barred by the applicable statutes of

limitation.  Second, in bringing these claims, Plaintiff stands in the shoes of L&H, and the wrongdoing of L&H's own management, therefore, bars Plaintiff's claims for relief from KPMG-B.  Third, Massachusetts G.L. c. 93A does not apply to Plaintiff's claims because the pivotal events that are alleged to support that claim all occurred outside Massachusetts and because the Act does not apply to negligence claims.  Fourth, the Court lacks personal jurisdiction over KPMG-B.  Fifth, the case should be dismissed pursuant to the doctrine of forum non conveniens.  Sixth, the Court should defer to the ongoing Belgian bankruptcy proceedings of L&H and should dismiss the case on the basis of international comity.

## ARGUMENT

## I.    L&H'S MALPRACTICE AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIMS ARE TIME-BARRED

Plaintiff was required to bring its claims against KPMG-B for malpractice and for aiding and abetting a breach of fiduciary duty within three years from the date when the claims accrued.[1]  These causes of action accrued when L&H discovered or had notice that it was harmed and discovered or had notice of what the alleged cause of the harm was.  See Newhall v. Posner, No. Civ. A. 03-11279, 2004 WL 413275, at *2-3 (D. Mass. March 4, 2004) (Saris, J.);

---

[1]    Under both Massachusetts and Delaware law, the statute of limitations for professional malpractice and aiding and abetting breach of fiduciary claims is three years.  Mass. G.L. c. 260, § 4; Newhall v. Posner, No. Civ. A. 03-11279, 2004 WL 413275, at *2-3 (D. Mass. March 4, 2004) (Saris, J.) (accounting malpractice); Mass. G.L. c. 260, § 2A; Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 677 N.E.2d 159, 172-73 (1997) (breach of fiduciary duty); 10 Del. C. § 8106; Coleman v. PricewaterhouseCoopers LLC, 854 A.2d 838, 842 (Del. 2004) (accounting malpractice); Fike v. Ruger, 754 A.2d 254, 260 (Del. Ch. Ct. 1999) (breach of fiduciary duty).  As a "transferee" court, this Court should apply the choice of law rules that the transferor court would have applied.  Van Dusen v. Barrack, 376 U.S. 612, 639 (1964); Brown v. Hearst Corp., 862 F. Supp. 622, 626 (D. Mass. 1994) ("When a case is transferred to a new venue pursuant to 28 U.S.C. § 1404(a), the choice of law rules of the transferor venue apply.").  Delaware applies the shorter of its own or another jurisdiction's statute of limitations, if the claim is brought by a non-resident and arose outside Delaware, as is the case here.  10 Del.C. § 8121; American Energy Technologies, Inc. v. Colley & McCoy Co., No. Civ. A. 98-398, 1999 WL 301648, at *3 (D. Del. April 15, 1999).  Thus, Delaware's choice of law test indicates that three years is the longest possible statute of limitations to apply, and Plaintiff's claims are clearly barred by the three year period.

Coleman v. PricewaterhouseCoopers LLC, 854 A.2d 838, 842 (Del. 2004). KPMG-B's audit

opinion on L&H's 1998 financial statements was issued in April of 1999; the opinion on L&H's

1999 financial statements was issued on April 27, 2000. (Cplt. ¶ 69.) The Complaint in this case

was not filed until August 2, 2004 -- well beyond the three year limitation period.[2]

Based on the allegations of Plaintiff's Complaint, L&H was well aware of potential

claims against KPMG-B -- at the absolute latest -- by November of 2000. At that point, L&H's

Audit Committee had received the report of an independent investigation concluding that L&H's

revenues were misstated by as much as $277 million dollars. (Cplt. ¶ 86.) This followed stories

in The Wall Street Journal in August of 2000 questioning L&H's accounting practices (Cplt. ¶

78), and L&H's own announcement in November of 2000 that its revenues for 1998 and 1999

would have to be restated due to errors and irregularities. (Cplt. ¶ 83.) Finally, KPMG-B made a

public announcement on November 15, 2000 that its prior audit opinions on L&H's 1998 and

1999 financial statements could no longer be relied upon.[3]   The Complaint in this matter was not

filed until August of 2004, nearly four years after the admitted "discovery of the misstatements

of revenue." (Cplt. ¶ 78.)

---

[2]    Plaintiff's claims are not saved by the extension of the limitations period under Section 108(a) of
the Bankruptcy Code. Section 108(a) provides in pertinent part: "If applicable nonbankruptcy law ...
fixes a period within which the debtor may commence an action, and such period has not expired before
the date of the filing of the petition, the trustee may commence such action only before the later of (1) the
end of such period, including any suspension of such period occurring on or after the commencement of
the case; or (2) two years after the order for relief." 11 U.S.C. § 108(a). Plaintiff's claims are barred by
the nonbankruptcy statute of limitations as discussed above; and Plaintiff's Complaint was also not filed
within the two year extension granted to a bankruptcy Trustee by Section 108(a). "In a Chapter 11 case,
the order for relief is the 'commencement of a voluntary case' which in turn is the filing with the
bankruptcy court of the petition by the debtor." MHI Shipbuilding, LLC v. Nat'l Fire Ins. Co. of
Hartford, 286 B.R. 16, 21 (D. Mass. 2002) (citation omitted). L&H's petition was filed with the U.S.
bankruptcy court on November 29, 2000. The Complaint in this case was filed on August 2, 2004.

