UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT L. BAENA, LITIGATION TRUSTEE OF THE LERNOUT & HAUSPIE SPEECH PRODUCTS N.V. LITIGATION TRUST | ) ) ) ) |
| Plaintiff, | ) ) ) |
| - v - | ) ) |
| KPMG LLP and KLYNVELD PEAT MARWICK GOERDELER BEDRIJFSREVISOVEN, | ) ) ) |
| Defendants. | ) ) |

Civil Action No.  04-12606 PBS

## MEMORANDUM OF LAW IN SUPPORT OF KPMG LLP'S
## MOTION TO DISMISS THE COMPLAINT

DAVIS POLK & WARDWELL

Michael P. Carroll
Michael S. Flynn
Suong T. Nguyen
Julian J. Moore
450 Lexington Avenue
New York, NY  10017

Dated:  January 7, 2005

SEYFARTH SHAW LLP

Kevin J. Lesinski (BBO #554140)
William J. Hanlon (BBO # 551878)
Kristin G. McGurn (BBO #559687)
World Trade Center East
Two Seaport Lane
Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800
Telecopier:     (617) 946-4801

*Attorneys for KPMG LLP*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT..................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................................................3

ARGUMENT..........................................................................................................................6

I.  THE COMPLAINT WARRANTS DISMISSAL BASED ON PLAINTIFF'S FAILURE
    TO ESTABLISH STANDING AND THE DOCTRINES OF IMPUTATION AND
    *IN PARI DELICTO* ...........................................................................................................6

II.  THE STATUTES OF LIMITATIONS HAVE RUN WITH RESPECT TO
     PLAINTIFF'S MALPRACTICE AND AIDING AND ABETTING BREACH OF
     FIDUCIARY DUTY CAUSES OF ACTION ...................................................................13

III.  PLAINTIFF'S CONSUMER PROTECTION ACT CLAIM FAILS
      AS A MATTER OF LAW.................................................................................................20

    A.  The Complaint Fails to Allege that Unfair and Deceptive Activity
        Occurred Primarily And Substantially In Massachusetts ................................21

    B.  The Trustee's Chapter 93A Claim Cannot Be Based Upon Negligence........................24

CONCLUSION......................................................................................................................26

## TABLE OF AUTHORITIES
### FEDERAL CASES

In re Advanced RISC Corp.,
    317 B.R. 455, 2004 U.S. Dist. LEXIS 23670 (Bankr. D. Oct., 2004) ................................9

Allen v. Wright,
    468 U.S. 737 (1984).....................................................................................................7

Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,
    267 F.3d 30 (1st Cir. 2001)...........................................................................................3

American Mgmt. Servs., Inc. v. George S. May Int'l Co.,
    933 F. Supp. 64 (D. Mass. 1996) .................................................................................21

American Tissue, Inc. v. Arthur Andersen, L.L.P.,
    2004 U.S. Dist. LEXIS 15732 (S.D.N.Y. August 9, 2004) ..............................................10

Bamberg v. SG Cowen,
    236 F. Supp. 2d 79 (D. Mass. 2002) ...........................................................................18

Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group Inc.),
    336 F.3d 94 (2d Cir. 2003)..........................................................................10, 11, 12, 13

Cenco, Inc. v. Seidman & Seidman,
    686 F.2d 449 (7th Cir. 1982) ................................................................................11, 12

Clinton Hosp. Ass'n v. Corson Group, Inc.,
    907 F.2d 1260 (1st Cir. 1990).....................................................................................24

Compagnie de Reassurance D'Ile de France v. New England Reinsurance Corp.,
    57 F.3d 56 (1st Cir.)...................................................................................................20

Dodds v. Cigna Sec., Inc.,
    12 F.3d 346 (2d Cir. 1993).........................................................................................14

In re Dublin Secs., Inc.,
    133 F.3d 377 (6th Cir. 1997) .......................................................................................9

Feinman v. Lombardo,
    214 B.R. 260 (D. Mass. 1997) ...................................................................................20

In re Gaudette,
    241 B.R. 491 (Bankr. D.N.H. 1999) ........................................................................9, 12

Geo. Knight & Co., Inc. v. Watson, Wyatt & Co.,
        170 F.3d 210 (1st Cir. 1999) ........................................................................17

Henry v. Nat'l Geographic Soc'y,
        147 F. Supp. 2d 16 (D. Mass. 2001) ........................................................21, 24

Hirsch v. Arthur Andersen & Co.,
        72 F.3d 1085 (2d Cir. 1995) ................................................................6, 9, 11

Hirsch v. Arthur Anderson & Co.,
        178 B.R. 40 (D. Conn. 1994) ......................................................................12

Kennedy v. Josephthal & Co.,
        814 F.2d 798 (1st Cir. 1987) ......................................................................17

Klein v. Goetzmann,
        810 F. Supp. 417 (N.D.N.Y. 1993) ............................................................18

In re Lernout & Hauspie Sec. Litig.,
        230 F. Supp. 2d 152 (D. Mass. 2002) ......................................................4, 22

McNamara v. PFS,
        334 F.3d 239 (3d Cir. 2003) ......................................................................12

In re Merrill Lynch & Co., Inc.,
        273 F. Supp. 2d 351 (S.D.N.Y. 2003) ........................................................15

Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,
        267 F.3d 340 (3d Cir. 2001) ............................................6, 9, 10, 11, 12, 20

In re Phillip,
        948 F.2d 985 (5th Cir. 1991) ....................................................................20

Raines v. Byrd,
        521 U.S. 811 (1997) ....................................................................................7

In re Rare Coin Galleries, Inc.,
        862 F.2d 896 (1st Cir. 1988) ........................................................................7

In Re Roco Corp.,
        701 F.2d 978 (1st Cir. 1983) ......................................................................10

In re Shadduck,
        208 B.R. 1 (Bankr. D. Mass. 1997) ..............................................................9

Scholes v. Lehmann,
    56 F.3d 750 (7th Cir. 1995) ...........................................................................12

Shearson Lehman Hutton, Inc. v. Wagoner,
    944 F.2d 114 (2d Cir. 1991)................................................................6, 7, 9

In re Sterling Foster & Co., Inc. Sec. Litig.,
    222 F. Supp. 2d 216 (E.D.N.Y. 2002) ............................................................18

In re Tyco Int'l. Sec. Litig.,
    185 F. Supp. 2d 102 (D.N.H. 2002).................................................................17

Wight v. BankAmerica Corp.,
    219 F.3d 79 (2d Cir. 2000).................................................................................9

Yankee Candle Co. v. Bridgewater Candle Co.,
    107 F. Supp. 2d 82 (D. Mass. 2000) ...............................................................21

## STATE CASES

Advanced Janitorial Services v. Kligman,
    2000 WL 33170886 (Mass. Super. Oct. 25, 2000) ....................................24, 26

Bowen v. Eli Lilly & Co.,
    408 Mass. 204 (1990) .....................................................................................14

Brackett v. Perry,
    201 Mass. 502 (1909) .....................................................................................17

Cambridge Biotech Corp. v. Deloitte & Touche,
    1997 WL. 42516 (Mass. Super. Ct. 1997) ......................................................19

Commonwealth v. Delaney,
    425 Mass. 587 (1997) .....................................................................................17

Darviris v. Petros,
    442 Mass. 274 (2004) .....................................................................................24

Darviris v. Petros
    59 Mass. App. Ct. 323 (2003).........................................................................26

Doe v. Commonwealth,
    2000 WL. 1099651 (Mass. Super. July 20, 2000) ..........................................14

Dooley v. G.H. Harnum Co.,
    1994 WL 879454 (Mass. Super. Jan. 25, 1994)..............................................25

Downey v. Gove,
  201 Mass. 251 (1909) ...........................................................................9

Duane v. Merchants Legal Stamp Co.,
  231 Mass. 113 (1918) ..........................................................................10

Engelhart v. Kas Carpets, Inc.,
  427 N.Y.S.2d 714 (Sup. Ct. N.Y. Cty. 1980) ....................................20

Felton v. Labor Relations Comm'n.,
  33 Mass. App. Ct. 926 (1992)............................................................14

Frank Cooke, Inc. v. Hurwitz,
  10 Mass. App. Ct. 99 (1980)...........................................13, 14, 17

Gelormini v. Pignatiello,
  1994 WL. 902947 (Mass. Super. Dec. 9, 1994) ................................15

