## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

SCOTT L. BAENA, Litigation Trustee          :          04-CV-12606-PBS
of the Lernout & Hauspie Speech Products,  :
N.V. Litigation Trust,                                  :
                                                                 :
                      Plaintiff,                            :
                                                                 :
v.                                                              :
                                                                 :
KPMG LLP and KLYNVELD PEAT           :
MARWICK GOERDELER                         :
BEDRIJFSREVISOREN,                          :
                                                                 :
                      Defendants.                       :
_____:


## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT


David W. Trench, FBN 202975                Joel G. Beckman BBO# 553086
Robert E. Turken, FBN 306355               William C. Nystrom BBO#559656
Bilzin Sumberg Baena Price & Axelrod LLP   Nystrom Beckman & Paris LLP
200 South Biscayne Boulevard                10 St. James Avenue, 16th Floor
Suite 2500                                        Boston, MA  02116
Miami, Florida 33131-5340                    Telephone: (617) 778-9100
                                                         Facsimile: (617) 778-9110


Attorneys for SCOTT L. BAENA,
LITIGATION TRUSTEE OF THE LERNOUT
& HAUSPIE SPEECH PRODUCTS N.V.
LITIGATION TRUST

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 4

    I. LEGAL STANDARD ..................................................................... 4

II. PLAINTIFF HAS ARTICLE III STANDING TO BRING THIS ACTION ........................... 4

    A.    Plaintiff Has Alleged A Real And Direct Injury to L&H Distinct From Any Claim by Any Creditor of L&H. ................................................... 4

    B.    The Wagoner Rule Of Imputation And In Pari Delicto Doctrine Do Not Apply................................................................................................ 9

III. PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM ................................................. 14

    A.    The "Center Of Gravity" Determination Cannot Be Made On A Motion To Dismiss As A Matter Of Law ........................................................... 15

    B.    Allegations Sufficient to State a Claim for Securities Fraud Are Sufficient To State a Claim For a Violation Chapter 93A.................................... 16

IV. PLAINTIFF'S CLAIMS FOR MALPRACTICE AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY ARE NOT TIME-BARRED............................... 18

V. CONCLUSION............................................................................................. 19

## TABLE OF AUTHORITIES

**PAGE**

Cases

Allard v. Arthur Andersen & Co.,
   924 F.Supp. 488, 494 (S.D.N.Y.1996) ................................................................ 6

Amcel Corp. v. Interrated Executive Sales, Inc.,
   170 F.3d 32 (1st Cir. 1999)................................................................................. 18

Branch v. Ernst & Young U.S.,
   311 F.Supp.2d 179, 182-85 (D.Mass. 2004)................................................... 5, 10

Conley v. Gibson,
   355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957) ...................................................... 4

Corcoran v. Frank B. Hall & Co.,
   149 A.D.2d 165, 175, 545 N.Y.S.2d 278 (N.Y.App. Div. 1st Dep't 1989).............. 6

Fleet National Bank v. Certain Underwriters,
   2003 WL 21246552 at *3 (Mass.Super.).......................................................... 18

Hannover Corp. of America v. Beckner,
   211 B.R. 849, 854- 55 (M.D.La.1997) ................................................................. 5

In re Exide Technologies, Inc.,
   299 B.R. 732, 750-52 (Bankr.D.Del. 2003)......................................................... 6

In re Flagship Healthcare, Inc.,
   269 B.R. 721, 728 (Bankr.S.D.Fla. 2001) ...................................................... 6, 10

In re Gouiran Holdings, Inc.,
   165 B.R. 104, 107 (E.D.N.Y.1994) ................................................................ 6, 20

In re The Bennett Funding Group, Inc.,
   336 F.3d 94 (2d Cir. 2003) ............................................................................... 15

In re: Jack Greenberg, Inc.,
   240 B.R. 486, 506 (Bankr. E.D.Pa. 1999) .......................................................... 8

In re: Lernout & Hauspie Sec. Litig.,
   230 F. Supp.2d 152 (D. Mass. 2002).................................................................. 20

Knight v. Mills,
   836 F.2d 659, 664 (1st Cir. 1987)........................................................................ 4

Kuwaiti Danish Computer Co. v. Digital Equipment Corporation,
   438 Mass. 459 N.E.2d 787 (2003) ................................................................ 17, 18

Nisselson v. Lernout,
   Civil Action No. 03-10843 (PBS)......................................................... 1, 2, 10, 16

RGJ Associates, Inc. v. Stainsafe, Inc.,
   338 F.Supp.2d 215 (D.Mass. 2004)................................................................... 18

i

# TABLE OF AUTHORITIES

**PAGE**

Rothman v. Gregor,
220 F.3d 81 (2d Cir.2000) ................................................................... 20

Schact v. Brown,
711 F.2d 1343, 1350 (7th Cir.1983) ................................................. 8, 15

Scheuer v. Rhodes,
416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974)..................................... 4

SEC v. Solucorp. Indus. Ltd.,
197 F.Supp.2d 4 (S.D. N.Y. 2002) ...................................................... 13

