UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SCOTT L. BAENA, Litigation Trustee of
the Lernout & Hauspie Speech Products,
N.V. Litigation Trust,

     Plaintiff,

  v.

KPMG LLP and
KLYNVELD PEAT MARWICK
GOERDELER BEDRIJFSREVISOREN,

     Defendants.

04-CV-12606-PBS

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
KLYNVELD PEAT MARWICK GOERDELER BEDRIJFSREVISOREN'S
<u>MOTION TO DISMISS THE COMPLAINT</u>**

Michael J. Stone, Esq.
PEABODY & ARNOLD
30 Rowes Wharf
Boston, MA 02110
(617) 951-4702
*Counsel for Klynveld Peat Marwick
Goerdeler Bedrijfsrevisoren*

<u>Of Counsel</u>:
George A. Salter, Esq.
John A. Redmon, Esq.
Nicholas W.C. Corson, Esq.
HOGAN & HARTSON LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000

Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren ("KPMG-B") respectfully submits this Reply Memorandum in further support of its Motion to Dismiss the Complaint and in response to Plaintiff's Memoranda in Opposition to the Motions to Dismiss of KPMG-B (docket no. 55, "Opp. Br.") and of KPMG LLP (docket no. 57, "Joint Opp. Br.").

Plaintiff, Trustee of the L&H Litigation Trust, asserts three causes of action against KPMG-B: malpractice; aiding and abetting a breach of fiduciary duty; and a violation of Massachusetts Gen. L. 93A. The first two causes of actions are barred (among other reasons) by the three year statute of limitations. The 93A claim should be dismissed for any of a number of independent reasons: (a) the statute does not apply to the allegedly unlawful acts of KPMG-B, which did not occur substantially in Massachusetts; (b) the statute does not apply to negligence claims; (c) Plaintiff lacks standing; (d) Plaintiff's claims are barred by the wrongful acts of L&H's management; (e) the Complaint should be dismissed on the basis of *forum non conveniens*; and (f) the Complaint should be dismissed on the basis of international comity in deference to the Belgian courts.[1]

I.  **TWO OF PLAINTIFF'S THREE CLAIMS ARE TIME BARRED**

Plaintiff's malpractice and aiding and abetting a breach of fiduciary duty causes of action are governed by a three year statute of limitations. (KPMG-B Br., docket no. 39, at 2-3.) These claims accrued, for purposes of beginning the three year limitations period, when L&H had notice that it was harmed and had notice of what the alleged cause of the harm was. (Id.) As detailed in KPMG-B's opening brief, L&H had ample notice of potential claims by November

---

[1] In order to avoid potential factual disputes or protracted jurisdictional discovery, and in light of the strength of the other dispositive arguments in favor of dismissal, KPMG-B (without conceding that jurisdiction is appropriate in this case) no longer relies on lack of personal jurisdiction as a basis for its motion to dismiss the Complaint, and KPMG-B explicitly withdraws that argument from its Motion.

2000, at the latest. (Id.) The Complaint in this case was filed on August 2, 2004 – well beyond the three year limitation period.

Plaintiff essentially concedes that these claims are time barred. Plaintiff candidly admits that "at least by November, 2000, when L&H filed bankruptcy, L&H had notice that Defendants might have committed malpractice that is the subject of Counts V and VI of the Complaint." (Joint Opp. Br. at 18.) Plaintiff also "acknowledges that under the common application of the accrual and discovery rules the statute of limitations for each of these claims has run." (Id. at 3.) Nonetheless, Plaintiff argues that the "common" rules should not apply here, and a novel theory, not recognized by any court, nor supported by any legal citation, should be applied to save these claims. (Id. at 19.) Plaintiff contends that it did not have sufficient notice of its alleged "harm" until October 2001, when it became clear that L&H could not repay its debts and would be liquidated in bankruptcy. (Id.) This theory is nonsense. Certainly at the time of the bankruptcy filing, both L&H and its creditors had fair notice that its debts were at risk of not being paid. L&H had sufficient notice of a potential claim, and of potential damage, in the fall of 2000. Accordingly, the statute of limitations has run and Plaintiff's malpractice and aiding and abetting a breach of fiduciary duty claims are barred and should be dismissed.