[3]    See Bamberg v. SG Cowen, 236 F. Supp. 2d 79, 85 (D. Mass. 2002) (citing these events as
sufficient "storm warnings" to put a reasonable investor on notice of claims against SG Cowen, L&H's
investment banker).

Accordingly, the malpractice and aiding and abetting breach of fiduciary duty claims are barred by the statute of limitations and must be dismissed, as a matter of law.

## II.    PLAINTIFF'S CLAIMS ARE BARRED BY L&H'S ORCHESTRATION OF THE ALLEGED WRONGDOING

### A.    Plaintiff Lacks Standing to Sue KPMG-B

Plaintiff lacks the requisite constitutional standing to bring this case. "A bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." Nisselson v. Lernout, C.A. No. 03-10843-PBS, at pp. 5-6 (unreported decision dated Aug. 9, 2003, attached as Exhibit A to Corson Declaration, submitted herewith) (dismissing Dictaphone Litigation Trust's complaint against defendants, including KPMG-B, citing Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991)). "A claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." Wagoner, 944 F.2d at 118 (citing Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 434 (1972)). Plaintiff itself alleges that "the improper recognition and reporting of revenue" that led to L&H's demise "were implemented by certain members of L&H's management", including routinely recording revenue improperly for "transactions without contracts, transactions with fictitious parties, and loan transactions disguised as sales." (Cplt. ¶¶ 6, 22.) The harm alleged by Plaintiff is that the "Breaching Managers" inflated L&H's revenues to complete acquisitions of Dragon and Dictaphone in 2000 that caused L&H to "incur over $340 million of debt that L&H could never pay." (Cplt. ¶¶ 22, 72-73, 77.) The injury alleged is to L&H's creditors, and as a matter of law any claims against KPMG-B for purportedly aiding and abetting the improper revenue recognition practices perpetrated by L&H management accrue to the creditors and not to this Plaintiff.

4

### B.   Plaintiff's Claims Are Barred by the Doctrine of In Pari Delicto

Even if there was damage to L&H itself, the trustee cannot recover because L&H's management instigated and participated in the wrongdoing. The doctrine of "*in pari delicto*" provides that a plaintiff who has participated in wrongdoing may not recover damages from the wrongdoing. See Nisselson, C.A. No. 03-10843-PBS, at pp. 5-6. The doctrine has been applied consistently to bar accounting malpractice and aiding and abetting breach of fiduciary duty claims brought by a trustee when the debtor was involved in the alleged wrongdoing.[4] Plaintiff alleges that L&H management actively orchestrated and participated in the improper revenue recognition practices that are the alleged basis for Plaintiff's claims against KPMG-B. The precedent noted above requires dismissal in these circumstances.

## III.   MASSACHUSETTS' DECEPTIVE TRADE PRACTICE STATUTE DOES NOT APPLY TO PLAINTIFF'S CLAIMS

Plaintiff asserts a claim against KPMG-B for violation of the Massachusetts deceptive and unfair trade practices act, Mass. G.L. c. 93A. (Cplt. ¶¶ 99-106.) For the reasons set forth below, this claim should be dismissed as a matter of law.

### A.   The G.L. c. 93A Claim Fails Because KPMG-B is Not Alleged to Have Committed Unfair Acts Primarily and Substantially in Massachusetts

G.L. c. 93A only applies to unfair or deceptive acts which occur "primarily and substantially within the Commonwealth" of Massachusetts. Mass. G.L. c. 93A, § 11.

---

[4]   Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1094-95 (2d Cir. 1995) (affirming dismissal on the ground that the trustee lacked standing to bring malpractice claims against an accounting firm because debtors had participated with the accounting firm in alleged wrongdoing); Breeden v. Kirkpatrick & Lockhart LLP, 336 F.3d 94 (2d Cir. 2003) (management's conduct imputed to debtor barred trustee's claims against debtor's accountants for alleged malpractice and breach of fiduciary duty); In re Mediators, Inc., 105 F.3d 822 (2d Cir. 1997) (affirming dismissal of claims against debtor's accountant for aiding and abetting debtor's shareholder in breach of fiduciary duty for lack of standing); American Tissue, Inc. v. Arthur Andersen, LLP, 275 F. Supp.2d 398, 405 (S.D.N.Y. 2003) (dismissing debtor's malpractice and breach of fiduciary duty claim against debtor's auditor because of participation of debtor's officers in alleged wrongdoing).