Hanson Housing Auth. v. Dryvit System, Inc.,
  29 Mass. App. Ct. 440 (1990)......................................................14, 17

Kuwaiti Danish Computer Co. v. Digital Equipment Corp.,
  438 Mass. 459 (2003) ...................................................................22, 23

Lawton v. Estes,
  167 Mass. 181 (1986) ...........................................................................9

Lipton v. News Int'l PLC,
  514 A.2d 1075 (Del. 1986) ...................................................................8

Lynch v. Signal Finance Co.,
  367 Mass. 503 (1975) .........................................................................17

Lyons v. Elston,
  211 Mass. 478 (1912) ...........................................................................9

Malapanis v. Shirazi,
  21 Mass. App. Ct. 378 (1986)............................................................15

Melrose Housing Auth. v. New Hampshire Ins. Co.,
  24 Mass. App. Ct. 207 (1987)............................................................14

Morrison v. Toys "R" Us, Inc.,
  441 Mass. 451 (2004) .........................................................................24

Olsen v. Bell Telephone Lab., Inc.
    388 Mass. 171 (1983) ................................................................15

Poly v. Moylan,
    423 Mass. 141 (1996) ...............................................................26

Riley v. Presnell,
    409 Mass. 239 (1991) ...............................................................13

Salinsky v. Perma-Home Corp.,
    15 Mass. App. Ct. 193 (1983) ...................................................17

Scattaretico v. Puglisi,
    60 Mass. App. Ct. 138 (2003) .....................................................9

Squeri v. McCarrick,
    32 Mass. App. Ct. 203 (1992) ...................................................25

Szymanski v. Boston Mut. Life Ins. Co.,
    56 Mass. App. Ct. 367 (2002) .............................................13, 17

Tooley v. Donaldson, Lufkin, & Jenrette, Inc.,
    845 A.2d 1031 (Del. 2004) ..........................................................8

Underwood v. Risman,
    414 Mass. 96 (1993) .................................................................25

White v. Peabody Constr. Co., Inc.,
    386 Mass. 121 (1982) ...............................................................17

In re Xchange Inc. Sec. Litig.,
    2002 WL 1969661 (D. Mass. Aug. 26, 2002) ..........................17

**DOCKETED CASES**

In re Lernout & Hauspie Sec. Litig.,
    Civil Action No. 00-11589 (PBS) ...............................................5

Nisselson v. Lernout,
    Civil Action No. 03-10843 (PBS) ........................................1, 5, 8

## FEDERAL STATUTES

11 U.S.C. § 108 (2004) ................................................................................................19

11 U.S.C. § 541(a)(1) ..................................................................................................7

## STATE STATUTES

Mass. Gen. Laws Ann. ch. 260, § 4 (2003) ...............................................................13

Mass. Gen. Laws, Ch. 93A ......................................................................................4, 20

Mass. Gen. Laws, Ch. 93A, § 11 ...............................................................................21

**MEMORANDUM OF LAW IN SUPPORT OF KPMG LLP'S
MOTION TO DISMISS THE COMPLAINT**

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure,

Defendant KPMG LLP ("KPMG US") respectfully submits this memorandum of law in support

of its motion to dismiss the Complaint by the L&H Litigation Trustee ("the Complaint").  For the

reasons stated below, the Complaint against KPMG US should be dismissed in its entirety.

**PRELIMINARY STATEMENT**

This action involves the same type of claims as those in the Nisselson action, which this

Court dismissed in August, 2004.  See Nisselson v. Lernout, Civil Action No. 03-10843 (PBS),

Memoranda and Orders dated August 9, 2004 and August 13, 2004, attached hereto as Exhibits

A and B.  In Nisselson, the litigation trustee of a bankrupt company, Dictaphone Corporation

("Dictaphone"), attempted to sue for damages which, if established, were sustained by

shareholders, not by the company.  In this action, yet another litigation trustee for another

bankrupt company, Lernout & Hauspie Speech Products, N.V. ("L&H"), is attempting to sue for

damages which were sustained by creditors of the bankrupt company, not the company itself.

The claim here is that L&H borrowed $340 million, which it allegedly would not have

been able to borrow without an audit opinion from its auditor, Klynveld Peat Marwick Goerdeler

Bedrijfsrevisoven ("KPMG Belgium").  The loan, which has since been forgiven by the

Bankruptcy Court, was never repaid and the L&H Litigation Trustee (the "Trustee" or the

"Plaintiff") (L&H's successor-in-interest), standing in the shoes of L&H, is suing to recover

what L&H's creditors were once owed.

Thus, just as in Nisselson, the Trustee here is attempting to recover for a loss allegedly

incurred by entities whom the Trustee does not represent.

1

In other respects, the Trustee's claims in this action are even more deficient than in Nisselson. The shoes in which the Trustee now stands are those of L&H, the company that is widely alleged to have perpetrated a fraud on everyone, including its auditors. Indeed, the company admitted publicly more than four years ago that its financial statements, which it created and for which it was responsible, were misstated because of the company's errors and irregularities — i.e., its own intentional wrongdoing. (See Compl. ¶¶ 83, 85-86).

This wrongdoing bars the claims raised here. Based on principles of standing and the doctrines of imputation and *in pari delicto,* L&H and its successor are barred from recovering from KPMG US as a result of fraud that L&H itself committed and its trustee is deemed, as a matter of law, to have committed.

In addition, two of the three causes of action (malpractice and aiding and abetting breaches of fiduciary duties by L&H's officers and directors) are barred by the applicable statutes of limitations. The statutes of limitations for accounting malpractice and for aiding and abetting a breach of fiduciary duty in Massachusetts is three years. The alleged injury here occurred at the time L&H allegedly incurred debt in connection with its acquisitions of Dictaphone and Dragon Systems, Inc. ("Dragon") — namely, on or about May 5, 2000 (closing of Dictaphone transaction) and June 7, 2000 (closing of Dragon transaction). Under applicable notice standards, L&H was on notice of its alleged injury and its claims at the very latest by the time it filed for bankruptcy on November 29, 2000 — well over three years before this action was filed on August 2, 2004. Thus, Plaintiff's claims are time-barred and should be dismissed for this independent reason.

Finally, Plaintiff has failed to state a cause of action in his third and remaining claim (violation of Massachusetts' Consumer Protection Act ("MCPA")). The necessary predicate of

such an action is that the alleged unfair and deceptive conduct be centered in Massachusetts. As the Plaintiff's own allegations repeatedly make clear, the conduct that forms the basis of Plaintiff's claims — both L&H's fraud as well as KPMG US's alleged "assistance" — was centered in Belgium, where L&H was headquartered, where its financial statements were prepared, and where the allegedly fraudulent audit opinions were issued. Furthermore, there is no liability under the MCPA for mere negligence, but Plaintiff's MCPA claim is based solely on negligence. Accordingly, this cause of action should be dismissed for these two independent reasons.

## STATEMENT OF FACTS[1] AND PROCEDURAL HISTORY

On November 29, 2000, L&H and other related L&H entities filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the District of Delaware. (Compl. ¶¶ 10, 88). On May 30, 2003, the Bankruptcy Court entered an order confirming a plan of liquidation ("Plan") under Chapter 11. (Compl. ¶¶ 11, 89). The Plan became effective on April 2, 2004. (Compl. ¶ 13). The Plan created the Litigation Trust, and on or after the effective date, assigned to the Litigation Trust all of L&H's pre-petition causes of action. (See Disclosure Statement, at 83).[2] L&H did not file any claims against KPMG US prior to the assignment. Instead, Plaintiff filed this Complaint on August 2, 2004 in the United States Bankruptcy Court

---

[1] The facts set forth herein are taken from allegations in the Trustee's Complaint. For purposes of this Motion, KPMG US assumes, as it must, but does not concede, the truth of Plaintiff's factual allegations.

[2] When considering this Motion to Dismiss, this Court may consider documents integral to or referred to in the Complaint, and may take judicial notice of publicly-filed documents such as the Disclosure Statement filed in connection with L&H's Plan. See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) ("When the complaint relies upon a document whose authenticity is not challenged, such a document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." (internal quotations omitted)). Entitled "Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Official Committee of Unsecured Creditors' Plan of Liquidation for Lernout & Hauspie Speech Products N.V. Under Chapter 11 of the Bankruptcy Code" (the "Disclosure Statement"), the Disclosure Statement was approved by the Bankruptcy Court on April 10, 2003 as having adequate information to permit a creditor to vote on the Plan, and is attached hereto as Exhibit C.