Shearson Lehman Hutton, Inc. v. Wagoner,
944 F.2d 114 (2d Cir. 1991) ........................................ 10, 11, 13, 14, 16

Unsecured Creditors v. R.F. Lafferty & Co., Inc.,
267 F.3d 340, 349-53 (3d Cir. 2001) ............................................. 5, 7, 9

Watterson v. Page,
987 F.2d 1, 3 (1st Cir. 1993)................................................................. 4

Wehringer v. Power and Hall, P.C.,
1995 WL 536047 *2 (1st Cir. (Mass.)) (Unpublished Opinion) ............... 21

Wight v. BankAmerica Corp.,
219 F.3d 79 (2d Cir. 2000) ............................................................ 11, 15

Workgroup Technology Corp. v. MGM Grand Hotel, LLC,
246 F.Supp.2d 102 (D.Mass. 2003) .................................................... 18

**Other Authorities**

15 U.S.C. § 78............................................................................... 10

Fed. R. Civ. P. 12........................................................................ 1, 16

M.G.L.A. 93A, §11 (1989) ..................................................... 15, 17, 19

MIAMI 857602.1 7554321648

**TABLE OF AUTHORITIES**

**PAGE**

MIAMI 857602.1 7554321648

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Plaintiff, Scott L. Baena, Litigation Trustee of the Lernout & Hauspie Speech Products, N.V. Litigation Trust ("Plaintiff" or "Trustee"), submits this memorandum in opposition to the motions to dismiss the Complaint ("Motions to Dismiss") filed by Defendants KPMG LLP ("KPMG US") and Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren ("KPMG Belgium") (collectively "Defendants"). Because both Defendants assert virtually the same grounds for dismissal under Fed. R. Civ. P. 12 and (2) (non-venue related)(b)(6), this memorandum addresses the arguments of both Defendants in that respect. A separate memorandum, filed contemporaneously, will address the venue related dismissal grounds asserted by KPMG Belgium under Fed. R. Civ. P. 12(b)(2).

## PRELIMINARY STATEMENT

In their bid to replicate this Court's ruling on the motions to dismiss the complaint filed by the Dictaphone trustee, Defendants attempt to portray this case as nothing more than Nisselson v. Lernout, Civil Action No. 03-10843 (PBS) – warmed over. Defendants would have this Court believe that Plaintiff is simply another trustee seeking to recover damages he cannot collect because those damages were sustained by others. They argue that, just as the claims in Nisselson belonged the shareholders of Dictaphone, Plaintiff's claims in this case are, in reality, claims of the creditors of Lernout & Hauspie Speech Products, N.V. ("L&H"). Defendants contend that Plaintiff, therefore, lacks the requisite Article III standing to bring this action.

Defendants also attempt to borrow from the Nisselson ruling by arguing that Plaintiff is tainted by the imputation to L&H, as a corporate body, of the accounting malfeasance that is at

the core of this action.  Defendants, thus, asert that Plaintiff's claims are barred by the doctrine of *in pari delicto* and the application of the so-called <u>Wagoner</u> rule.

Defendants, however, cannot force the square peg of this case into the round hole of <u>Nisselson</u>.  Although the allegations of Defendants' misconduct in this case parallel the allegations of misconduct in <u>Nisselson</u> – indeed, they parallel the allegations of misconduct alleged in the other securities fraud actions brought before this Court – that is where the similarities end. As demonstrated below, the facts and circumstances of this case not only distinguish this action from <u>Nisselson</u>, but also demonstrate why both the <u>Wagoner</u> rule and the doctrine of *in pari delicto* have no application here.

Contrary to Defendants' contention, L&H suffered a real and direct injury when it incurred over $340 million of new debt in connection with its acquisitions of Dictaphone and Dragon.  This injury is a textbook example of compensable harm to a corporation under the theory of "deepening insolvency."  Redress for this injury belongs exclusively to Plaintiff, as successor to L&H, and not to L&H's creditors.

In the same vein, Defendants' reliance on the <u>Wagoner</u> rule and the doctrine of *in pari delicto* to avoid responsibility for their malfeasance is improper because of L&H's status as an SEC regulated publicly traded corporation.  Pursuant to the express terms of Section 10A of the Securities Exchange Act of 1934, 15 USC § 78J-1, Defendants' engagement to perform the audit of L&H's financial statements included the specific obligation to investigate and report to L&H's audit committee and Board of Directors the accounting fraud involved in this case. Defendants thus cannot excuse their failure to perform these obligations by relying on the fact that there actually was a fraud.

The Wagoner rule and the *in pari delecto* doctrine are also inapplicable in this case because of the "adverse interest exception" to these rules. As alleged in the Complaint, L&H had an audit committee and independent directors who would have averted the dissemination of the false financial information had they been informed.