## II. PLAINTIFF'S 93A CLAIM SHOULD BE DISMISSED

The only claim that is not time-barred as a matter of law is Plaintiff's alleged cause of action under Massachusetts Gen. L. 93A for allegedly unfair and deceptive acts committed by KPMG-B. This claim should be dismissed for the reasons set forth below and in KPMG-B's opening memorandum, both because Plaintiff is barred generally from bringing all its claims, and because Plaintiff fails to state a cause of action under that statute.

A.     **Plaintiff Lacks Standing**

The damages allegedly suffered by L&H for each of its claims is the same: "the incurrence of over $340 million of debt that L&H could not possibly repay." (See Compl., ¶¶ 105, 122, 130.) L&H's inability to "repay" the "over $340 million of debt" is an injury to the company's creditors, and not an injury to L&H. Where a trustee's complaint alleges money damages to creditors, the claim "belongs only to the creditors and the trustee has no standing to assert it." Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 119-20 (2d Cir. 1991); Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1093-1094 (2d Cir. 1995). Here, Plaintiff's claims against KPMG-B are improperly premised upon the interests of L&H's creditors, Plaintiff has failed to show the existence of a distinct injury to L&H, and has thereby failed to demonstrate Article III standing, which mandates dismissal of the Complaint as a matter of law. Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 434 (1972); Wagoner, 944 F.2d at 118-20.

Plaintiff seeks to establish standing by arguing that L&H was harmed by its "deepening insolvency". (Joint Opp. Br. at 5.) Plaintiff relies heavily on the Third Circuit's decision in Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.2d 340, 349 (3d Cir. 2001) as support for the recognition of this theory of damages. Lafferty was decided on the basis of Pennsylvania law, which does not apply to the present case. Neither the First Circuit nor any Massachusetts state court has recognized the validity of the "deepening insolvency" theory of damages. Accordingly, this Court is not bound to accept the novel theory and, based on the precedent cited above, should conclude that the only damage alleged by Plaintiff is harm to the creditors of L&H, which the Trustee lacks standing to pursue.

Even if the Court were to recognize, for purposes of this motion to dismiss, the potential validity of "deepening insolvency" as a theory of damage to L&H, Plaintiff's claims here (as in Lafferty) are barred by the doctrine of *in pari delicto* as discussed below.

### B. The Trustee Cannot Recover Against KPMG-B Because L&H's Breaching Managers Participated in the Wrongdoing

The Trustee purports to stand in the shoes of the bankrupt corporation, L&H. All of the Trustee's claims should be dismissed because the Trustee does not have standing to pursue claims that KPMG-B facilitated L&H management's scheme to artificially inflate L&H's revenue.

When a bankrupt corporation has joined with a third party to defraud its creditors and shareholders, the Trustee cannot recover against the third party. (KPMG-B Br. at 4-5).[2] Courts have consistently applied this rule to bar claims of professional malpractice against accountants. In re Bennett Funding Group, Inc., 336 F.3d 94, 100 (2d Cir. 2003); Hirsch, 72 F.3d at 1094-1095; American Tissue, Inc. v. Arthur Andersen, L.L.P., 275 F. Supp.2d 398, 404-06 (S.D.N.Y. May 5, 2003); American Tissue, Inc. v. Arthur Andersen, L.L.P., 2003 WL 22909155, *3 (S.D.N.Y. Dec. 9, 2003) ("American Tissue II"). Accordingly, because the Trustee alleges that L&H's management committed the wrongdoing at issue, the claims against KPMG-B must be dismissed. Wagoner, 944 F.2d at 118-20.

Similar to the Wagoner rule of standing is the *in pari delicto* defense, which is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct. Pinter v. Dahl, 486 U.S. 622, 632 (1988). The doctrine of *in pari delicto* bars a plaintiff from

---

[2] See also Wagoner, 944 F.2d at 118-20; In re Meridian Asset Mgmt., Inc., 296 B.R. 243, 257-258 (N.D. Fla. 2003)(granting motion to dismiss claims against bank for negligence and aiding and abetting breach of fiduciary duty); In re Inner City Mgmt., Inc., 304 B.R. 250, 254 (Bankr. D. Md. 2003)(granting motion to dismiss claims against third-party professionals); In re Complete Mgmt., Inc., 2003 WL 217050178, *2-*4 (S.D.N.Y. July 29, 2003)(granting motion to dismiss claims against Arthur Andersen accounting firm for negligence and malpractice).

asserting claims against a defendant if the plaintiff bears fault for the claim.[3] This theory bars Plaintiff's claims against KPMG-B in this case, since, as noted, L&H's controlling management orchestrated the inflated revenue scheme. (KPMG-B Br. at 5.)