Accordingly, the statute simply does not apply to the claims asserted on behalf of a Belgian company against its Belgian auditor, based on acts that – even as alleged – occurred "primarily and substantially" within Belgium.

The analysis required under § 11 focuses on "whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 781 N.E.2d 780, 787 (Mass. 2003). While this is often treated as a question of fact, there is simply no credible basis for claiming, in this case, that KPMG-B committed any wrongful acts "substantially" in Massachusetts. Indeed, the Complaint does not contain a single allegation of any deceptive or unfair act by KPMG-B in Massachusetts. Plaintiff alleges only that L&H had its United States headquarters in Massachusetts; and that KPMG-B "utilized the services and expertise of KPMG US and its Boston audit team" (Cplt. ¶ 106), however, neither of these allegations reflects any conduct by KPMG-B in Massachusetts, much less a *prima facie* basis to conclude that Massachusetts is the "center of gravity" for L&H's claims against KPMG-B. It is clear that contacts with Massachusetts that do not involve unfair nor deceptive conduct are given no weight in assessing whether the misconduct occurred primarily and substantially in Massachusetts. See Kuwaiti Danish Computer Co., 781 N.E.2d at 800. KPMG-B was engaged by L&H in Belgium, performed substantially all its work for L&H in Belgium, and issued and delivered its audit opinions to L&H in Belgium. (See Michel Desaive Declaration ¶¶ 7-9, submitted herewith.) Accordingly, G.L. c. 93A does not apply to L&H's claims against KPMG-B. See Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216 (1st Cir. 2003) (affirming judgment of district court, that center of gravity of challenged conduct occurred primarily outside Massachusetts, and therefore Chapter 93A claim was properly dismissed).

### B.    Chapter 93A Does Not Apply to Negligence Claims

Plaintiff's claim against KPMG-B for an alleged violation of Chapter 93A is based on KPMG-B's allegedly negligent certification of L&H's financial statements.  (Cplt. ¶ 101.)  The factual allegations supporting this claim are comprised of the same allegations which are alleged in support of plaintiff's malpractice claim.  Allegations of mere negligence do not amount to unfair or deceptive trade practices and fail to state a claim for a violation of Chapter 93A.

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. G.L. c. 93A.  To be actionable, such unfair practices must reach "a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce", and be "unscrupulous, intolerable, and unethical."  Henry v. National Geographic Society, 147 F. Supp. 2d 16, 21 (D. Mass. 2001) (citing cases).  Massachusetts courts interpreting Chapter 93A have squarely held that it does not apply to mere claims of negligence, such as those asserted by Plaintiff against KPMG-B.  Advanced Janitorial Services v. Kligman, 2000 WL 33170886, at *2 (Mass. Super. Ct. Oct. 25, 2000) (dismissing Chapter 93A claim alleging accounting malpractice, holding that "[a] negligent act standing by itself does not give rise to a claim under c. 93A."); Darviris v. Petros, 442 Mass. 274, 278, 812 N.E.2d 1188, 1193 (2004) (affirming dismissal of patient's claim under Chapter 93A based on allegedly negligent provision of medical care, holding that "[n]o less than a claim of legal malpractice, a claim for the negligent delivery of medical care, without more, does not qualify for redress under our consumer protection statute, G.L. c. 93A.").  Accordingly, Plaintiff's claim for a violation of Chapter 93A by KPMG-B, based on KPMG-B's alleged negligence in rendering an audit opinion on L&H's financial statements, should be dismissed since it fails to state a claim, as a matter of law, for a violation of Chapter 93A.

## IV.    THE COURT LACKS PERSONAL JURISDICTION OVER KPMG-B

For this Court to assert personal jurisdiction over KPMG-B, a Belgian entity, Plaintiff must demonstrate that (1) the Massachusetts long-arm statute confers jurisdiction over KPMG-B, and (2) that the exercise of jurisdiction pursuant to that statute comports with the due process requirements of the United States Constitution. Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). To make the required "prima facie showing, the plaintiff cannot rest upon mere averments, but must adduce competent evidence of specific facts." Id.

### A.    Plaintiff's Claims Against KPMG-B Do Not Arise From Any Business Transacted by KPMG-B in Massachusetts

Plaintiff alleges that the Court has personal jurisdiction over KPMG-B "because the claims asserted against it in this complaint arise out of the transaction of business in the United States by KPMG-B through its agents and affiliates causing injury by acts and omissions in the United States." (Cplt. ¶ 20.) There is no federal claim alleged in the Complaint, and no federal statute at issue that provides for the nationwide service of process, so Plaintiff's references to KPMG-B's alleged contacts with "the United States" are legally meaningless. Although Plaintiff does not allege it, we will assume, for purposes of discussion, that Plaintiff means to claim that KPMG-B is subject to specific jurisdiction in Massachusetts under Section 3(a) of the Massachusetts long-arm statute, which permits courts to exercise personal jurisdiction over claims "arising from" a defendant's "transacting any business" in Massachusetts. Mass. G.L. c. 223A, § 3(a).