3

for the District of Delaware.  On October 4, 2004, KPMG US filed a motion to transfer this

action to this Court.  The Trustee opposed the transfer motion on several grounds.[3]  On

November 23, 2004, over the Trustee's opposition, Bankruptcy Court Judge Wizmur granted

KPMG US's motion to transfer the action to this Court.[4]

The Complaint asserts three claims against KPMG US:   (1) violation of Mass. Gen.

Laws, Ch. 93A (Count I); (2) aiding and abetting breach of fiduciary duties owed by L&H's

management (Count III); and (3) malpractice (Count V).  The Complaint asserts that L&H

fraudulently overstated its reported revenue through improper recognition and accounting

irregularities, and details the alleged fraudulent activities of the "Breaching Managers."  (See,

e.g., Compl. ¶¶ 22-42).[5]  For example, the Complaint alleges that the Breaching Managers

recorded revenue from barter transactions (Compl. ¶ 25); booked revenue where no contract was

signed, terms were being negotiated, contingencies existed, or collectibility was otherwise

doubtful (Compl. ¶ 29, 32, 35); disguised loan transactions as revenue (Compl. ¶ 37); and made

"little effort to disguise fictitious customers."  (Compl. ¶ 33).  In contrast, the Complaint is

virtually devoid of particularized factual allegations against KPMG US.  It does not allege that

---

[3] For example, in the Litigation Trustee's Opposition to Defendant KPMG LLP's Motion to Transfer and
Memorandum of Law, dated November 8, 2004 ("Opp. Br."), attached hereto as Exhibit D, the Trustee argued that
this Court's "familiarity" with the underlying facts and legal issues may just be a "code word for prejudgment,"
Opp. Br. at 13; that this Court might not provide "impartial consideration" of the Trustee's claims, id.; and, that this
Court may not act expeditiously on a motion to dismiss, see id. at 15-16.

[4] In doing so, Judge Wizmur chastised counsel for the Litigation Trustee for the tone of its opposition
papers and rejected the Trustee's various arguments as unpersuasive.  See November 23, 2004 Transcript of
Telephone Conference Call Before The Honorable Judith H. Wizmur, United States Bankruptcy Court Judge,
attached hereto as Exhibit E, at 13; see also id. at 23 (rejecting Trustee's argument that the Bankruptcy Court would
provide a "speedier result" than this Court); id. at 25 ("We all I'm sure have enough faith in the system, and in
particular, judges to understand that they have the capacity and then some to face each set of parties with the
positions that they take and to resolve their disputes in an impartial way.")

[5] Further weakening Plaintiff's claims, the Complaint conflates KPMG US and KPMG Belgium, failing to
distinguish between entities that the courts have found are legally distinct.  See In re Lernout & Hauspie Sec. Litig.,
230 F. Supp.2d 152, 170-71 (D. Mass. 2002).

KPMG US knew of or conspired in the Breaching Managers' fraud.  Instead, Plaintiff merely alleges that KPMG US entities had "access" to certain L&H information and the "opportunity" to test L&H practices and controls.  (Compl. ¶ 47).

"[T]he discovery of . . . misstatements and overstatements first began in August 2000," four years before the filing of this Complaint.  (Compl. ¶ 5).  The *Wall Street Journal* published an article on August 8, 2000, in which it called into question L&H's financial statements and its recognition of revenue.  (Compl. ¶ 78).  Later, in November 2000, L&H itself issued a press release stating that as a result of "errors and irregularities" it would restate its financial statements.  (Compl. ¶ 83).

Beginning in November 2000, through the first seven months of 2001, and thereafter, numerous parties filed actions against L&H directors and officers, KPMG Belgium, KPMG US and others in the Massachusetts District Court (or in cases transferred to Massachusetts) (collectively, the "Massachusetts Actions"), alleging damages arising from accounting irregularities and misstatements of revenue.[6]  (See Disclosure Statement at 41, 58, 61, 66).  The Massachusetts Actions are based upon the same allegations of improper revenue recognition practices at L&H that the Trustee now raises in his Complaint.  After costly and protracted litigation, this Court dismissed the Dictaphone Trustee's claims against KPMG US on August 13, 2004 because, as here, the Dictaphone Trustee lacked standing to pursue the asserted claims. See Nisselson v. Lernout, Civil Action No. 03-10843, Memorandum and Order dated August 13,

---

[6] KPMG US and KPMG Belgium have been named as defendants in the following L&H-related Massachusetts Actions:  (1)  a consolidated class action entitled In re Lernout & Hauspie Sec. Litig., Civil Action No. 00-11589 (PBS); (2)  four separate actions brought by former shareholders of Dragon and Dictaphone, see infra; and (3) an action entitled Nisselson v. Lernout et al., Civil Action No. 03-10843 (PBS), commenced by the Litigation Trustee of the Litigation Trust of Dictaphone (which had also filed a Chapter 11 bankruptcy petition in Delaware).

2004. Thereafter, KPMG US and KPMG Belgium resolved through settlement the remaining Massachusetts Actions. As of December 22, 2004, both KPMG US and KPMG Belgium have been dismissed from these cases.

## ARGUMENT

### I.     THE COMPLAINT WARRANTS DISMISSAL BASED ON PLAINTIFF'S FAILURE TO ESTABLISH STANDING AND THE DOCTRINES OF IMPUTATION AND *IN PARI DELICTO*

Each of the claims asserted against KPMG US by L&H's successor, the Plaintiff here, should be dismissed because the Complaint itself alleges that controlling officers and directors of L&H were engaged in activities and practices that falsely and artificially inflated L&H's revenues and earnings and which ultimately caused harm to creditors, not to L&H. (Compl. ¶¶ 22-23, 73). Courts repeatedly and routinely dismiss attempts by perpetrators of fraud and their successors to recover from third-parties who allegedly fail to stop the wrongdoer or aid and abet the wrongdoing, under numerous theories, including lack of Article III standing, the Wagoner standing rule, and the doctrines of imputation and *in pari delicto*. See, e.g., Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 354-55 (3d Cir. 2001); Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 120 (2d Cir. 1991). For these reasons, the Complaint warrants dismissal.

The Trustee lacks Article III standing to assert claims against KPMG US because the alleged corporate injury, incurring $340 million of new debt, belongs to the unpaid creditors who extended credit to L&H, not to L&H itself. L&H received cash in exchange for its promise to pay; it has no distinct injury and lacks standing. Standing is a threshold requirement. Lafferty, 267 F.3d at 347. The burden of establishing standing is on the Trustee. Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995). To have standing, "[a] plaintiff must allege

*personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Raines v. Byrd, 521 U.S. 811, 818 (1997), *quoting* Allen v. Wright, 468 U.S. 737, 751 (1984). "The injury alleged must be, for example, 'distinct and palpable,' and not 'abstract' or 'conjectural' or 'hypothetical.' The injury must be 'fairly' traceable to the challenged action, and relief from the injury must be 'likely' to follow from a favorable decision." Allen, 468 U.S. at 751 (citations omitted). The Trustee has failed to meet his burden because there is no distinct corporate injury.

Under the terms of the Plan, and consistent with the allegations in the Complaint, the Trustee is the assignee of L&H and assumed responsibility for the prosecution of L&H's claims. With respect to pre-petition claims, property of the estate is determined "as of the commencement of the case." 11 U.S.C. § 541(a)(1); see also Wagoner, 944 F.2d at 119. The Trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor. In re Rare Coin Galleries, Inc., 862 F.2d 896, 901 (1st Cir. 1988) ("The trustee steps into the shoes of the debtor for purposes of asserting or maintaining the debtor's causes of action which become property of the estate.")

The Trustee lacks standing generally to sue third-parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself. Wagoner, 944 F.2d at 118, *citing inter alia* Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 434 (1972) (holding that a claim against a third-party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation).

By demanding relief equal to the amount of outstanding indebtedness of L&H under the "Belgian Credit Facility," the Trustee reveals that he is attempting to recover on behalf of the creditors, not L&H. In his Complaint, the Trustee claims $340 million in damages:

7

> In connection with and as a necessary consequence of the Dictaphone and Dragon acquisitions, L&H incurred more that $340 million in new debt.