Defendants also argue that Plaintiff's claim for violation of M. G. L c.93A is simply a claim for professional negligence, with an insufficient nexus to Massachusetts. These arguments are without merit. First, this Court already found virtually identical allegations of misconduct by these same Defendants sufficient to state a claim for federal securities fraud violations; it is thus hard to imagine how the same conduct is now no more than mere negligence. Second, an argument of insufficient nexus to Massachusetts under the Chapter 93A "center of gravity" test is a factual argument that cannot be resolved in the context of a Rule 12(b)(6) motion to dismiss.

Defendants' argument that Plaintiff's claims for malpractice and aiding and abetting breach of fiduciary duty are barred by the applicable statute of limitations is admittedly more compelling. Indeed, Plaintiff acknowledges that under the common application of the accrual and discovery rules the statute of limitation for each of these claims has run. Nevertheless, as we also discuss below, the unique circumstances of this case, in conjunction with the fact that Plaintiff's injury could not be determined, let alone asserted, until well into the bankruptcy warrants the conclusion that the statute of limitation for these claims has not expired.

Accordingly, for these and the other reasons discussed below, Defendants' motions to dismiss should be denied.

## ARGUMENT

## I.  LEGAL STANDARD

A motion to dismiss tests the legal sufficiency of the complaint, not the likelihood of the plaintiff's ultimate success.  Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974).  In assessing a motion to dismiss, the Court must take all allegations contained in the complaint as true and draw all inferences in favor of the plaintiff.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  A complaint should not be dismissed "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957).  "[I]f under any theory, the allegations are sufficient to state a cause of action in accordance with the law, [the court] must deny a motion to dismiss."  Knight v. Mills, 836 F.2d 659, 664 (1st Cir. 1987).

## II.  PLAINTIFF HAS ARTICLE III STANDING TO BRING THIS ACTION

Defendants assert that Plaintiff lacks Article III standing to bring this action because the Complaint does not allege a distinct and palpable injury to L&H.  Defendants characterize the Plaintiff's claim for damages in excess of $340 million as a claim to collect the debt due under the "Belgian Loan Facility" that "belongs to the unpaid creditors who extended credit to L&H, not to L&H itself."  (See Memorandum by KPMG US in support of its Motion to Dismiss, p.6).  Defendants also argue that because L&H received "cash" in exchange for entering into the "Belgian Credit Facility" and because the unpaid portion of the debt was discharged in bankruptcy, L&H has no injury to redress.  Defendants are wrong on each and every point.

## A.    Plaintiff Has Alleged A Real And Direct Injury to L&H Distinct From Any Claim by Any Creditor of L&H.

Defendants portray Plaintiff's allegations of injury as a *novel* theory of "debt incurred."  It is nothing of the sort.  To the contrary, Plaintiff's claim represents a textbook example of the

"deepening insolvency" basis for damages recognized by courts throughout the country, including courts in the overwhelming majority of the federal circuits and, notably, this District itself.  See, e.g., Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 349-53 (3d Cir. 2001); Branch v. Ernst & Young U.S., 311 F.Supp.2d 179, 182-85 (D.Mass. 2004) (Court recognized deepening insolvency claim related to $250 million of debt incurred as a result of accountant's negligently issued opinion letter);  Hannover Corp. of America v. Beckner, 211 B.R. 849, 854- 55 (M.D.La.1997) ("a corporation can suffer injury from fraudulently extended life, dissipation of assets, or increased insolvency"); Allard v. Arthur Andersen & Co., 924 F.Supp. 488, 494 (S.D.N.Y.1996) (as to suit brought by bankruptcy trustee, "[b]ecause courts have permitted recovery under the 'deepening insolvency' theory, [defendant] is not entitled to summary judgment as to whatever portion of the claim for relief represents damages flowing from indebtedness to trade creditors"); In re Gouiran Holdings, Inc., 165 B.R. 104, 107 (E.D.N.Y.1994) (refusing to dismiss claims brought by a creditors' committee because it was possible that, "under some set of facts two years of negligently prepared financial statements could have been a substantial cause of[the debtor] incurring unmanageable debt and filing for bankruptcy protection"); In re Flagship Healthcare, Inc., 269 B.R. 721, 728 (Bankr.S.D.Fla. 2001)(negligently prepared valuation report induced debtor to continue making corporate acquisitions and borrow additional funds, resulting in financial deterioration); In re Exide Technologies, Inc., 299 B.R. 732, 750-52 (Bankr.D.Del. 2003); Corcoran v. Frank B. Hall & Co., 149 A.D.2d 165, 175, 545 N.Y.S.2d 278 (N.Y.App. Div. 1st Dep't 1989) (allowing claims for causing a company to "assume additional risks and thereby increase the extent of its exposure to creditors").

The theory of "deepening insolvency" as a basis for corporate damages was cogently described in the Third Circuit's decision in Lafferty.  In that case, a creditors committee sued the debtor corporations' professionals including, among others, their underwriters, investment advisors and accountants, alleging that the defendants participated in a scheme that "injured the debtor corporations by 'wrongfully expanding the [debtor corporations'] debt out of all proportions of [sic] their ability to repay and ultimately for[cing] the [corporations] to seek bankruptcy protection. . . ."  Id. at 347.