Plaintiff concedes that the Wagoner rule and the *in pari delicto* doctrine would "normally" bar his claims, but argues that they should not apply in this case. (Joint Opp. Br. at 9.) Plaintiff first suggests that it would be a "paradox" if KPMG-B could "escape responsibility" in this matter. (Id. at 12.) That is not so. First, KPMG-B did not "escape responsibility" on this basis in the investor actions. Second, it's perfectly reasonable (and consistent with the law of *in pari delicto*) to bar L&H from recovering from KPMG-B when L&H intentionally misstated its revenues and actively deceived KPMG-B. In these circumstances, the actions of L&H's management in orchestrating the financial fraud, bar L&H from suing KPMG-B for failing to detect that fraud.

Plaintiff next argues that the Wagoner rule and *in pari delicto* do not apply here because L&H's management were not acting on behalf of, or for the benefit of L&H (the "adverse interest" exception). (Joint Opp. Br. at 9-14.) Plaintiff's argument is without merit, and the wrongdoing of L&H's management bars Plaintiff's claims against KPMG-B.

In Lafferty, "deepening insolvency" claims were dismissed by the District Court, which applied the *in pari delicto* doctrine to impute the wrongful conduct of the corporations' officers

---

[3] Nisselson v. Lernout, No. 03-10843 (PBS) (D. Mass. Aug. 9, 2004)(Saris, J.); In re Gaudette. 241 B.R. 491,496,498-501 (Bankr. D.N.H. 1999) (trustee's claims against third parties barred by the doctrine of in pari delicto; holding that because the debtor could not have asserted claims based on a conspiracy in which it was complicit, the trustee was also barred from asserting such claims); Official Committee of Unsecured Creditors v. R.F. Lafferty & Co, Inc., 267 F.3d 340, 354 (3d Cir. 2001) ("Lafferty") (affirming district court's grant of motion to dismiss "deepening insolvency" claim); In re The Mediators. Inc., 105 F.3d 822 (2d Cir. 1997); Official Committee of The Unsecured Creditors of Color Tile, 322 F.3d 147, 161-64 (2d Cir. 2003); In re Dublin Securities, Inc., 133 F.3d 377, 380 (6th Cir. 1997); Granite Partners, L.P. v. Primavera Familienstiftung, TAG Associates, Ltd., 194 B.R. 318 (S.D.N.Y. 1996); E.F. Hutton & Co. v. Hadley, 901 F.2d 979, 985-87 (11th Cir. 1990).

to the debtor companies and held that the plaintiff, standing in the debtors' shoes, was barred from asserting claims against the third-party professionals. Lafferty, 267 F.2d at 355. The Third Circuit Court of Appeals affirmed, holding that the Court would "impute the fraudulent conduct of [management] to the Debtors because . . . [management] perpetrated the alleged fraud in the course of their employment". Id. at 359-360.

Likewise, in the present case, the Trustee admits that in the course of their employment at L&H, "[t]he Breaching Managers routinely and improperly recorded revenues," by booking "sales even though negotiations were still ongoing, and the 'customer' was under no binding obligation to purchase the product," as well as recording sales "when it was doubtful that the customer could pay for its products or services." (Compl., ¶¶ 23-32.) Consequently, the Breaching Managers' wrongdoing must be imputed to the corporation.

The Trustee cites cases from outside the First Circuit which hold that "the acts of the agent will not be charged to the corporation 'if . . . the agent is really committing a fraud for his own benefit,'" and "totally abandoned" the corporation's interests. (Joint Opp. Br. at 13.) Plaintiff's Complaint, however, alleges that the Breaching Managers' actions "helped spawn the Company's growth" and caused L&H's stock price to rise to more than $70 a share. (Compl., ¶¶ 3-6.) Plaintiff also admits that L&H's management carried out an elaborate scheme of "'manufacturing' transactions to artificially inflate revenues . . [and] transform[ing] loan agreements into purported sales agreements . . . [to] convert[ ] what should have been liabilities into revenues" (Compl., ¶ 37), all of which was done to benefit the company – not the individual wrongdoers. These admissions substantially undermine Plaintiff's assertion that L&H's management totally abandoned L&H's interests and committed the alleged fraud for their own benefit. Indeed, nowhere in the Complaint does the Plaintiff allege that L&H's management

obtained any individual benefits as a result of their scheme, such as a performance bonuses, grants of stock options or other wrongful payments.