It cannot possibly be said that Plaintiff's claims have "arisen from" any business transacted by KPMG-B in Massachusetts. Plaintiff's claims, as alleged, arise out of KPMG-B's allegedly faulty audit reports on L&H's financial statements. (See, e.g., Cplt. ¶¶ 69-77.) KPMG-B is a limited liability partnership, organized under Belgian law, with five offices, all of

which are located in Belgium. (Desaive Decl. ¶ 3.) KPMG-B does not maintain, and has never maintained, any offices in Massachusetts. (Id. ¶ 5.) KPMG-B has never been licensed to do business in Massachusetts; it has never had an agent for service of process in Massachusetts; and it does not solicit business in Massachusetts. (Id. ¶¶ 4, 12.) KPMG-B does not own any property in Massachusetts, nor does it maintain a bank account in Massachusetts. (Id. ¶ 5.)

L&H was founded by Belgian citizens, in Belgium, where it maintained its headquarters. KPMG-B was engaged in Belgium by L&H to issue audit reports on L&H's financial statements. (Desaive Decl. ¶ 7.) The KPMG-B engagement partner for the audits of L&H's 1998 and 1999 financial statements worked out of a KPMG-B office in Belgium. (Id. ¶ 9.) KPMG-B's audit reports on L&H's 1998 and 1999 financial statements were signed by the engagement partner, in Belgium, and were issued to L&H, in Belgium. (Desaive Decl. ¶ 8.) If L&H relied on KPMG-B's audit reports, any such reliance would have occurred in Belgium, where L&H's management and board of directors were located.[5] To the extent KPMG-B had any L&H-related contact with Massachusetts at all – which Plaintiff fails to even allege in the Complaint -- it was purely incidental to its transaction of business, in Belgium, of the rendering of an audit opinion on L&H's financial statements. Any such incidental contact with Massachusetts is an insufficient basis to exert personal jurisdiction over KPMG-B under Section 3(a) of the Massachusetts long-arm statute. See Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 113-14 (1st Cir. 1997) (defendant's incidental contacts with Commonwealth, including attendance at trade shows where

---

[5]     This case is distinguishable from the L&H securities litigation in this Court on that basis. The securities cases were brought by American investors who alleged reliance (through the market or directly) on KPMG-B's audit reports as filed by L&H with the Securities and Exchange Commission, in the United States, and the plaintiffs claimed violations of the United States securities fraud law, which provide for nationwide service of process and personal jurisdiction based on contacts with the United States. This case – in contrast – is brought on behalf of L&H, a Belgian company, and alleges violations of state law. See Hudson Valley Partners L.P. v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren, No. 20371/02 (N.Y. Sup. Ct. Oct. 23, 2003) (dismissing KPMG-B for lack of personal jurisdiction under New York long-arm statute in suit by Dictaphone note holders) (attached as Exhibit B to Corson Declaration).

business was solicited, were insufficient basis for personal jurisdiction since most of performance under contract was to be rendered outside Massachusetts). A purported claim by L&H against its Belgian auditor clearly arises in Belgium from the relationship between the parties, which was centered in Belgium.

Plaintiff apparently counts on the presence of a separate and independent partnership, KPMG US, in the United States and with an office in Massachusetts, to seek to establish jurisdiction over KPMG-B in Massachusetts. Plaintiff alleges that KPMG-B has conducted business in the United States "through its agents and affiliates" (Cplt. ¶ 16) and that KPMG-B "utilized the services and expertise of KPMG US and its Boston audit team". (Cplt. ¶ 106.) These allegations fail to establish a basis to assert personal jurisdiction over KPMG-B. KPMG-B is a separate, legally distinct firm from KPMG US, and KPMG US is not its agent. (Desaive Decl. ¶ 13); see In re Lernout & Hauspie Sec. Litig., 230 F. Supp.2d 152, 171 (D. Mass. 2002) (Saris, J.) (dismissing claims against KPMG UK and KPMG Singapore holding that plaintiffs "have alleged no facts to support the claim that each KPMG entity was an agent for each of the others"); Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 661-663 (S.D.N.Y. 1997) (finding in evaluation of personal jurisdiction that acts of Peat Marwick could not be attributed to Klynveld for jurisdictional purposes and that allegations did not justify finding of agency between the two firms); In re Royal Ahold N.V. Securities & ERISA Litig., C.A. No. 03-01539, 2004 WL 2955934, at *36, n. 41 (D. Md. Dec. 21, 2004) (Deloitte US and Deloitte Netherlands are legally distinct, autonomous firms); Reingold v. Deloitte Haskins & Sells, 599 F. Supp. 1241, 1254 n. 10 (S.D.N.Y. 1984) (advertising independent accounting firms as part of a "single cohesive worldwide organization" does not make the independent firms one another's alter ego for jurisdictional purposes).