(Compl. ¶ 73).

According to the Disclosure Statement accompanying the Plan, L&H entered into a $430 million "Belgian Credit Facility" in connection with the Dictaphone and Dragon acquisitions. Through a subsidiary, L&H paid $167 million of the proceeds of the Belgian Credit Facility to satisfy bank debt in connection with the Dictaphone acquisition and paid another $41.6 million to redeem Dictaphone Senior Subordinated Notes. The outstanding balance of the Belgian Credit Facility as of the commencement of the case on the petition date was $340 million — the figure that the Trustee has adopted as his damage amount.

The $340 million claim belongs to the creditors, not to L&H, and its successor the Trustee does not have standing to represent the creditors. The Trustee's clever attempt to characterize the damages as "debt incurred" by L&H does not alter the nature of the claims. Rather, "[t]o determine whether a complaint states a derivative or an individual cause of action, we must look to the nature of the wrongs alleged in the body of the complaint, not to the plaintiff's designation or stated intention." Lipton v. News Int'l. PLC, 514 A.2d 1075, 1078 (Del. 1986). The standing question turns on whether the Trustee has asserted an injury to L&H caused by KPMG US, and whether L&H would receive the benefit of any recovery. See Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004). L&H was not damaged by entering into the Belgian Credit Facility. L&H received cash in exchange for incurring debt — a benefit. See Nisselson v. Lernout, Civil Action No. 03-10843, Memorandum and Order dated August 9, 2004, at 13. Because there is no distinct corporate injury to L&H, the Trustee cannot establish standing, and the Complaint should be dismissed.

In addition to the lack of distinct injury and the inability of the Trustee to establish Article III standing, the claims asserted in the Complaint are barred by the doctrines of imputation and *in pari delicto*.   In the First and Second Circuits, these doctrines are analyzed as standing issues.  Wagoner, 944 F.2d at 120; In re Gaudette, 241 B.R. 491, 500 (Bankr. D.N.H. 1999); In re Shadduck, 208 B.R. 1, 3 (Bankr. D. Mass. 1997).  The First Circuit Court of Appeals generally has recognized the *in pari delicto* doctrine, but has yet to extend it to a case involving a bankruptcy trustee.  See In re Advanced RISC Corp., 317 B.R. 455, 2004 U.S. Dist. LEXIS 23670, at **4, 5 (Bankr. D. Mass. Oct. 2004).  In the Third Circuit, these doctrines are analyzed separately from standing, as equitable defenses.  Lafferty, 267 F.3d at 346.  Under either analytical framework, the Trustee is barred from recovery.

In Wagoner, the Second Circuit Court of Appeals upheld the district court finding that "[a] claim against a third party [such as an auditor] for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation."  Wagoner, 944 F.2d at 120.  "Because management's misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, the Wagoner rule bars a trustee from suing to recover for a wrong that he himself essentially took part in."  Wight v. BankAmerica Corp., 219 F.3d 79, 87 (2d Cir. 2000).[7]   The Wagoner rule has been emphatically characterized as "a

---

[7] While the Wagoner rule is based upon New York state law, other jurisdictions have applied its reasoning. See, e.g., Lafferty, 267 F.3d at 357-58 (applying Pennsylvania law); In re Dublin Secs., Inc., 133 F.3d 377, 380 (6th Cir. 1997) (applying Ohio law); Hirsch, 72 F.3d at 1093-95 (applying Connecticut law).  "There are plenty of examples of suits to rescind transactions that are aborted and dismissed when it turns out the plaintiff participated in the wrong that is the ground for the rescission."  Scattaretico v. Puglisi, 60 Mass. App. Ct. 138, 144 (2003).  For prototypical Massachusetts instances, see generally Lawton v. Estes, 167 Mass. 181 (1986) (one heir improperly purchases property at tax sale; plaintiff heir, otherwise entitled upon rescission of the sale to a fractional undivided share with others, is dismissed for having connived at the sale); Lyons v. Elston, 211 Mass. 478 (1912) (defendant secured deed from mother through undue influence; in suit by two relatives to rescind the deed and regain the property, one is dismissed because she participated in the wrong).  In Downey v. Gove, 201 Mass. 251 (1909), the Court affirmed the dismissal of a complaint brought by the assignee for the benefit of creditors to enjoin a foreclosure of property mortgaged to secure the illegal sale of liquor.  The Court found that the assignee stands in (…continued)

*standing* rule – it says that a bankrupt corporation cannot sue a third-party for fraud that the corporation itself participated in because that claim actually accrues to the corporation's creditors." American Tissue, Inc. v. Arthur Andersen, L.L.P., 2004 U.S. Dist. LEXIS 15732, at *36 & n.16 (S.D.N.Y. August 9, 2004) (emphasis in original).  In American Tissue, the debtor-in-possession ("ATI") lacked standing, under Article III, the Wagoner rule, or both, to bring claims against its investment bank for breach of contract, breach of fiduciary duty and fraud on account of failure to allege distinct injury to the corporation and for participation in the alleged wrongdoings, including adoption of a deceptive corporate structure and the promulgation of false information in a prospectus.  Id. at *45.  ATI's malpractice claims based on fraudulent self-dealing and fraudulent conveyance were permitted to stand because these acts "at least conceptually, injured ATI itself, as distinct from its creditors."  Id.

Here, the Complaint details the alleged fraudulent activities of the "Breaching Managers."  (See, e.g., Compl. ¶¶ 22-42).  The conduct of the Breaching Managers is imputed to L&H.  See Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group Inc.), 336 F.3d 94, 100 (2d Cir. 2003) ("Bennett Funding") ("The fundamental principle of agency [is] that the misconduct of managers [or other agents] within the scope of their employment will normally be imputed to the corporation."); In Re Roco Corp., 701 F.2d 978, 984 (1st Cir. 1983) ("We may impute any fraudulent intent of [the sole shareholder] to the transferor [corporation] because, as the company's president, director, and sole shareholder, he was in a position to control the disposition of its property."); Lafferty, 267 F.3d at 358 (concluding that courts impute the fraud

---

(continued…)

the shoes of the assignor, and may not request relief from a contract which itself is a violation of the law.  In Duane v. Merchants Legal Stamp Co., 231 Mass. 113 (1918), the Supreme Judicial Court upheld the dismissal of a stockholder's bill for equitable relief from illegal contractual obligations that he had entered into with the company.

of an officer in the course of his employment to the corporation).  Thus, because L&H's

management participated in the alleged deceptive activities for which the Trustee seeks to find

KPMG US liable, the Trustee cannot proceed against KPMG US.  See Bennett Funding, 336

F.3d at 97 (granting summary judgment to a company's lawyers and accounting firm "on the

ground that the trustee lacked standing to sue third parties where the fraud was perpetrated by the

debtor itself," through its controlling shareholder); see also Hirsch, 72 F.3d at 1093-95 (activities

of general partners imputed to numerous entities under their control).

The doctrine of *in pari delicto* is also an affirmative equitable defense to the Trustee's

claims because the Plaintiff has alleged that L&H and its controlling officers and directors

engaged in fraudulent activities, causing the very harm for which Plaintiff itself now seeks to

recover.  Lafferty, 267 F.3d at 354-55.  The broad idea captured by the doctrine extends to the

Trustee's claim of "deceptive" conduct under Massachusetts statutory law, and to its claims of

malpractice and aiding and abetting breaches of fiduciary duty, which necessarily derive from

allegations of concealment and fraud by L&H.  (Compl. ¶¶ 6, 22-23, 44-47, 63, 71, 92, 111,

126).

Applying the doctrine, Judge Posner made the following point in Cenco, Inc. v. Seidman

& Seidman:

> [The] question [is] whether Seidman was entitled to use the wrongdoing of
> Cenco's managers as a defense against the charges of breach of contract,
> professional malpractice, and fraud . . . [which] when committed by the auditors,
> are a single form of wrongdoing under different names. . . .  Because these
> theories of auditors' misconduct are so alike, the defenses based on misconduct of
> the audited firm or its employees are also alike, though verbalized differently.  A
> breach of contract is excused if the promissee's hindrance or failure to cooperate
> prevented the promisor from performing the contract.  The corresponding defense
> in the case of negligence, is, of course, contributory negligence. . . .  [And, in the
> fraud context, a] participant in a fraud cannot also be a victim entitled to recover
> damages, for he cannot have relied on the truth of the fraudulent representations,
> and such reliance is an essential element in a case of fraud.