Like Defendants in this case, the defendants in Lafferty challenged the plaintiff's standing to bring the action, arguing that the injury claimed by the plaintiff actually belonged to the creditors of the corporations, and that any recovery by the plaintiff would ultimately pass to those creditors.  The Third Circuit disagreed:

> …*[A] corporation can suffer an injury unto itself, and any claim it asserts to recover for that injury is independent and separate from the claims of shareholders, creditors, and others.*  We think it is irrelevant that, in bankruptcy, a successfully prosecuted cause of action leads to an inflow of money to the estate that will immediately flow out again to repay creditors:
>
>> *The…assertion that this action will benefit creditors is not an admission that this action is being brought on their behalf.*  In a liquidation case, it is commonplace for a trustee to pursue an action on behalf of the debtor in order to obtain a recovery thereon for the estate.  If the trustee is successful in the action, the recovery which he obtains becomes property of the estate and is then distributed pursuant to the scheme established by § 726(a).  *Simply because the creditors of a[n] estate may be the primary or even the only beneficiaries of such a recovery does not transform the action into a suit by the creditors.*  Otherwise, whenever a lawsuit constituted property of an estate which has insufficient funds to pay all creditors, the lawsuit would be worthless since under *Caplin* it could not be pursued by the trustee.

Id. at 348, 349 citing In re: Jack Greenberg, Inc., 240 B.R. 486, 506 (Bankr. E.D.Pa. 1999).  The

Court thus concluded:

> In the instant case, *the Committee sought recovery of damage to the Debtors' property from "deepening insolvency."*  We see no indication that the Committee is attempting to recover for injuries to the creditors.  *Cf. Caplin*, 406 U.S. at 434, 92 S.Ct. 1678 (holding that a trustee may not assert claims on behalf of creditors).   Therefore, accepting the allegations as true and drawing all reasonable inferences in favor of the Committee, we conclude that the claims here belong to the Debtors, rather than to the creditors.

Id. at 349.

Defendants contend that L&H was not harmed by incurring the additional debt because it

received "cash" in exchange, and because the debt "has since been forgiven by the Bankruptcy

Court."  (See Memorandum by KPMG US in support of its Motion to Dismiss, p.8).  A similar

argument was also made by the defendants in Lafferty and likewise rejected.  Citing to the the

Seventh Circuit's equally seminal decision in Schacht v. Brown, 711 F.2d 1343, 1350 (7th

Cir.1983), the Lafferty Court explained:

> *[C]ases [that oppose "deepening insolvency"] rest[] upon a seriously flawed assumption, i.e. that the fraudulent prolongation of a corporation's life beyond the insolvency is automatically to be considered a benefit to the corporation's interests.*   The premise collides with common sense, for the corporate body is ineluctably damaged by the deepening of its insolvency, through increased exposure to creditor liability.  Indeed, in most cases, it would be crucial that the insolvency of the corporation be disclosed, so that shareholders may exercise their right to dissolve the corporation in order to cut their losses.  Thus, acceptance of a rule which would bar a corporation from recovering damages due to the hiding of information concerning its insolvency would create perverse incentives for wrong-doing officers and directors to conceal the true financial condition of the corporation from the corporate body as long as possible.

Id. at 350.

In this case, Plaintiff is seeking to recover for the harm caused to L&H by Defendants' role in assisting and allowing the Breaching Managers to recognize and report grossly overstated revenues. (see e.g., Complaint ¶¶ 3-8, 44-77, 82, 92-98) Without Defendants' involvement with the Breaching Managers accounting processes and their certification of the false financial statements prepared by the Breaching Managers, L&H would not have, and could not have, acquired Dictaphone or Dragon or entered into the $430 million Belgian Loan Facility in connection with the acquisitions. Id. There was no benefit to L&H by incurring this enormous debt in view of its true financial situation. The new and inappropriate debt not only ensured that L&H would have to file bankruptcy once the truth was revealed, but it also eliminated any value that the Dictaphone or Dragon acquisitions could possibly have brought to L&H. (See e.g., Complaint ¶¶ 76-77) As a result of Defendants' actions, the ability of L&H to reorganize in bankruptcy or repay its creditors through liquidation was reduced by no less than $340 million.

Using the amount of debt incurred as a result of the failed acquisitions that could not have occurred without the activity of Defendants, however, is both a logical and recognized basis for assessing damages under the deepening insolvency theory. This is particularly true considering this Court's observations in Nisselson regarding the effect of the Dictaphone merger. In fact, as a corollary to the Court's statement that "the [Dictaphone merger] was a benefit to Old Dictaphone because [L&H] assumed its debts," the merger exposed L&H to injury for the same reason. Nisselson at 13. In any event, computing the precise amount of damages suffered by L&H is not an exercise that should be undertaken in deciding a motion to dismiss.

Accordingly, Plaintiff's allegations that L&H suffered damages in excess of $340 million is entirely appropriate. Plaintiff has clearly alleged a palpable and distinct injury proximately

resulting from Defendants' conduct and, thus, has standing to assert the claims in this action.  See

e.g., Branch, 311 F.Supp.2d at 182-84; In re Flagship Healthcare, Inc., 269 B.R. at 728.