In Cenco Inc. v. Seidman & Seidman, 686 F.2d 449, 454-56 (7th Cir. 1982), Judge Posner distinguished between "fraud on behalf of a corporation" and "fraud against the corporation," and found that because the fraud at issue involved a scheme to increase the apparent worth of the company, which enabled the company to obtain certain benefits, the acts of the company's corrupt managers could properly be imputed to the company. Like the corrupt managers in Cenco, L&H's management was not looting or "stealing from the company, as in the usual corporation fraud case, but were instead aggrandizing the company (and themselves) at the expense of outsiders, such as the owners of the companies that [L&H] bought with its inflated stock, the banks that loaned [L&H] money." Cenco, 686 F.2d at 451. Accordingly, their conduct must be imputed to L&H. Id; see also Banco Latino Int'l. v. Gomez Lopez, 95 F. Supp.2d 1327, 1335-37(S.D. Fla. 2000)("when an officer or director's actions were not undertaken to loot or defraud his corporation and the corporation derived some benefit from them, the actions are imputed to the corporation, even if they ultimately resulted in the failure of the corporation").

Finally, Plaintiff also suggests that the Wagoner rule and *in pari delicto* do not apply in this case because, in effect, L&H management did not dominate or control the company, since they were subject to supervision by the Audit Committee and "independent directors". (Joint Opp. Br. at 13-14.) Plaintiff intentionally fails to identify those members of management and the board that participated in the wrongdoing and those that allegedly remained independent. However, as this Court is aware from the prior L&H proceedings, the top senior management of L&H (including Jo Lernout, Pol Hauspie, Gaston Bastiaens, Nico Willaert and Carl Dammekens)

have been identified as having orchestrated the misstatement of revenues at L&H, and these individuals clearly dominated and controlled the company.  As of June 7, 2000, Jo Lernout and Pol Hauspie, the founders, Co-Chairmen and Managing Directors of L&H, controlled more than 30% of the outstanding shares of L&H common stock.  (L&H 10-K report as of 12/31/1999, filed with the Securities and Exchange Commission, June 30, 2000, at p. 65.)[4]  Gaston Bastiaens served as President, Chief Executive Officer and Director of L&H in 2000.  Nico Willaert served as a Managing Director and as Vice-Chairman of L&H in 2000.  Carl Dammekens was the Chief Financial Officer of L&H in 2000.  Motions to dismiss by each of these individuals were denied in the L&H securities litigation, with the exception of Mr. Dammekens, who defaulted.  In re Lernout & Hauspie Securities Litigation, 208 F. Supp.2d 74, 78, n. 3, 90-91 (D. Mass. 2002) (Saris, J.) ("Lernout, Hauspie, Bastiaens, and Willaert each exercised control over the decision-making processes of L&H.").

As to the L&H Audit Committee, Judge Saris previously held that investors adequately stated a claim against the Audit Committee directors for their participation in the securities fraud.  In re Lernout & Hauspie Securities Litigation, 286 B.R. 33 (D. Mass. 2002).  Based on the allegations in that case, Judge Saris ruled that the Audit Committee members could not get "off the hook because they ignored KPMG's admonitions over at least two years regarding deficiencies in the internal audit controls and KPMG's report of serious accounting, cash collection and revenue recognition issues . . . the Audit Committee was reckless in performing this role until at least the November 2000 investigation, after the horse was out of the barn."  Id., at 38.

---

[4]  This Court may take judicial notice of L&H's SEC filing pursuant to Fed.R.Evid. 201.  In re Lernout & Hauspie Securities Litigation, 286 B.R. at 37.