10

Plaintiff has failed to allege even generally (let alone offer any supporting factual allegations) that KPMG-B conducted any business in Massachusetts or that it had any significant ties to the state.  Accordingly, the Complaint should be dismissed.

**B.    The Assertion of Personal Jurisdiction Over KPMG-B Would Violate Constitutional Due Process**

Even if Plaintiff could satisfy the requirements of the Massachusetts long-arm statute, Plaintiff cannot comply with the federal constitutional standard, which involves a more extensive showing.  At a minimum, the requirements of due process include the following:  (1) the claim underlying the litigation must arise directly out of, or relate to, the defendant's forum-state activities; (2) the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) the exercise of jurisdiction must, in light of the "Gestalt" factors be reasonable.  Barrett, 239 F.3d at 26.

The first factor overlaps with the Massachusetts long-arm statute analysis, and as demonstrated above, L&H's claim against KPMG-B does not arise out of any activity by KPMG-B in Massachusetts – rather, any such claim could only arise out of KPMG-B's actions in Belgium.  Accordingly, this factor is not satisfied.

As to the "purposeful availment" factor, Plaintiff, once again, cannot rely on the contacts of L&H or KPMG US with Massachusetts to satisfy this requirement.  Rather, it is the purposeful acts of KPMG-B directed to Massachusetts that must be considered.  "The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

11

Plaintiff has not alleged any purposeful availment by KPMG-B of the privilege of conducting activities in Massachusetts. Thus, this factor is also not satisfied.

Finally, the assertion of jurisdiction over KPMG-B would be manifestly unreasonable in this case. See D'Almeida v. Stork Brabant B.V., 71 F.3d 50, 51 (1st Cir. 1995) (even if minimum contacts existed, the exercise of personal jurisdiction over the foreign defendant would not comport with the notions of fair play and substantial justice). The relevant factors are similar to those applied in forum non conveniens analysis (see Olin Corp. v. Fisons PLC, 47 F. Supp.2d 151, 157 (D. Mass. 1999)), which are discussed in more detail below.

## V.   THE COMPLAINT SHOULD BE DISMISSED ON THE GROUND OF *FORUM NON CONVENIENS*

This Court is familiar with the relevant law governing *forum non conveniens* from its prior decision in the L&H securities litigation. See In re Lernout & Hauspie Sec. Litig., 208 F. Supp.2d 74, 91-93 (D. Mass. 2002) ("Lernout I"). The doctrine permits a trial court, on a discretionary basis, to dismiss a case where an alternative forum is available in another country that is fair to the parties and substantially more convenient for them or the courts. Nowak v. Tak How Invs. Ltd., 94 F.3d 708, 719 (1st Cir. 1996). We note at the outset that this Court's decision in the L&H securities class action litigation is entirely distinguishable from the current case. Lernout I involved a class of American plaintiffs suing for violations of United States securities fraud laws. This case involves a foreign plaintiff suing for malpractice in connection with conduct that occurred primarily in Belgium. Little or no deference is due to Plaintiff's choice of forum since Plaintiff stands in the shoes of a Belgian company. Here, the balance of public and private factors compels dismissal in favor of Belgium.

A.    **Belgium is an Adequate Alternative Forum**

First, KPMG-B is obviously subject to jurisdiction in Belgium. KPMG US is seeking dismissal of this action on a variety of grounds, and – if it is successful – the issue of whether it is subject to jurisdiction in Belgium is not relevant. Moreover, the Court has discretion to dismiss the claims against KPMG-B while retaining the remaining claims. See, e.g., Scottish Air Int'l, Inc. v. British Caledonian Group PLC, 81 F.3d 1224, 1234-35 (2d Cir. 1996) (rejecting contention that district court could not grant summary judgment on one cause of action and dismiss remaining claims on forum non conveniens grounds).

Second, Belgian law provides for a cause of action for professional malpractice under Companies Code, art. 140 that is closely parallel to the American common law cause of action. Paragraph 2 of Article 140 of the Companies Code provides that (free translation):

> "The auditors are liable towards the company for faults committed by themselves in the performance of their functions. They are jointly and severally liable towards the company and toward third parties for any damage resulting from the violation of any provision of the Code or the articles of incorporation. They can only escape liability for violations to which they did not participate provided they establish that they did accomplish their function with normal diligence and they denounced the violations with the management of the company and, if no adequate remedy was taken, with the next general assembly following their knowledge of the violations."