11

686 F.2d 449, 453-54 (7th Cir. 1982) (citations omitted).

Here, the allegations boil down to a central theme:  KPMG US is accused of not discovering the Breaching Managers' wrongdoings, and by allegedly assisting with the auditing and certification of financials, KPMG US allegedly committed unfair trade practices, aided and abetted fraud, and committed malpractice.  These various allegations clearly fall within the broad coverage of the *in pari delicto* doctrine.

Challenges to the application of the *in pari delicto* doctrine based upon the subsequent removal of the Breaching Managers have been soundly rejected by the courts in the First, Second and Third Circuits.  See, e.g., In re Gaudette, 241 B.R. at 501-02; Hirsch v. Arthur Anderson & Co., 178 B.R. 40, 43 (D. Conn. 1994).  Following established precedent and the statutory language of 11 U.S.C. § 541(a)(1), the Third Circuit found that it was bound to "evaluate defenses as they existed at the commencement of the bankruptcy."  Lafferty, 267 F.3d at 356.  In Lafferty, the court rejected the Committee's request to consider the post-petition events that removed the offending shareholders and their co-conspirators, stating that "[w]e must evaluate the *in pari delicto* defense without regard to whether the Committee is an innocent successor." Id. at 357, *citing* Bank of Marin v. England, 385 U.S. 99, 101 (1966); *compare with* McNamara v. PFS, 334 F.3d 239, 245 (3d Cir. 2003) *and* Scholes v. Lehmann, 56 F.3d 750, 754 (7th Cir. 1995) (both considering post-petition events because they were not bound by Section 541).  In its recent reaffirmation that *in pari delicto* is a standing issue, the Second Circuit Court of Appeals emphasized that a bankruptcy trustee has no more and no fewer rights than the bankrupt corporation.  Bennett Funding, 336 F.3d at 100-01.  The court's reasoning rests on the fundamental lack of a distinct injury to the corporation and the accrual of the cause of action in favor of the creditors alone, and is unaffected by the presence or absence of an innocent

transferee.  Id.  Here, as in <u>Bennett Funding</u>, L&H was not injured, even if its creditors were. The Trustee does not stand in the shoes of the creditors and has no right to sue third-parties on their behalf.

The Trustee cannot carry his burden of establishing standing.  The Trustee lacks Article III standing on account of his failure to allege distinct injury to L&H.  Article III and the twin doctrines of imputation and *in pari delicto*, whether applied as a standing test or as an equitable defense, preclude him from claiming that KPMG US should have prevented the wrong that L&H's controlling officers and directors, and by imputation, L&H and the Plaintiff, committed. For the foregoing reasons, the Complaint should be dismissed.

## II.    THE STATUTES OF LIMITATIONS HAVE RUN WITH RESPECT TO PLAINTIFF'S MALPRACTICE AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CAUSES OF ACTION

Plaintiff alleges that KPMG US committed accounting malpractice and aided and abetted breaches of fiduciary duties in Massachusetts.  The statute of limitations for accounting malpractice in Massachusetts is three years.  <u>See</u> Mass. Gen. Laws Ann. ch. 260, § 4 (2003) (actions for "malpractice, error or mistake" against certified public accountants and public accountants must be brought within three years of the accrual of the cause of action.); <u>see</u> <u>also</u>, <u>Riley v. Presnell</u>, 409 Mass. 239, 242-44 (1991) (explaining three-year limitation).  Likewise, actions for aiding and abetting a breach of fiduciary duty must be brought within three years of the accrual of the cause of action.  <u>See</u> Mass. Gen. Laws Ann. ch. 260, § 4 (2003).  Both claims accrue at the time of the breach of the contract or injury to the plaintiff.  <u>See</u> <u>Szymanski v. Boston Mut. Life Ins. Co.</u>, 56 Mass. App. Ct. 367, 369-70 (2002), *rev. denied*, 438 Mass. 1106 (2003); <u>Frank Cooke, Inc. v. Hurwitz</u>, 10 Mass. App. Ct. 99, 106 (1980).

Here, the alleged injury occurred at the time L&H incurred debt in connection with its acquisitions of Dictaphone and Dragon – namely, on or about May 5, 2000 (closing of Dictaphone transaction) and June 7, 2000 (closing of Dragon transaction). (Compl. ¶¶ 68, 77). When analyzing the period from which a cause of action accrues, Massachusetts courts often apply the "discovery rule." Melrose Housing Auth. v. New Hampshire Ins. Co., 24 Mass. App. Ct. 207, 212 (1987), aff'd, 402 Mass. 27 (1988). The "discovery rule" provides that a cause of action accrues when the injured party "knows or in the exercise of reasonable diligence should know the facts giving rise to the cause of action." Frank Cooke, Inc., 10 Mass. App. Ct. at 106. "The discovery rule does *not* require that a plaintiff have notice of a breach of duty before the cause of action accrues." Doe v. Commonwealth, 2000 WL 1099651, at *3 (Mass. Super. July 20, 2000) (emphasis in original), *citing* Bowen v. Eli Lilly & Co., 408 Mass. 204, 208 (1990) (affirming dismissal).

Where it is clear on the face of a complaint that the facts alleged are not inherently unknowable and that the plaintiff had notice of the facts underlying its claim, the issue may be decided as a matter of law on a motion to dismiss. Doe, 2000 WL 1099651, at *3, *citing* Riley v. Presnell, 409 Mass. at 243; see also Dodds v. Cigna Sec., Inc., 12 F.3d 346, 352 n.3 (2d Cir. 1993) (resolution on motion to dismiss is appropriate where relevant facts "can be gleaned from the complaint"). The critical question, therefore, is whether the plaintiff's knowledge, actual or attributed, "was sufficient to stimulate further inquiry which was likely to alert it to a cause of action against a defendant." Hanson Housing Auth. v. Dryvit System, Inc., 29 Mass. App. Ct. 440, 446 (1990); see also Felton v. Labor Relations Comm'n., 33 Mass. App. Ct. 926, 928 (1992) (limitations period starts running when events occur or facts surface that would cause a reasonably prudent person in the plaintiff's position to become aware that he or she has been

injured).  Thus, where such notice exists, the accrual date of the cause of action is the date of that
first fact triggering a duty of further inquiry.  Hanson Housing Auth., 29 Mass. App. Ct. at 446
(accrual occurs when facts stimulate further inquiry), *citing* Errichiello v. Eli Lilly and Co., 618
F. Supp. 484, 486 (D. Mass. 1985).

      Notice of a cause of action does not mean that the plaintiff has to actually commence an
inquiry or discover every fact necessary to prevail on its claim.  A plaintiff need not understand
the full extent or nature of any injury.  Olsen v. Bell Telephone Lab. Inc., 388 Mass. 171, 175
(1983).[8]  Nevertheless, the limitations period commences when the plaintiff is "informed of facts
which *suggest* that she has been injured."  Gelormini v. Pignatiello, 1994 WL 902947, at *3
(Mass. Super. Dec. 9, 1994), *citing* Felton, 33 Mass. App. Ct. at 927-28 (1992) (emphasis in
original); see also In re Merrill Lynch & Co., Inc., 273 F. Supp.2d 351, 380 (S.D.N.Y. 2003)
("[T]he statute begins to run as long as plaintiffs were aware of the existence of alleged false
*statements*, regardless of whether they were aware of alleged fraudulent *intent*." (emphasis
added)).

      The Complaint and Disclosure Statement are replete with evidence that L&H was both
aware, and put on sufficient notice, of the alleged accounting fraud to start the applicable statutes
of limitations running far more than three years before the filing of the Complaint on August 2,
2004.  For example:

- "On August 8, 2000, *The Wall Street Journal* began reporting the results of
  inquiries it had into L&H and its explosive growth.  As would be revealed over
  the coming months, merely by asking a few questions of purported "customers,"
  the *Journal's* reporters (based in Boston) were able to uncover the widespread
  overstatement of revenue. . . ."  (Compl. ¶ 78).