**B.    The Wagoner Rule And *In Pari Delicto* Doctrine Do Not Apply.**

Defendants next argue that Plaintiff's claims are barred by the Wagoner rule and the

doctrine of *in pari delicto*.  Although courts sometimes view the Wagoner rule as a rule of

standing and *in pari delicto* as an equitable defense, it is clear that they both stand for the same

proposition: misconduct of a corporate debtor's insiders will normally be imputed to the trustee

standing in the shoes of the debtor thereby preventing the trustee from recovering against outside

third-parties who also participated in the misconduct.  Shearson Lehman Hutton, Inc. v.

Wagoner, 944 F.2d 114, 120 (2d Cir. 1991) (stating Wagoner rule); Wight v. BankAmerica

Corp., 219 F.3d 79, 86-87 (2d Cir. 2000).

Regardless of the similarities or distinctions between the Wagoner Rule and the doctrine

of *in pari delicto*, neither concept has any application in this case.  As alleged in the Complaint,

L&H was a publicly traded corporation, listed on both NASDAQ and EASDAQ.  Because of its

status as a "foreign issuer" and its acquisitions of United States-based entities, L&H was required

to file, among other things, quarterly and annual reports with the Securities and Exchange

Commission.  These annual reports in turn were required to include audited financial statements,

which was the precise reason that defendants were engaged to perform the auditing services that

are the subject of the Complaint.

Section 10A of the Securities Exchange Act sets forth the requirements imposed on

accountants performing these audits.  In its form prior to the Sarbanes-Oxley amendment of

2002, Section 10A provided as follows:

> Each audit required pursuant to this chapter of the financial statements of an issuer by an independent public accountant shall include, in accordance with generally accepted auditing standards, as may be modified or supplemented from time to time by the Commission –
>
> (1)    procedures designed to provide reasonable assurance of detecting illegal acts that would have a direct and material effect on the determination of financial statement amounts;
>
> (2)    procedures designed to identify related party transactions that are material to the financial statements or otherwise require disclosure therein; and
>
> (3)    an evaluation of whether there is substantial doubt about the ability of the issuer to continue as a going concern during the ensuing fiscal year.

The statute further provided under the heading "Required response to audit discoveries" that "if in the course of conducting an audit pursuant to this chapter…the independent public accountant detects or otherwise becomes aware of information that an illegal act…has or may have occurred" the accountant shall, among other things,

> (B) as soon as practicable, inform the appropriate level of the management of the issuer and assure that the audit committee of the issuer, or the board of directors of the issuer in the absence of such a committee, is adequately informed with respect to illegal acts that have been detected or have otherwise come to the attention of such accountant in the course of the audit, unless the illegal act is clearly inconsequential.

15 U.S.C. § 78j-1(b)(1)(B).

The section also provided under the heading "Response to failure to take remedial action" that," if after determining that the audit committee of the board of directors . . . is adequately informed with respect to the illegal acts that have been detected or have otherwise come to the attention of the accountant in the course of the audit," determines that senior management has

not taken "appropriate remedial actions," the accountant "shall, as soon as practicable, directly

report its conclusions to the board of directors."  15 U.S.C. § 78j-1(b)(2).

The purpose of this section, which was added in 1995 as part of the Private Securities

Litigation Reform Act, was explained by its co-authors, Senator Kerry and Representative

Wyden as follows:

> Senator Kerry – "[T]he clear procedures for early detection
> and disclosure of fraud by the accountants…serve the
> interests of both investors and business." (141 Cong. Rec.
> S9205 (daily ed. June 28, 1995));
>
> Representative Wyden – "[O]ur citizens have a right to
> expect that those they rely on to alert them to outright
> egregious cases of fraud, the public accountants who audit
> the corporate financial statements, will be at their post and
> ready to blow the whistle on a rouge executive." (141
> Cong. Rec. H2846-47 (daily ed. Mar. 8, 1995).

This section has been interpreted in accordance with the stated policy underlying its

enactment.  See SEC v. Solucorp. Indus. Ltd., 197 F.Supp.2d 4 (S.D. N.Y. 2002)(court found

that accountants would be in violation of Section 10A if plaintiff was successful in proving that

(i) the accountants had "knowledge of facts indicating that [illegal revenue recognition in

connection with licensing fees] may have occurred" regardless of scienter, and (ii) the

accountants failed to properly investigate and bring the information to the client's audit

committee).   Thus, by its express terms, stated policy, and interpretation, the section defines the

role and responsibilities of any accountant that has been engaged to perform an audit of an SEC

regulated public company.

Defendants attempt to avoid responsibility under the Wagoner rule and *in pari delicto*

doctrine simply cannot be reconciled with the clear statutory pronouncement of Section 10A.