Given the control of the L&H management, the allegation that independent directors would have prevented the dissemination of false financial information by L&H is insufficient to prevent application of the <u>Wagoner</u> rule and the *in pari delicto* doctrine. See <u>Lafferty</u>, 267 F.2d at 360 ("[t]he possible existence of any innocent independent directors does not alter the fact that the [corrupt managers] controlled and dominated the Debtors").

C.   **<u>Massachusetts Gen. L. 93A Does Not Apply to Plaintiff's Claims</u>**

The Massachusetts Consumer Protection Act provides that "no action shall be brought or maintained under this section unless the actions and transactions constituting the alleged . . . unfair or deceptive practice occurred *primarily and substantially* within the Commonwealth." Mass. Gen. L. c. 93A, § 11. As KPMG-B pointed out in its Opening Brief, Plaintiff's claim fails because there are <u>no</u> allegations in the Complaint of any unfair or deceptive practice committed by KPMG-B in Massachusetts. Plaintiff responds, not by pointing to any allegations of conduct in Massachusetts, but by arguing that the question is not appropriately addressed on a motion to dismiss. (Joint Opp. Br. at 15, citing <u>Kuwaiti Danish Computer Co. v. Digital Equipment Corp.</u>, 438 Mass. 459, 473 (2003).)

Plaintiff alleges that KPMG-B violated the Consumer Protection Act by "its certification of L&H's financial statements" which enabled L&H's management to conceal the overstatements and misstatements of L&H's revenues. (Compl ¶ 101.) It is undisputed that the actions constituting the alleged violation by KPMG-B occurred in Belgium. KPMG-B was engaged by L&H in Belgium; KPMG-B's audit opinion on L&H's 1999 financial statements was issued in Belgium and was delivered to L&H (and the allegedly independent directors on the Audit Committee) in Belgium; KPMG-B's engagement partner for the L&H audit worked out of a KPMG-B office located in Belgium. (Desaive Declaration, docket no. 40, ¶¶ 7, 8.) To the

extent that factual findings are required,[5] Plaintiff has not refuted these facts, and they, together with a plain reading of the allegations in the Complaint, establish that the allegedly unlawful conduct of KPMG-B did not occur primarily and substantially in Massachusetts, as required by the statute. See Zyla v. Wadsworth, 360 F.3d 243, 255 (1st Cir. 2004) (dismissing Chapter 93A claim where defendant's unlawful conduct did not occur primarily and substantially in Massachusetts, based on uncontradicted statements in defendant's declaration and plaintiff's failure to plead any such Massachusetts conduct in complaint).

The 93A claim also fails because the Consumer Protection Act, as Plaintiff concedes, does not apply to negligence claims. (KPMG-B Br. at 7; Joint Opp. Br. at 16-18.) Plaintiff argues that because his Complaint is similar to the securities fraud complaints filed by L&H investors against KPMG-B, it must allege more than negligence. However, the Complaint does not support Plaintiff's argument. The Trustee has not alleged fraud or securities fraud by KPMG-B. Rather, he alleges malpractice, i.e., KPMG-B should have discovered the misstatement of revenue by L&H in the course of performing its duties as auditor. This is a negligence claim. The Consumer Protection Act does not apply to such claims. See Darvis v. Petros, 59 Mass. App. 323, 329-30.

Plaintiff has also failed to comply with the requirement under 93A to mail KPMG-B written demand for relief thirty-days prior to filing suit. Mass. Gen. L. c. 93A, §9 (3). Failure to comply with the notice requirement is grounds for dismissing the claim. Rodi v. Southern New England School of Law, 389 F.3d 5, 19 (1st Cir. 2004) (failure to comply with notification requirement "is sufficient ground to justify dismissal of the Chapter 93A claim".)

---

[5] At least one Massachusetts state court, after the Kuwaiti decision, has dismissed a Chapter 93A claim on a defendant's 12(b)(6) motion to dismiss. Fillmore v. Leasecomm Corp., 18 Mass. L. Rptr. 560, 2004 WL 3091642, at * 6 (Mass. Super. Ct. Nov. 15, 2004) (because "the alleged unfair and deceptive trade practices did not occur primarily and substantially within Massachusetts . . . [defendant] is not subject to a 93A claim in this state and its Motion to Dismiss Count V is allowed.").