Under this Belgian law, statutory auditors are liable to the company for damage caused to the company by the auditor's violation of the duty of care, assessed by the standard of the normally diligent auditor, under the same circumstances.[6] This is, of course, substantially similar to the common law standard for professional malpractice

---

[6]    Although it is clear that Belgium provides a substantially similar remedy, a forum is adequate even if the foreign justice system differs from that of the United States. PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 73 (2d Cir. 1998). "[A]n alternative forum ordinarily is not considered 'inadequate' merely because its courts afford different or less generous discovery procedures than are available under American rules." Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1352-53 (1st Cir. 1992). Accordingly, the fact "[t]hat the law of the foreign forum differs from American law should ordinarily not be given conclusive or even substantial weight in assessing the adequacy of the forum." Alfadda v. Fenn,

Finally, there is no reason to doubt that Belgian courts are fundamentally fair and competent to deal with the issues in this case. See Alliance Assurance Co. v. Luria Bros. & Co., No. 86 Civ. 1151, 1987 WL 10031, at *4 (S.D.N.Y. Apr. 22, 1987) ("No one has questioned the essential impartiality or fairness of the Belgian legal system or its ability to deal with sophisticated commercial disputes."); Calavo Growers of California v. Generali Belgium, 632 F.2d 963, 968 (2d Cir. 1980).

In Lernout I, this Court was concerned with the adequacy of Belgium as a forum for the securities class action because of Belgium's lack of a class action mechanism and its failure to recognize the fraud-on-the-market theory. Lernout I, 208 F. Supp.2d at 91. Neither of those concerns is presented in this case. In this case, Plaintiff is in the shoes of L&H, and of course, there is no securities fraud claim and no reliance on the market is alleged. Therefore, Belgium is an adequate alternative forum for this litigation.

### B.     The "Private Interest" Factors Favor Belgium as a Forum

The private interest factors include (1) relative ease of access to sources of proof; (2) availability of compulsory process; (3) comparative trial costs; and (4) ability to enforce a judgment. Nowak, 94 F.3d at 719 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). These factors strongly favor Belgium over the United States.

As to the location of relevant witnesses and evidence, the allegations of the Complaint make clear that most of the conduct at issue took place in Belgium or at least outside of the United States, meaning that a Belgian forum would have greater ease of access to the sources of proof. At the argument on the motion to transfer this case to this Court from Delaware, counsel

---

159 F.3d 41, 45 (2d Cir. 1998); Rudisill v. Sheraton Copenhagen Corp., 817 F. Supp. 443, 445-46 (D. Del. 1993). Indeed, "the possibility of an unfavorable change in law" is not even "relevant" unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 252, 254 (1981).

for Plaintiff made a number of concessions about the location of relevant evidence.  According to

Plaintiff's counsel:

> "L&H [now, in 2004] has no headquarters in Massachusetts, has no
> employees in Massachusetts, and that connection which caused the center
> of gravity of the cause of action to be in Massachusetts is no longer a
> present fact. . . . I think the Court must look at the way things are today on
> November 23, 2004, and that is that L&H has no presence in
> Massachusetts."

(Transcript of Nov. 23, 2004 hearing, pp. 18-19, attached as Exhibit C to Corson

Declaration.)

Plaintiff has similarly conceded that the bulk of the relevant documentary

evidence is located in Belgium, is available to the Belgian curators of L&H, but will not

be available for use in the United States.  In a recent proceeding before the United States

Bankruptcy Court, Plaintiff reported on a trip to Belgium as follows:

> "The second aspect of our location and inspection of documents concerned
> the company [L&H]'s records which had been seized by the federal police
> as part of the Belgian Attorney General's ongoing criminal investigations
> of Lernout & Hauspie. . . . we obtained permission to review documents
> located in storage facilities in Ieper and also in the national archives in
> [Beveren].  The unfortunate problem we encountered, however, was that
> because of the seizure by the federal police, we were only allowed to
> review the documents, and we were denied any right to copy those
> documents. . . . And, Judge, we're talking about enormous amounts of
> documents. . . . we found amongst those papers documents which are
> critical to our claims against KPMG. . . . We also learned that the federal
> police had imaged numerous of the documents which were seized on
> DVDs, and obviously, we'd like to get a copy of those DVDS, as the
> curators have already done.  However, the curators are unable to share
> those DVDs with us because of Belgian secrecy laws."

(Statement of Scott Baena, L&H Litigation Trustee, pp. 6-7, Transcript of Dec. 2, 2004 hearing

before United States Bankruptcy Court, attached as Exhibit D to Corson Declaration.)  These

statements by Plaintiff establish that Belgium is the location for crucial evidence that may not be

available for use in this case if it proceeds in the United States.

In addition to L&H's records and KPMG-B's records, the key non-party witnesses are located in Belgium and are not subject to compulsory process to appear for trial in the United States. The key witnesses for Plaintiff's malpractice and aiding and abetting claims are the "Breaching Managers" of L&H who allegedly orchestrated the improper revenue recognition practices at L&H. The founders and former top management of L&H are all located in Belgium, and are not parties to this action. This factor weighs heavily in favor of dismissing this case in favor of Belgium.[7]

Finally, there would be serious obstacles to enforcing an eventual judgment in this action against KPMG-B in Belgium. The assets of KPMG-B are located in Belgium, and there is no treaty in force between Belgium and the United States for the enforcement of United States judgments in Belgium. Accordingly, a person seeking to enforce a United States judgment in Belgium would have to make use of a special proceeding called an *exequatur*, provided for in Articles 22-23 of the Belgian Code on International Private Law, and pursuant to Article 25 of the Belgian Code, there are several relevant grounds on which a Belgian court could refuse to enforce a judgment in this case.