_____

[8] See also Malapanis v. Shirazi, 21 Mass. App. Ct. 378, 382-83 (1986) ("Massachusetts does not require
discovery of each of the elements of the cause of action — duty, breach, causation, and damages before the
limitations clock in G.L. c. 260, § 4 starts ticking.").

- "Beginning in August 2000, however, L&H NV became mired in controversy and litigation, which ultimately compelled L&H NV (and the other members of the L&H Group) to seek Chapter 11 protection." (Disclosure Statement at 38).

- "[O]n August 8, 2000, an article appeared in *The Wall Street Journal* raising issues regarding the integrity of L&H NV's financial statements, focusing specifically on business and accounting practices at L&H NV's Korean subsidiary, L&H Korea." (Disclosure Statement at 38).

- "On August 31, 2000, the Securities and Exchange Commission (the "SEC") issued the Order Directing Private Investigation And Designating Officers To Take Testimony, signaling the commencement of a formal SEC Investigation." (Disclosure Statement at 38).

- "On September 21, 2000, L&H issued a press release announcing an SEC investigation into L&H and reporting that its Audit Committee had initiated its own investigation of L&H's prior financial statement at the request of L&H's Board of Directors." (Compl. ¶ 80).

- "On November 9, 2000, . . . L&H issued a press release announcing that . . . [a]s a result of certain errors and irregularities identified in the audit committee inquiry, the Company expects to restate its financial statements for the periods 1998, 1999 and for the first half of 2000." (Compl. ¶ 83).

- "On November 15, 2000, KPMG withdrew its audit report of L&H's 1998 and 1999 financial results, stating that its prior audit opinions "should no longer be relied upon." (Compl. ¶ 85).

- "KPMG ultimately was named as a defendant in a series of securities lawsuits relating to its certification of various financial reports filed by L&H NV. These suits were filed by, among others, the Stonington Entities and the Bakers in the United States District Court for the District of Delaware." (Disclosure Statement at 40).

- "In January 2000, a complaint was filed in a consolidated purported class action lawsuit in the United States District Court for the District of Massachusetts. . . ." (Disclosure Statement at 41).

- "On or about December 7, 2000, Rocker Management . . . filed a complaint in the United States District Court for the District of New Jersey. . . ." (Disclosure Statement at 41).

Thus, any attempt to save this case from dismissal as time-barred fails for two reasons.

First, the allegedly misrepresented information was not in any way "inherently unknowable."

Second, it was actually known to the Plaintiff more than three years before the commencement

of this action. It is clear from the Complaint that all of the necessary information to form the

allegations asserted by the Trustee was eminently "knowable," as of at least September 21, 2000

when L&H's Audit Committee commissioned its own independent investigation. As of that

date, L&H had more than sufficient facts, as well as the ability to investigate and discover the alleged misrepresentations and omissions alleged in the Complaint, to trigger commencement of the limitations period.  <u>Commonwealth v. Delaney</u>, 425 Mass. 587, 592 (1997); <u>Hanson Housing Auth.</u>, 29 Mass. App. Ct. at 446 (plaintiff is on notice of a claim when informed of sufficient facts to "stimulate further inquiry" that would likely alert it to the cause of action); <u>see also</u> <u>Geo. Knight & Co., Inc. v. Watson, Wyatt & Co.</u>, 170 F.3d 210, 214 (1st Cir. 1999) ("there can be no question that [plaintiff] had sufficient information — indeed, *all* of the information — it needed to know of [its claims]") (emphasis added); <u>In re Xchange Inc. Sec. Litig.</u>, 2002 WL 1969661, at *2 (D. Mass. Aug. 26, 2002) (storm warnings, including public controversy over accounting strategy, triggered inquiry notice).  Furthermore, it is indisputable that L&H had the actual report of the results of that investigation, listing a host of accounting irregularities related to L&H's 1998 and 1999 revenues, by November 2000.  (Compl. ¶ 86).  Accordingly, there is no question that by the fall of 2000 at the latest, Plaintiff was aware of the L&H fraud and the various misrepresentations on which his claims are based.  Because the Trustee waited more than three years to bring his claims after discovering the necessary information to form his allegations, his malpractice and aiding and abetting claims are time-barred.[9]

---

[9] The Trustee has not alleged facts sufficient to toll the statute of limitations for fraudulent concealment under M.G.L. c. 260, § 12, which requires proof that the defendant concealed the existence of the plaintiff's cause of action through some affirmative act done with intent to deceive.  <u>Szymanski</u>, 56 Mass. App. Ct. at 380-81.  The Litigation Trustee fails to allege any "affirmative act" done by KPMG US "with the intent to deceive," or that it acted at all after April 2000.  <u>Frank Cooke, Inc.</u>, 10 Mass. App. Ct. at 108; <u>see also</u> <u>Lynch v. Signal Finance Co.</u>, 367 Mass. 503, 507 (1975) (fraudulent concealment requires affirmative act of concealment); <u>Salinsky v. Perma-Home Corp.</u>, 15 Mass. App. Ct. 193, 196-97 & n.5 (1983) (concluding even when fraud is assumed in initial transaction underlying suit, mere silence in subsequent dealings is not fraudulent concealment; there still must be the requisite affirmative act).  Here, there is no allegation that KPMG US affirmatively concealed any information from L&H during its investigation, or even that KPMG US, as opposed to L&H, possessed any of the information required by its Audit Committee to complete their review and inquiry.  Absent such allegations, any argument that the issues alleged in the Complaint were somehow affirmatively concealed by KPMG US — a third-party — must be rejected.  <u>See</u> <u>White v. Peabody Constr. Co., Inc.</u>, 386 Mass. 121, 133-34 (1982) (rejecting plaintiffs' argument that facts known to them were fraudulently concealed by defendant); <u>Brackett v. Perry</u>, 201 Mass. 502, 505 (1909) (statute not tolled if plaintiff also had means to acquire the facts on which his cause of action is based). (…continued)

In a related case arising out of L&H's acquisition of Dragon — <u>Bamberg v. SG Cowen</u>, 236 F. Supp.2d 79 (D. Mass. 2002) — this Court dismissed as untimely the Bambergs' Section 10(b) claim against SG Cowen because it found that these very same public statements and information put all putative plaintiffs on notice of the fraud:

> A series of such articles continued in the *Wall Street Journal* throughout the fall of 2000. During the month of November, 2000, L&H made a number of public pronouncements regarding misstatements and omissions in previously reported financial statements. On November 17, 2000 L&H's auditor, KPMG, withdrew its 1998 and 1999 clean audits of L&H and announced that those audits were no longer reliable. On December 19, 2000, L&H's Audit Committee's findings were reported in the Wall Street Journal, chronicling the possible misrecording of up to $277 million in revenue on L&H's books. On April 27, 2001, L&H's principle insiders, Lernout, Hauspie, and Willaert were arrested in Europe for stock manipulation. In short, throughout the fall of 2000 and into the spring of 2001 there were more than 'storm warnings' afoot — the winds were howling, the rains were pouring, and reasonably prudent investors were battening down the hatches to preserve their legal rights.

<u>Bamberg</u>, 236 F. Supp. 2d at 85.

Because this information was sufficient to put third-parties on notice of claims against KPMG US and others, it is *a fortiori* sufficient to have put L&H itself on notice of claims against KPMG US. <u>Klein v. Goetzmann</u>, 810 F. Supp. 417, 424-27 (N.D.N.Y. 1993) (holding that suspicion of accounting irregularities was sufficient to trigger inquiry notice as to accounting professionals, even though plaintiff had no specific information suggesting the existence of a claim against such professionals); <u>see</u> <u>also</u> <u>In re Sterling Foster & Co., Inc. Sec. Litig.</u>, 222 F.

---

(continued…)

Furthermore, under the circumstances, such an argument would be unavailing. <u>Kennedy v. Josephthal & Co.</u>, 814 F.2d 798, 803 (1st Cir. 1987) ("Having been placed on inquiry notice but not having exercised reasonable diligence in investigating the fraud, appellants cannot now claim that the doctrine of fraudulent concealment tolled the . . . statute of limitations"); <u>see also</u> <u>In re Tyco Int'l Sec. Litig.</u>, 185 F. Supp.2d 102, 115-16 (D.N.H. 2002) ("If the plaintiff fails to heed such warnings, it may not later defeat a statute of limitations challenge by arguing that the defendant fraudulently concealed facts on which the claim is based.")