Indeed, taking Defendants' argument to its logical conclusion, they would have this Court rule

that an accounting firm that was specifically hired to perform a US GAAP and US GAAS audit of an SEC regulated company – and thus in part to investigate and report improper revenue recognition practices such as alleged in the Complaint – could escape responsibility for its failure to report its determinations if the accounting irregularities rose to the level of fraud. Stated otherwise, under defendants' theory, an accounting firm hired to find and report fraud could escape responsibility for precisely what it was hired to do simply because there really was a fraud. Yet, ironically, if the accounting irregularities were only a matter of negligence, and thus did not implicate any intentional culpability on the part of any of the company's management, the accounting firm would not be able to avoid responsibility for failing to report the irregularities. Plaintiff submits that this paradox is self-evident and, in and of itself, demonstrates the illogic and inapplicability of the <u>Wagoner</u> rule and *in pari delicto* doctrine in the context of a publicly traded company such as L&H.

Significantly, Section 10A's layered reporting requirements – first to management, then to the audit committee, then to the board – recognize that a manager engaged in a concealed financial fraud acts adversely to the interests of the company. This recognition that a manager purportedly acting on behalf of his company may in fact be acting to the detriment of the company is also the basis of what is commonly referred to as the "adverse interest" exception to the <u>Wagoner</u> rule and the *in pari delicto* doctrine. As stated by the Second Circuit in its most recent discussion of the <u>Wagoner</u> rule and *in pari delicto* doctrine,

> [t]he rationale for the *Wagoner* rule is "the fundamental principle of agency that the misconduct of mangers within the scope of their employment will normally be imputed to the corporation." Therefore, the acts of the agent will not be charged to the corporation if although the agent purportedly acts for the corporation, he "is really committing a fraud for his own benefit." This "adverse interest" exception is applied "only when the agent has 'totally abandoned' the principal's interests." Nevertheless, if

> the malfeasor has engaged in more than one scheme, it is possible
> to find that certain schemes inured to the benefit of the corporation
> but that others did not.

In re The Bennett Funding Group, Inc., 336 F.3d 94, 100 (2d Cir. 2003)(citations omitted).

The determination of adverse interest, of course, is inherently factual and, thus, not appropriately resolved in the context of a Rule 12(b)(6) motion to dismiss.  See Wight, 219 F.3d 79, 87.  Nevertheless, because Plaintiff's claims for damages in this case are predicated on the theory of deepening insolvency, any actions by L&H management which contributed to the artificial prolongation of L&H's corporate existence and the incurrence of debts it could not possibly repay almost by definition must be adverse to the interests of the company.  As the Seventh Circuit stated in Schacht,

> Defendants argue nonetheless that since the alleged fraudulent
> scheme had the effect of continuing Reserve's active corporate
> existence past the point of insolvency to the detriment of outside
> creditors and policyholders, Reserve was pro tanto benefited.  But
> the fact that Reserve's existence may have been artificially
> prolonged pales in comparison with the real damage allegedly
> inflicted by the diminution of its assets and income.  Under such
> circumstances, the prolonged artificial insolvency of Reserve
> benefited only Reserve's managers and the other alleged
> conspirators, not the corporation.  More colloquially put, if
> defendants' position were accepted, the possession of such
> "friends" as Reserve had would certainly obviate the need for
> enemies.  We do not believe that such a Pyrrhic "benefit" to
> Reserve is sufficient to even trigger the Cenco analysis which
> seeks to determine the propriety of imputing to the corporation the
> directors' knowledge of fraud.  (citations omitted).

Schacht, 711 F.2d at 1348.

It is precisely because of the independent injury suffered by L&H, as opposed to the injury suffered by its shareholders and creditors, and because of the failure of Defendants to comply with their statutorily imposed contractual obligations to L&H as an SEC regulated public company, that this Court's decision in Nisselson is so factually distinguishable.  In Nisselson, the

Dictaphone trustee went out of his way to allege that L&H, Dictaphone's **sole** shareholder, as well as every officer and director of L&H – inside or outside – was complicit in the financial fraud.

In this case, by contrast, the Complaint specifically alleges that the overstatements and misstatements of L&H's revenue were concealed from the audit committee and the independent directors.  (See e.g. Complaint ¶ 92).  The Complaint further alleges that if Defendants had informed the audit committee and independent directors as they were obligated to do, the audit committee and independent directors would have taken appropriate action to prevent the continuation of the accounting malfeasance and the transactions that caused the injury claimed. (See e.g. Complaint ¶ 93).  Indeed, once the accounting irregularities were revealed, the audit committee and the independent directors: (i) promptly removed the breaching managers from their positions; and (ii) undertook to restate the incorrect financial statements.

The bottom line is that just as Defendants cannot invoke this Court's ruling in Nisselson to undermine Plaintiff's standing in this case, they cannot rely on Nisselson to apply the Wagoner rule or *in pari delicto* doctrine.  Whether viewed from the perspective of the contractual obligations imposed on Defendants under Section 10A or the "adverse interest" exception, each of Defendants' arguments predicated on the Wagoner rule or *in pari delicto* doctrine must fail.