### D. The Complaint Should Be Dismissed in Favor of a Belgian Forum

Plaintiff argues that Belgium is neither an available (because KPMG LLP has not consented to jurisdiction there) nor an adequate (because Belgium has not enacted the Massachusetts Consumer Protection Act) alternative forum. These arguments are unavailing and the Complaint should be dismissed on the ground of *forum non conveniens*.

Plaintiff initially argues that its choice of forum is entitled to deference. (Opp. Br. at 21.) However, as KPMG-B has pointed out, "where a foreign plaintiff is concerned . . . its choice of forum is entitled to less deference." Varnelo v. Eastwind Transport, Ltd., No. 02-CV-2084, 2003 WL 230741, at *6 (S.D.N.Y. Feb. 3, 2003); see also Iragorri v. United Tech. Corp., 274 F.3d 65, 71 (2d Cir. 2001); Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 102 (2d Cir. 2000).

KPMG LLP has moved to dismiss the Complaint on various grounds, and, if successful, the issue of jurisdiction over it in Belgium would be irrelevant. Whether L&H could sue KPMG LLP in Belgium is a matter for the Belgian courts, but KPMG-B is clearly subject to jurisdiction in Belgium, and the Court could dismiss the claims by L&H against KPMG-B in favor of a Belgian forum, particularly in light of the complex Belgian law issues that are certain to accompany any resolution of such a claim.

Plaintiff also argues that the *forum non conveniens* motion is deficient because KPMG-B has failed to address whether Belgian law recognizes a cause of action similar to the Mass. Gen. L. c. 93A claim or the aiding and abetting a breach of fiduciary duty claim. (Opp. Br. at 23.) Belgian law provides an adequate remedy for the underlying cause of action asserted by Plaintiff against KPMG-B. In our Opening Brief, we cited the full provision of the Belgian law, which provides that auditors are liable to the company for faults committed in the performance of their duties; and are jointly and severally liable to the company and third parties for any damage

resulting from the violation of their duty of care. (KPMG-B Br. at 13, citing paragraphs 1 and 2 of Article 140 of the Belgian Companies Code). This law clearly covers the substance of all of the claims, and the basis for damages, asserted by Plaintiff.

The "availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum." PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 74 (2d Cir. 1998) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 250 (1981). The fact that the law of the foreign forum differs from American law "should ordinarily not be given conclusive or even substantial weight" in assessing the adequacy of the forum. Piper, 454 U.S. at 237. Thus, in PT United, the Second Circuit found that the nonexistence of a RICO statute in Indonesia did not make it an inadequate alternative forum, since the causes of action available in Indonesia "adequately address the underlying controversy expressed in plaintiff's complaint." Id. Similarly here, Belgian law provides a cause of action that addresses the substance of the claims asserted in Plaintiff's Complaint.

Plaintiff fails to address the private and public interest factors relevant to the *forum non conveniens* analysis, which strongly favor dismissal in favor of Belgium. (See KPMG-B Br. at 14-18.) Belgium's interest in the subject matter of this lawsuit – which is ignored by Plaintiff – is substantial. A suit brought on behalf of a Belgian company, against its Belgian auditor, for audits performed substantially in Belgium, is a matter in which Belgium has a significantly greater interest than the United States does. Moreover, Plaintiff does nothing to refute KPMG-B's showing that the bulk of the relevant evidence and witnesses – many of which won't be available if this case continues in the United States – are located in Belgium. (KPMG-B Br. at 14-16.) Plaintiff offers only his wholly unsubstantiated statement in a brief that the Belgian Prosecutor has provided him with "the same information and material that was made available to

the Belgian curators." (Opp. Br. at 25.) It's not clear what this information is or why it is relevant to this lawsuit, and in any event, Plaintiff's anecdote carries no weight. In sum, Belgium is an adequate alternative forum and the public and private factors indicate that it is the far better forum to decide Plaintiff's claims against KPMG-B.