## C.    The "Public Interest" Factors Favor a Belgian Forum

The public interest factors that the Court considers on a <u>forum</u> <u>non</u> <u>conveniens</u> motion include (1) practical difficulties of hearing a case more fairly adjudicated elsewhere; (2) imposition on jurors called to hear a case that has no relation to their community; and (3)

---

[7]    <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255 (1981) (defendant's showing that "crucial witnesses are located beyond the reach of compulsory process" supported dismissal on grounds of <u>forum</u> <u>non</u> <u>conveniens</u>); <u>Iragorri v. Int'l Elevator Inc.</u>, 203 F.3d 8, 15 (1st Cir. 2000); <u>Allstate Life Ins. Co. v. Linter Group Ltd.</u>, 994 F.2d 996, 1001 (2d Cir. 1993) (where primary perpetrators of alleged wrongful scheme could not be compelled to appear at trial, their unavailability favored dismissal on grounds of <u>forum</u> <u>non</u> <u>conveniens</u>).

familiarity of this Court with applicable laws. Lernout I, 208 F. Supp.2d at 92-93 (citing Nowak, 94 F.3d at 719-20.) These factors favor dismissal.

This Court is familiar with some of the practical difficulties that are likely to arise if this Court retains the case and is required to sort through the Belgian legal issues that will dominate the case. Included among these are the Belgian professional secrecy obligations binding on KPMG-B and its auditors. Moreover, Belgium has a very significant interest in resolving matters relating to L&H in its own judicial system, and this interest outweighs the interest that Massachusetts might have. The professional work done by KPMG-B is governed by professional standards established by the Belgian Institute of Auditors and Belgium has a strong interest in enforcing its professional standards with respect to accounting firms located in Belgium. The strong local interest of Belgium is further demonstrated by the ongoing criminal investigation into L&H being conducted by a Belgian investigating magistrate; and by the L&H bankruptcy proceeding being overseen by a Belgian court. Belgium's strong local interest in the application of Belgian law to this controversy, between Belgian entities, arising out of conduct centered in Belgium, outweighs any interest Massachusetts may have in this action. See Howe v. Goldcorp Investments Ltd., 946 F.2d 944, 953 (1st Cir. 1991) (Canada had greater interest in hearing securities action involving Canadian corporation); Alfadda, 159 F.3d at 46; Allstate, 994 F.2d at 1002; Lindner Fund, Inc. v. Polly Peck Int'l, PLC, 143 B.R. 807, 809-10 (S.D.N.Y. 1992).

If the Court retains this case, it will be called upon to apply Belgian law to L&H's claims against KPMG-B.[8] The conduct by KPMG-B that is alleged to be wrongful occurred in Belgium,

---

[8]    As a transferee court, the Court looks to the choice of law rules of the forum of the transferor court, in this case Delaware. In determining choice of law in tort actions, Delaware has adopted the "most significant relationship test" of the Restatement (Second) of Conflicts §§ 6, 145, 146. Travelers Indemnity Co. v. Lake, 594 A.2d 38, 44-47 (Del. 1991). In applying the test, Delaware courts emphasize "the place where the injury occurred" and "the place where the conduct causing the injury occurred." Id, at 47. Massachusetts courts apply a similar interest analysis, including consideration of the factors in the

and any injury to L&H also occurred in Belgium. Belgium has a much stronger connection to the conduct at issue, and application of the "most significant relationship test" to the present case demonstrates that Belgian law will apply to Plaintiff's malpractice claim against KPMG-B. In sum, Belgium is a more convenient forum for the adjudication of this dispute, and the relevant interests strongly indicate that dismissal is appropriate.

## VI. THE COURT SHOULD DEFER TO THE BELGIAN BANKRUPTCY PROCEEDING ON THE BASIS OF INTERNATIONAL COMITY

In the framework of the Belgian L&H bankruptcy proceedings, Belgian curators have been appointed, and they are subject to the supervision of the Belgian courts. With respect to a claim on behalf of L&H against its Belgian auditor, KPMG-B, Belgium clearly has a greater interest in the parties and in the claims at issue, which arose in Belgium. Accordingly, this Court should dismiss this action against KPMG-B on the ground of international comity.