Supp.2d 216, 252-53 (E.D.N.Y. 2002) (holding that revelation of fraud by company triggered inquiry notice with regard to involvement of company's clearinghouse).

Even assuming that inquiry notice did not begin in August 2000, the applicable statutes of limitations undeniably began to run by November 29, 2000, when L&H filed for bankruptcy. The Complaint itself asserts that the purported fraud was made public on that day. (Compl. ¶ 88). As a result, Plaintiff's malpractice and aiding and abetting breach of fiduciary duty claims are barred unless brought, at the latest, by November 29, 2003. Here, the Complaint was filed on August 4, 2004, nearly eight months too late.[10]

Furthermore, tolling under Section 108 of the Bankruptcy Code is of no help to Plaintiff. In general, the Bankruptcy Code extends the state statute of limitations for a debtor. 11 U.S.C. § 108 (2004). Section 108 gives the Trustee at least two years from the date of the order for relief to commence an action the debtor could have brought on the petition date.

Section 108(a) provides:

> If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.

---

[10] In addition, the Complaint falls far short of satisfying Massachusetts' standard for stating a claim for malpractice. In Massachusetts, a complaint for accountant malpractice must allege "with clarity and certainty specific facts concerning (1) the negligent acts or omissions of the defendants; (2) the content of the auditors' reports and certificates; (3) the work which the defendants had agreed to do, had stated that they had done or omitted, and had actually done; (4) the extent to which the defendants' representations were qualified, contained disclaimers, or were expressed as opinions; (5) the generally accepted principles of accounting which the defendants were alleged to have violated; and (6) the facts misrepresented and what the plaintiffs allege the defendants knew, or (after reasonable investigation) should have known, concerning them." Cambridge Biotech Corp. v. Deloitte & Touche, 1997 WL 42516, at *4 (Mass. Super. Ct. 1997), citing Blank v. Katz, 350 Mass. 779 (1966). The Complaint fails to satisfy this standard. While the Trustee states several conclusory allegations about KPMG US's conduct, the Trustee's malpractice claim is doomed due to his failure to state specific facts regarding KPMG US's alleged acts or omissions, specific GAAS violations, and the facts that KPMG US allegedly knew or should have known concerning L&H. See id.

Thus, to the extent there were less than two years remaining on the applicable statutes of limitations, Section 108 would provide the Trustee with two years from the petition date to assert the claims.  To the extent there are more than two years remaining on the applicable statutes of limitations, the applicable limitations period applies.  Therefore, even if one were to assume for the sake of argument that the full limitations of three years remained on L&H's petition date, the applicable statutes of limitations ran sixty (60) days after November 29, 2003, or January 29, 2003, more than six months before Plaintiff filed his Complaint.

The Plaintiff cannot complain that the statutes of limitations ran prior to the formation of the Litigation Trust.  The Trust's predecessor, L&H, "bears the same responsibility to pursue claims of the estate diligently as would a trustee."  In re Phillip, 948 F.2d 985, 988 (5th Cir. 1991).  As a successor to L&H, Plaintiff stands in the shoes of L&H for all purposes, including all defenses that are applicable to actions brought on behalf of L&H.  Lafferty, 267 F.3d at 356; see also Feinman v. Lombardo, 214 B.R. 260, 265 (D. Mass. 1997) ("the bankruptcy estate, as successor to the debtor's causes of action, is subject to the same defenses that the debtor would have faced"); Engelhart v. Kas Carpets, Inc., 427 N.Y.S.2d 714, 715 (Sup. Ct. N.Y. Cty. 1980), citing Doran Lumber Corp. v. James Talcott, Inc., 232 N.Y.S.2d 697, 699 (1st Dep't 1962) ("The right of a trustee in bankruptcy to take over claims belonging to the bankrupt does not create a new cause of action; the cause of action is the same; it is only the ownership thereof that changes.").

## III.    PLAINTIFF'S CONSUMER PROTECTION ACT CLAIM FAILS AS A MATTER OF LAW

In Count I, Plaintiff claims that KPMG US violated the Massachusetts Consumer Protection Act, Mass. Gen. Laws, Ch. 93A.  Chapter 93A is "a statute designed to protect against in-state frauds."  Compagnie de Reassurance D'Ile de France v. New England Reinsurance

Corp., 57 F.3d 56, 90 (1st Cir.), *modified on other grounds on reh'g*, 57 F.3d 56 (1st Cir.), *cert. denied*, 516 U.S. 1009 (1995).[11]  Massachusetts courts have admonished that liability under Chapter 93A is "not to be imposed lightly."  Henry v. Nat'l Geographic Soc'y, 147 F. Supp.2d 16, 23 (D. Mass. 2001) ("Considering the general policy behind 93A of protecting against only those deceptions that occur within the Commonwealth, the court cannot conclude that the alleged misconduct occurred substantially and primarily in Massachusetts.")  Here, a non-Massachusetts Plaintiff, standing in the shoes of L&H, a bankrupt Belgian corporation, attempts to recover for the allegedly deceptive trade practices of a Delaware limited liability partnership in connection with audits performed and certified by KPMG Belgium in Belgium.  For multiple reasons, Count I should be dismissed.

## A.    The Complaint Fails to Allege that Unfair and Deceptive Activity Occurred Primarily And Substantially In Massachusetts

The Trustee fails even to allege that the purported unfair conduct occurred primarily and substantially in Massachusetts.  The Massachusetts Consumer Protection Act, M.G.L. c. 93A, Section 11,  states, in pertinent part:

> "No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method or competition or the unfair or deceptive practice occurred *primarily and substantially* within the Commonwealth."

Id. (emphasis added).

---

[11]  See also Yankee Candle Co. v. Bridgewater Candle Co., 107 F. Supp. 2d 82, 89 (D. Mass. 2000) (rejecting plaintiff's 93A claim because "deception occurred primarily and substantially outside Massachusetts"); American Mgmt. Servs., Inc. v. George S. May Int'l Co., 933 F. Supp. 64, 68 (D. Mass. 1996) ("Something more than a Massachusetts plaintiff is required to invoke the provisions of Chapter 93A, and that 'something' is absent here…. [T]here is no conceivable set of facts, reasonably consistent with the complaint, which would constitute violations of Chapter 93A taking place primarily and substantially in Massachusetts.").

The Massachusetts Supreme Judicial Court has interpreted Section 11 to require judges to determine whether "in the context of the entire . . . claim," the "center of gravity" of the circumstances that give rise to the claim is "primarily and substantially" within the Commonwealth. Kuwaiti Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 473 (2003). For purposes of evaluating whether Massachusetts is the "center of gravity," and jurisdiction over a Chapter 93A claim is thus appropriate, the courts disregard any conduct that is not alleged to violate the statute, i.e., conduct that is not, itself, unfair or deceptive. Id. at 475.

The Trustee's Complaint alleges a total of two (2) facts in support of his contention that Massachusetts is the "center of gravity" in the context of the entire claim. First, he alleges that L&H's United States headquarters were in Burlington, Massachusetts. (Compl. ¶ 26). He also alleges that KPMG US "performed its audit functions primarily out of its Boston office." (Compl. ¶ 97). He alleges neither that the audit functions were "substantially" performed in Boston, nor that these functions, themselves, were unfair or deceptive. Indeed, the Plaintiff fails to allege that *any* KPMG US conduct, which he claims violated Chapter 93A, occurred primarily and substantially in Massachusetts (See Compl. ¶¶ 44-47, 50, 57, 60-61, 64-66, 70, 74, 75, 79).[12] Plaintiff's conclusory, unsupported and unspecific allegations are insufficient to establish that KPMG US's alleged unfair and deceptive acts occurred primarily and substantially in Massachusetts, and Count I should be dismissed.

The Trustee refers to certain email communications and correspondence among representatives of various international KPMG offices, and between certain representatives of

---

[12] The Trustee has not made specific allegations against any particular KPMG US personnel located in Boston, or elsewhere. Even so, this Court already has noted that one of the partners referenced in the Trustee's Complaint was based in London until January 2000. Thereafter, he was based in Houston. In re Lernout & Hauspie Sec. Litig., 230 F. Supp.2d 152, 157 (D. Mass. 2002).