### III.  PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR VIOLATION OF M.G.L C. 93A

Defendants assert that Plaintiff has not stated a cause of action under Chapter 93A because of what they claim is Plaintiff's failure to allege either:  (i) actionable conduct occurring

"primarily and substantially" within Massachusetts; or (ii) conduct constituting anything more

than mere negligence.  Each of these contentions is wholly without merit.

A.    **The "Center Of Gravity" Determination Cannot Be Made On A Motion To Dismiss As A Matter Of Law.**

Defendants' argument that Plaintiff has not sufficiently alleged a claim under Chapter

93A can be summarily rejected.  Although §11 of Chapter 93A requires that the subject conduct

must have occurred primarily and substantially in Massachusetts, that requirement is not an

element of a plaintiff's *prima facie* case.  Rather, as the statute makes abundantly clear, the

burden is on the defendant to prove that subject conduct *did not* occur primarily and substantially

in Massachusetts:

> No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth. For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.

M.G.L.A. 93A, §11 (1989).

The Supreme Judicial Court of Massachusetts in Kuwaiti Danish Computer Co. v. Digital

Equipment Corporation, 438 Mass. 459, 473, 781 N.E.2d 787 (2003) held this language means

that the "center of gravity" determination under Chapter 93A is to be analyzed only *after* the

judge makes finding of facts in the context of the §11 claim as a whole.  Consistent with

Kuwaiti, the First Circuit Court of Appeals, the courts of this District, and Massachusetts state

courts, have interpreted the "primarily and substantially" condition as an affirmative defense that

*cannot* be considered in the context of a Rule 12(b) motion to dismiss.  Amcel Corp. v.

Interrated Executive Sales, Inc., 170 F.3d 32, 35 (1st Cir. 1999) ("Under Massachusetts law, the

burden is upon the defendant to disprove the "primarily and substantially" condition, making it

effectively an affirmative defense.")  Workgroup Technology Corp. v. MGM Grand Hotel, LLC, 246 F.Supp.2d 102 (D.Mass. 2003) (Magistrate J. Collings)(motion to dismiss denied as no longer the appropriate vehicle for "center of gravity" determination under Kuwaiti); RGJ Associates, Inc. v. Stainsafe, Inc., 338 F.Supp.2d 215, 233 (D.Mass. 2004) (Magistrate J. Bowler)(center of gravity test is an affirmative defense that can be waived if not raised); Fleet National Bank v. Certain Underwriters, 2003 WL 21246552 at *3 (Mass.Super.) ("The Court finds itself between the mandate of the S.J.C. to decide the 'primarily and substantially' issue 'after making findings of fact' and the very liberal requirements for notice pleadings at the motion to dismiss stage.  It can do nothing by *DENY*, without prejudice, the defendants motion to dismiss....") (emphasis original).

Because the "primarily and substantially" condition cannot be considered on a motion to dismiss, Defendants' argument for dismissal on this basis must be rejected.

## B.  Allegations Sufficient to State a Claim for Securities Fraud Are Sufficient To State a Claim For a Violation Chapter 93A.

Defendants are correct that a claim for violation of Chapter 93A requires more than allegations of mere negligence.  However, Defendants' contention that Plaintiff's Complaint only alleges that Defendants negligently performed accounting services causes one to wonder if Defendants are referring to Plaintiff's Complaint in this action.

In its August 2, 2004 motion to transfer this action to this Court from Delaware Bankruptcy Court, KPMG US engaged in an extensive exercise to compare what it said were the parallel allegations in this Complaint and in the complaints from the various L&H related investor actions that had been filed before this Court.  (See Declaration of David W. Trench in Support dated February 11, 2005 attached as Exhibit "A").  According to KPMG US, "[t]he factual allegations and legal theories in the Complaint are virtually identical to those in [the

investor actions]."  KPMG US further claimed that both this Complaint and the complaints in the

investor actions are "based upon the same allegations of improper revenue recognition practices

at L&H, pertain to the same 1998 and 1999 L&H financial statements, ***quote the same***

***documents*** and ***make the same allegation that KPMG US and KPMG Belgium actively***

***participated in L&H's improper recognition of revenue***."  Id. (emphasis added)

     Defendants' recognition of the identity of the allegations regarding Defendants'

malfeasance in this Complaint and the complaints in the investor actions is critical, particularly

in view of this Court's opinion in In re: Lernout & Hauspie Sec. Litig., 230 F. Supp.2d 152 (D.

Mass. 2002) ("Lernout II").