### E.  International Comity Dictates Dismissal of the Complaint

This Court should defer to the Belgian courts to allow the Belgian judicial system to adjudicate any dispute between L&H and KPMG-B, since Belgium has a greater interest in such a controversy. (KPMG-B Br. at 18.) Plaintiff argues that because the U.S. bankruptcy plan for L&H assigned to the Trustee the right to bring claims against KPMG-B and because that plan "specifically took into account issues of international comity", this Court's job is done, and it need not consider Belgium's interest. (Opp. Br. at 26.) That is not the case. In dismissing a U.S. bankruptcy preference action in favor of a foreign forum, the Second Circuit has rejected a similar argument, holding that "the binding effect of the confirmation order" that gave the Trustee exclusive jurisdiction to pursue the action "does not preclude the banks from challenging the applicability of the Bankruptcy Code's avoidance rules to these actions . . . the doctrine of international comity precludes application of the American avoidance law to transfers in which England's interest has primacy." In re Maxwell Comm. Corp., 93 F.3d 1036, 1054-55 (2d Cir. 1996). Here, the Belgian Curators have not consented to the provisions of the U.S. bankruptcy plan that purport to give the Trustee exclusive jurisdiction.[6] The suggestion in the Bankruptcy Proceeding that the Curators' "silence" signifies acceptance of the U.S. plan is misguided. In fact, in recent correspondence the Belgian Curators have confirmed that "the curators do not

---

[6] KPMG-B contests the alleged authority and capacity of Plaintiff to act on behalf of L&H in bringing this action, as a matter of Belgian law.

support the [U.S.] plan." (See Letter from Frank Seys to Jozef Lievens dated January 14, 2005, attached as Exhibit A to Corson Reply Declaration, submitted herewith.)

The claims on behalf of L&H against KPMG-B arise out of a relationship centered in Belgium and are based on conduct that occurred substantially in Belgium, and accordingly, Belgium has a stronger interest in overseeing such claims in a Belgian proceeding. Therefore, the Court should dismiss the claims against KPMG-B and defer to Belgium on the basis of international comity.

## CONCLUSION

For all the foregoing reasons and the reasons set forth in KPMG-B's Opening Brief and the accompanying declarations, Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren respectfully requests that the Court issue an order granting its motion to dismiss the Complaint, with prejudice, and for such other relief as the Court deems just and proper.

Dated: February 25, 2005

Respectfully submitted,

Of Counsel
HOGAN & HARTSON LLP
By: /s/ Nicholas W.C. Corson
George A. Salter
Nicholas W.C. Corson
875 Third Avenue
New York, NY 10022
(212) 918-3000

Michael J. Stone, Esq.
PEABODY & ARNOLD
30 Rowes Wharf
Boston, MA 02110
(617) 951-4702

*Counsel for Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*

Certificate of Service

       I, Nicholas W.C. Corson, hereby certify that on February 25, 2005, I caused a true copy of KPMG-B's Reply Memorandum of Law in support of its motion to dismiss the complaint, together with the supporting Reply Declaration of Nicholas W.C. Corson to be electronically filed and served upon the following counsel of record by electronic mail and by first-class U.S. mail:

/s/ Nicholas W.C. Corson

| | |
|---|---|
| Joel G. Beckman, Esq.<br>Nystrom Beckman & Paris LLP<br>10 St. James Avenue, 16th Floor<br>Boston, MA 02116<br>Phone: (617) 779-9100<br>Fax: (617) 778-9100<br>jbeckman@nbparis.com<br><br>*Attorneys for Plaintiff Scott L. Baena* | David W. Trench, Esq.<br>Scott G. Klein, Esq.<br>Bilzin Sumberg Baena Price & Axelrod LLP<br>200 South Biscayne Boulevard, Suite 2500<br>Miami, FL 33131<br>Phone: (305) 350-2359<br>Fax: (305) 351-2261<br>dtrench@bilzin.com<br>sklein@bilzin.com<br><br>*Attorneys for Plaintiff Scott L. Baena* |
| Kevin Lesinski<br>Kristin McGurn<br>Seyfarth Shaw<br>World Trade Center East<br>Two Seaport Lane, Suite 300<br>Boston, MA 02110<br>Phone: (617) 227-5020<br>Fax: (617) 946-4801<br>klesinski@seyfarth.com<br>kmcgurn@seyfarth.com | Michael P. Carroll<br>Michael S. Flynn<br>Suong T. Nguyen<br>Davis Polk & Wardwell<br>450 Lexington Avenue<br>New York, NY 10017<br>Phone: (212) 450-4000<br>Fax: (212) 450-3800<br>mcarroll@dpw.com<br>mflynn@dpw.com<br>nguyen@dpw.com<br>*Attorneys for Defendant KPMG LLP* |