"American courts have long recognized the particular need to extend comity to foreign bankruptcy proceedings." Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987). In Stonington Partners, Inc. v. Lernout & Speech Products, NV, the Third Circuit stressed its "serious concern for comity" in the international arena, particularly in the bankruptcy context, and the need for "coordination of the two plenary proceedings" involving L&H in the U.S. and in Belgium to accommodate international comity considerations. 310 F.3d 118, 126, 132 (3d Cir. 2002). The provisions in the L&H Chapter 11 Plan that provide for exclusive jurisdiction for the Belgian bankruptcy courts to resolve certain claims, combined with the Third Circuit's admonition in the Stonington case to respect and accommodate the L&H Belgian

---

Restatement (Second) of Conflicts. Cosme v. Whitin Machine Works, Inc., 417 Mass. 643, 646, 632 N.E.2d 832, 834 (1994); St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP, 223 F. Supp.2d 171, 175-76 (D. Mass. 2002).

bankruptcy as a matter of international comity, demonstrate that the Belgian bankruptcy court proceedings have been recognized as fundamentally fair.

The need for coordination between the dual bankruptcy proceedings, and the lack of a United States nexus to L&H's claims against KPMG-B, strongly indicate that this Court should defer to the Belgian courts in this matter on the basis of international comity. Two cases involving dual U.S. and foreign bankruptcy proceedings demonstrate the appropriateness of dismissing this action on the basis of international comity. In re Maxwell Comm. Corp., 93 F.3d 1036, 1051 (2d Cir. 1996), and in re Commodore Int'l Ltd., 242 B.R. 243, 260(Bankr. S.D.N.Y. 1999), the courts held that dismissal of preference actions against foreign defendants filed in the U.S. bankruptcy proceedings was warranted on the basis of international comity because of the pending parallel insolvency proceedings in foreign courts. Just as in those cases, claims on behalf of L&H against KPMG-B arise out of a relationship centered in Belgium and are based on conduct that occurred largely in Belgium, and accordingly, Belgium has a stronger interest in overseeing the claims in the Belgian proceeding. Moreover, there is the very real possibility that KPMG-B could be exposed to suit in two separate jurisdictions with respect to the exact same claim and on behalf of the same plaintiff, L&H. This double jeopardy risk weighs heavily in favor of deferring to Belgium and dismissing the claims against KPMG-B on the basis of international comity.

## CONCLUSION

For all the foregoing reasons and the reasons set forth in the accompanying declarations, Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren respectfully requests that the Court issue an order granting its motion to dismiss the Complaint, with prejudice, and for such other relief as the Court deems just and proper.

Dated:  January 7, 2005

Respectfully submitted,

Michael J. Stone, Esq.
PEABODY & ARNOLD
30 Rowes Wharf
Boston, MA 02110
(617) 951-4702
*Counsel for Klynveld Peat Marwick*
*Goerdeler Bedrijfsrevisoren*

Of Counsel:

HOGAN & HARTSON LLP
By:  /s/ Nicholas W.C. Corson
George A. Salter, Esq.
John A. Redmon, Esq.
Nicholas W.C. Corson, Esq.
875 Third Avenue
New York, NY 10022
(212) 918-3000

<u>Certificate of Service</u>

I, Nicholas W.C. Corson, hereby certify that on January 7, 2005, I caused a true copy of KPMG-B's Memorandum of Law in support of its motion to dismiss the complaint, together with the supporting Declarations of Michel Desaive and Nicholas W.C. Corson to be electronically filed and served upon the following counsel of record by electronic mail and by first-class U.S. mail:

<u>/s/ Nicholas W.C. Corson</u>

| | |
|---|---|
| Joel G. Beckman, Esq.<br>Nystrom Beckman & Paris LLP<br>10 St. James Avenue, 16th Floor<br>Boston, MA 02166<br>Phone: (617) 779-9100<br>Fax: (617) 778-9100<br>jbeckman@nbparis.com<br><br>*Attorneys for Plaintiff Scott L. Baena* | David W. Trench, Esq.<br>Scott G. Klein, Esq.<br>Bilzin Sumberg Baena Price & Axelrod LLP<br>200 South Biscayne Boulevard, Suite 2500<br>Miami, FL 33131<br>Phone: (305) 350-2359<br>Fax: (305) 351-2261<br>dtrench@bilzin.com<br>sklein@bilzin.com<br><br>*Attorneys for Plaintiff Scott L. Baena* |
| Kevin Lesinski<br>Kristin McGurn<br>Seyfarth Shaw<br>World Trade Center East<br>Two Seaport Lane, Suite 300<br>Boston, MA 02110<br>Phone: (617) 227-5020<br>Fax: (617) 946-4801<br>klesinski@seyfarth.com<br>kmcgurn@seyfarth.com | Michael P. Carroll<br>Michael S. Flynn<br>Suong T. Nguyen<br>Davis Polk & Wardwell<br>450 Lexington Avenue<br>New York, NY 10017<br>Phone: (212) 450-4000<br>Fax: (212) 450-3800<br>mcarroll@dpw.com<br>mflynn@dpw.com<br>nguyen@dpw.com<br>*Attorneys for Defendant KPMG LLP* |