KPMG US and L&H (Compl. ¶¶ 51, 54, 57-58, 61, 64, 75).  None are specifically identified as having been sent or received in Massachusetts.  Indeed, much of the evidence concerning KPMG US communications with L&H originate from KPMG representatives in places other than Massachusetts, including Belgium, Korea and Singapore.  (Compl. ¶¶ 51, 54, 58, 69).  In any event, Plaintiff does not allege that any of these communications was, itself, deceptive.  Id.  As a result, they should be disregarded for purposes of determining the "center of gravity."  Kuwaiti, 438 Mass. at 475.

The thrust of the Trustee's allegations of "unfair and/or deceptive acts" is KPMG US's alleged approval of KPMG Belgium's certification of certain financial statements, which Plaintiff alleges enabled the Breaching Managers to cause L&H to acquire Dragon and Dictaphone and, consequently, increase L&H's debt.  The Plaintiff concedes that certifications of L&H's financial statements were issued not in Massachusetts, but in Belgium, where L&H was headquartered, the majority of the Breaching Managers resided, and L&H's financial statements were prepared.  (Compl. ¶¶ 46, 69).

Further, the Agreement and Plan of Mergers ("Agreements") governing both the Dragon and Dictaphone transactions select *Delaware* in their choice of law and venue provisions, to the extent permitted by *Belgian* law.[13]  Thus, neither L&H, Dragon nor Dictaphone, the parties to the

---

[13] Section 9.6 of the Dictaphone Agreement, entitled "Agreement and Plan of Merger Among Lernout & Hauspie Speech Products N.V., L&H Holdings USA, Inc., Dragon Systems, Inc. and Certain Principal Stockholders of Dragon Systems, Inc.," dated March 27, 2000, attached as Exhibit F, states:

EXCEPT AS OTHERWISE REQUIRED UNDER BELGIUM LAW, THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN, AND IN ALL RESPECTS SHALL BE INTERPRETED, CONSTRUED AND GOVERNED BY AND IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE. . . .  The parties hereby . . . irrevocably submit to the jurisdiction of the Chancery Court of the State of Delaware and the federal courts of the United States of America located in the State of Delaware. . . .

To the same effect, see Section 10.7 of the Dragon Agreement, entitled "Agreement and Plan of Merger Among Lernout & Hauspie Speech Products, N.V., Dark Acquisition Corp. and Dictaphone Corporation," dated March 7, 2000, attached as Exhibit G.

transactions that form the basis of Plaintiff's claims here, contemplated that Chapter 93A would apply.

Plaintiff's allegations indisputably demonstrate, therefore, that the "center of gravity" of the specific conduct that Plaintiff alleges constituted a violation of Chapter 93A was neither primarily nor substantially in Massachusetts.[14]

### B.    The Trustee's Chapter 93A Claim Cannot Be Based Upon Negligence

A plain reading of the Trustee's Chapter 93A claim in Count I demonstrates that it is based on KPMG US's alleged malpractice.  It is well settled, however, that a negligent act does not give rise to a claim under Chapter 93A against an accounting firm.  Chapter 93A requires a "level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce."  Henry, 147 F. Supp.2d at 21 (citation omitted).   Statutory liability simply does not attach unless the conduct is "(1) within [an] . . . established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.  Morrison v. Toys "R" Us, Inc., 441 Mass. 451, 457 (2004) (citation omitted).  In Advanced Janitorial Services v. Kligman, 2000 WL 33170886 (Mass. Super. Oct. 25, 2000), for example, the court held that "[a] negligent act standing by itself does not give rise to a claim under c. 93A."  2000 WL 33170886, at *2 (citation omitted); see also Darviris v. Petros, 442 Mass. 274, 278 (2004) ("a violation of G.L. c. 93A requires, at the very least, more than a finding of mere negligence"); Squeri v. McCarrick, 32 Mass. App. Ct. 203, 207 (1992)

---

[14] Even if this court were to explore the factors utilized by the First Circuit and state appellate courts prior to the Supreme Judicial Court's decision in Kuwaiti to determine whether Massachusetts is the center of gravity (i.e., the acts of which Plaintiff complains occurred "primarily and substantially" in the Commonwealth), his Chapter 93A claim would still fail.  This three-part test required the court to consider (1) where the defendant committed the deception; (2) where the plaintiff was deceived; and (3) the situs of plaintiff's losses due to the deception.  See Clinton Hosp. Ass'n v. Corson Group, Inc., 907 F.2d 1260, 1265-66 (1st Cir. 1990).  Here, the last two factors, in particular, weigh heavily against a finding that the acts complained of were "primarily and substantially" within Massachusetts, since any alleged deception was received, and had its impact, in Belgium.

24

(negligence insufficient to state 93A claim).  A plaintiff must allege more than mere accounting malpractice to survive dismissal, because "negligence is not the predatory behavior that one associates with rascality."  Dooley v. G.H. Harnum Co., 1994 WL 879454, at *2 (Mass. Super. Jan. 25, 1994); see also Underwood v. Risman, 414 Mass. 96, 100 (1993) (culpability under c. 93A "requires more than negligence").

    Here, the Trustee has not alleged any ulterior motive or predatory behavior on behalf of KPMG US in connection with its alleged approval of L&H's financial statements, or any other factor beyond mere negligence, to establish KPMG US's "deception."  The Trustee's conclusory allegation that KPMG US's conduct was "unfair and/or deceptive" (Compl. ¶ 95), is unsupported and insufficient to raise KPMG US's allegedly negligent conduct to the level of "egregious unfairness" that would suggest liability under Chapter 93A.

    For example, the Trustee alleges that KPMG US  authorized "the issuance of unqualified audit opinions on the financial statements of a publicly traded company," (Compl. ¶ 62), and permitted revenue to be recorded improperly.  (Compl. ¶¶ 63, 66.)  As a result, Plaintiff claims, the Breaching Managers were able to conceal their own fraud.  (Compl. ¶ 92.)  The primary allegation of fraudulent — indeed, criminal — conduct in the Complaint relates to L&H's own management, the Breaching Managers, and not to KPMG US.  The Trustee has not alleged that KPMG US was a co-conspirator with the Breaching Managers' or that KPMG US profited or benefited in any way from their fraudulent conduct.  At most, the Trustee is alleging that KPMG US failed to uncover the criminal and fraudulent acts of L&H managers, a claim that clearly sounds in negligence.  Dooley, 1994 WL 879454, at *2 n.2 ("cases of alleged professional malpractice are negligence cases.  Putting different labels on other counts does not change their essence.").  Because accounting malpractice does not amount to an unfair or deceptive act under

25

G.L. c. 93A, <u>Darviris</u>, 59 Mass. App. Ct. 323, 329-30 (2003), Plaintiff's Chapter 93A claim fails.

Absent allegations that KPMG's conduct was "unethical, dishonest, fraudulent, or deceitful," the

Chapter 93A claim cannot stand.  <u>Kligman</u>, 2000 WL 33170886, at *2; <u>see</u> <u>also</u> <u>Poly v. Moylan</u>,

423 Mass. 141, 151 (1996), *cert. denied*, 519 U.S. 1114 (1997) (negligent representation by

attorney did not violate G.L. c. 93A, where attorney "did not engage in conduct involving

dishonesty, fraud, deceit or misrepresentation" (citation omitted)).

## <u>CONCLUSION</u>

For the reasons set forth above, KPMG US respectfully requests that this Court grant

KPMG US's Motion and Dismiss the Complaint with prejudice.

Dated:  January 7, 2005                           Respectfully Submitted,


                                                       /s/  Kristin G. McGurn
                                                      Kevin J. Lesinski (BBO #554140)
                                                      William J. Hanlon (BBO # 551878)
                                                      Kristin G. McGurn (BBO #559687)
                                                      SEYFARTH SHAW LLP
                                                      World Trade Center East
                                                      Two Seaport Lane, Suite 300
                                                      Boston, MA 02210-2028
                                                      Telephone:    (617) 946-4800
                                                      Telecopier:    (617) 946-4801

                                                      Michael P. Carroll
                                                      Michael S. Flynn
                                                      Suong T. Nguyen
                                                      Julian J. Moore
                                                      DAVIS POLK & WARDWELL
                                                      450 Lexington Avenue
                                                      New York, NY 10017
                                                      (212) 450-4000

                                                      ATTORNEYS for KPMG LLP

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney of record for each party electronically and by first-class mail on January 7, 2005.
/s/  Kristin G. McGurn

26