> Courts assessing claims against independent accountants and
> auditors under the PSLRA have set a high bar:
>
>> For recklessness on the part of a non-fiduciary accountant
>> to satisfy securities fraud scienter, such recklessness must
>> be conduct that is highly unreasonable, representing an
>> extreme departure from the standards of ordinary care.  It
>> must, in fact, approximate an actual intent to aid in the
>> fraud being perpetrated by the audited company.
>
> In re Raytheon Sec. Litig., 157 F.Supp.2d 131, 154 (D.Mass.2001)
> quoting Rothman v. Gregor, 220 F.3d 81, 98 (2d Cir.2000)).
>
>> The plaintiff must prove that the accounting practices that
>> "were so deficient that the audit amounted to no audit at all,
>> or an egregious refusal to see the obvious, or to investigate
>> the doubtful, or that the accounting judgments which were
>> made were such that no reasonable accountant would have
>> made the same decision if confronted with the same facts.
>> A plaintiff may satisfy this high burden by pleading with
>> specificity that the auditor was aware of, but failed to
>> investigate, certain 'red flags' that plainly indicated
>> misconduct was afoot.  Id.  (citations and quotations
>> omitted)
>
> Plaintiff must also point to particular facts and circumstances - -
> such as the magnitude of the fraud, an auditor's knowledge of the
> inadequacy of internal corporate controls, a company's disregard

> of its own internal accounting policies or auditor requests, and/or
> instances in which the company's accounting practices were called
> into question in a manner that would give a reasonable auditor
> pause - - establishing a strong inference of recklessness.

Lernout II, 230 F.Supp.2d 152, 160 (D.Mass. 2002).  Considering this Court's

determination in Lernout II that the investor allegations were sufficient to state a claim for

federal securities fraud, Defendants' contention that the "identical" allegations in this Complaint

claim nothing more than mere negligence cannot be credited.  Accordingly, Defendants'

insufficiency argument in respect of Plaintiff's Chapter 93A claim must also be rejected.[1]

## IV.  PLAINTIFF'S CLAIMS FOR MALPRACTICE AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY ARE NOT TIME-BARRED

Defendants are correct that the applicable statue of limitations for each of Plaintiffs'

malpractice and aiding and abetting breach of fiduciary duty claims is three years.[2]  Defendants

are also correct that at least by November 2000, when L&H filed bankruptcy, L&H had notice

that Defendants might have committed malpractice that is the subject of Counts V and VI of the

Complaint.

Nevertheless, as Defendants acknowledge, the statute of limitations did not begin to run

on either of Plaintiff's malpractice or aiding and abetting fiduciary duty claims until L&H had

notice of both the action by the Defendants that gave rise to L&H's injury and notice that L&H

had actually suffered an appreciable harm.  See Wehringer v. Power and Hall, P.C., 1995 WL

536047 *2 (1st Cir. (Mass.)) (Unpublished Opinion).

---

[1]  For the same reasons KPMG US's argument in footnote 10 of its brief that the Complaint states a claim for malpractice also must fail.
[2]  There appears to be some disagreement between KPMG US and KPMG Belgium over whether Delaware or Massachusetts law is applicable to this issue, with KPMG US pointing to Massachusetts law and KPMG Belgium relying primarily on Delaware law, although KPMG Belgium also cites to Massachusetts law.  In the context of this case, the question of which state's law applies is not material because, as KPMG Belgium states, under both states' laws the statute of limitations and date of accrual are the same.

In this case, the injury alleged by the Plaintiff is the incurrence of debt in excess of $340 million in connection with the acquisition of Dragon and Dictaphone that Plaintiff could not possibly repay. Although Plaintiff acknowledges that the debt was incurred well outside of the three year statute of limitations applicable to both Plaintiff's malpractice and aiding and abetting breach of fiduciary duty claims, that is not the critical issue for purposes of this analysis. Rather, consistent with the deepening insolvency theory on which Plaintiff's damages claim is based, the necessary inquiry is when L&H was put on notice that the severity of the accounting malfeasance would not allow it the benefits of the Dragon and Dictaphone acquisitions and thus leave L&H only saddled with the attendant debts.

Plaintiff submits that the operative date on which the statute of limitations should be deemed to begin is October, 2001 at the earliest. This is the point at which L&H ceased operations, and its bankruptcy efforts converted from a reorganization to a liquidation.

Accordingly, because Plaintiff commenced this action within three years of the date on which L&H ceased operations, Defendants' motion to dismiss based on statute of limitations grounds also must be denied.

## V.  CONCLUSION

Based on the foregoing reasons and authorities, Defendants' arguments are without merit and their Motions to Dismiss should, therefore, be denied in their entirety.

Respectfully submitted,

SCOTT L. BAENA, LITIGATION TRUSTEE
OF THE LERNOUT & HAUSPIE SPEECH
PRODUCTS N.V. LITGATION TRUST

By his attorneys,

_____

Robert E. Turken, FBN 306355

MIAMI 857602.1 7554321648                    19

David W. Trench, FBN 202975
Bilzin Sumberg Baena Price & Axelrod LLP
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-5340
Telephone: (305) 374-7580
Facsimile:  (305) 374-7593

-AND-

Joel G. Beckman BBO# 553086
William C. Nystrom BBO#559656
Nystrom Beckman & Paris LLP
10 St. James Avenue, 16th Floor
Boston, MA  02116
Telephone: (617) 778-9100
Facsimile: (617) 778-9110

Dated: February 11, 2005.

## CERTIFICATE OF SERVICE

I, Joel G. Beckman, hereby certify that on February 11, 2005, I caused a true copy of the foregoing document to be served upon all counsel of record by First Class postage pre-paid mail.

_____
Joel G. Beckman