UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT L. BAENA, LITIGATION TRUSTEE OF THE LERNOUT & HAUSPIE SPEECH PRODUCTS N.V. LITIGATION TRUST<br><br>Plaintiff,<br><br>- v -<br><br>KPMG LLP and KLYNVELD PEAT MARWICK GOERDELER BEDRIJFSREVISOREN,<br><br>Defendants. | Civil Action No. 04-12606-PBS |

# KPMG LLP'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS <u>MOTION TO DISMISS THE COMPLAINT</u>

| | |
|---|---|
| DAVIS POLK & WARDWELL | SEYFARTH SHAW LLP |
| Michael P. Carroll | Kevin J. Lesinski (BBO #554140) |
| Michael S. Flynn | William J. Hanlon (BBO # 551878) |
| Sean C. Knowles | Kristin G. McGurn (BBO #559687) |
| Julian J. Moore | World Trade Center East |
| Caroline Alice Keller | Two Seaport Lane |
| 450 Lexington Avenue | Suite 300 |
| New York, NY 10017 | Boston, MA 02210-2028 |
| | Telephone: (617) 946-4800 |
| Dated: February 25, 2005 | Telecopier: (617) 946-4801 |

*Attorneys for KPMG LLP*

**TABLE OF CONTENTS**

I. PLAINTIFF FAILS TO ESTABLISH STANDING TO BRING HIS CLAIMS ........................................1

II. PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINES OF IMPUTATION AND
 *IN PARI DELICTO* ..................................................................................................................4

III. PLAINTIFF'S BREACH OF FIDUCIARY DUTY AND MALPRACTICE CLAIMS ARE
 TIME-BARRED ......................................................................................................................7

IV. PLAINTIFF'S CONSUMER PROTECTION ACT CLAIM FAILS AS A MATTER OF LAW ................8

CONCLUSION ........................................................................................................................12

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

Aldahonda-Rivera v. Parke Davis & Co.,
    882 F.2d 590 (1st Cir. 1989)..................................................................................................11

In re Atlantic Fin. Mgmt., Inc.,
    784 F.2d 29 (1st Cir. 1986)......................................................................................................5

Bamberg v. SG Cowen,
    236 F. Supp. 2d 79 (D. Mass. 2002) ....................................................................................7, 8

Beck v. Deloitte & Touche,
    144 F.3d 732 (11th Cir. 1998) .................................................................................................6

Blackstone Realty LLC v. FDIC,
    244 F.3d 193 (1st Cir. 2001)..................................................................................................11

Branch v. Ernst & Young U.S.,
    311 F. Supp. 2d 179 (D. Mass. 2004) ......................................................................................3

Branch v. Ernst & Young U.S.,
    1995 WL 791941 (D. Mass. Dec. 22, 1995)............................................................................3

Breeden v. Kirkpatrick & Lockhart LLP,
    336 F.3d 94 (2d Cir. 2003)...................................................................................................6, 7

Cenco Inc. v. Seidman & Seidman,
    686 F.2d 449 (7th Cir. 1982) ...................................................................................................6

In re Colonial Mortgage Bankers Corp.,
    324 F.3d 12 (1st Cir. 2003)....................................................................................................11

Correa-Martinez v. Arrillaga-Belendez,
    903 F.2d 49 (1st Cir. 1990) ...................................................................................................10

Dodds v. Cigna Sec., Inc.,
    12 F.3d 346 (2d Cir. 1993)......................................................................................................8

FDIC v. Shrader & York,
    991 F.2d 216 (5th Cir. 1993) ...................................................................................................6

Greene v. Rhode Island,
    2005 U.S. App. LEXIS 2252 (1st Cir. Feb. 11, 2005).........................................................11

Hirsch v. Arthur Andersen & Co.,
    72 F.3d 1085 (2d Cir. 1995)..........................................................................................7

Kittay v. Atlantic Bank (In re Global Serv. Group LLC),
    316 B.R. 451 (Bankr. S.D.N.Y. 2004)............................................................................3

Northern Voyager L.P. v. Cross Sound Ferry, Inc.,
    2003 U.S. App. LEXIS 16057 (1st Cir. Aug. 5, 2003)..............................................9, 10

Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.,
    267 F.3d 340 (3d Cir. 2001)...........................................................................................2

Poth v. Russey,
    2004 U.S. App. LEXIS 5861 (4th Cir. Mar. 30, 2004)..................................................5

In re Rare Coin Galleries, Inc.,
    862 F.2d 896 (1st Cir. 1988).........................................................................................1

Salois v. Dime Sav. Bank, FSB,
    1996 U.S. Dist. LEXIS 21901 (D. Mass. Nov. 13, 1996) ..........................................11

Shearson Lehman Hutton, Inc. v. Wagoner,
    944 F.2d 114 (2d Cir. 1991)..........................................................................................2

Williams v. California 1st Bank,
    859 F.2d 664 (9th Cir. 1988) ........................................................................................3

Zyla v. Wadsworth,
    360 F.3d 243 (1st Cir. 2004).......................................................................................11

**STATE CASES**

Commonwealth v. Delaney,
    425 Mass. 587 (1997) ..................................................................................................8

Darviris v. Petros,
    59 Mass. App. Ct. 323 (2003).......................................................................................9

Demoulas v. Demoulas,
    428 Mass. 555 (1998) ..................................................................................................6

Fillmore v. Leasecomm Corp.,
    2004 Mass. Super. LEXIS 574 (2004).........................................................................11

Frank Cook, Inc. v. Hurwitz,
 10 Mass. App. Ct. 99 (1980)......................................................................................7

Kuwaiti Danish Computer Co. v. Digital Equip. Corp.,
 438 Mass. 459 (2003) ..............................................................................................10

Tooley v. Donaldson, Lufkin, & Jenrette, Inc.,
 845 A.2d 1031, 2004 Del. LEXIS 161 (Del. 2004) .........................................2, 3

Young v. Deloitte & Touche,
 2004 Mass. Super. LEXIS 359 (Sept. 20, 2004)..................................................5

**DOCKETED CASES**

Nisselson v. Lernout,
 No. 03-10843 (D. Mass, Aug. 9, 2004) ................................................................1, 2, 3

Defendant KPMG LLP ("KPMG US") respectfully submits this reply memorandum in further support of its motion to dismiss the action filed by Plaintiff Scott L. Baena, L&H Litigation Trustee (the "Trustee" or "Plaintiff") against KPMG US.[1]  As demonstrated in KPMG US's opening brief, Plaintiff's action against KPMG US must be dismissed for multiple, independent reasons:

- Like the Nisselson trustee, Plaintiff attempts to assert claims of others and therefore lacks standing;

- Plaintiff, who stands in the shoes of those he himself alleges orchestrated the alleged fraud, is barred from attempting to shift responsibility for alleged damages to creditors of L&H onto KPMG US;

- Two of the three claims asserted (malpractice and aiding and abetting breach of fiduciary duty), as Plaintiff himself concedes, are time-barred under common application of the accrual and discovery rules; and

- Plaintiff's remaining claim under the Massachusetts Consumer Protection Act fails as a matter of law on multiple grounds.

## I.  Plaintiff Fails to Establish Standing to Bring His Claims

Plaintiff acknowledges, as he must, that he stands in the shoes of L&H, and can only assert those causes of action possessed by L&H.  (Compl. ¶ 14); see also In re Rare Coin Galleries, Inc., 862 F.2d 896, 901 (1st Cir. 1988) ("The trustee steps into the shoes of the debtor for purposes of asserting or maintaining the debtor's causes of action which become property of the estate."); Nisselson, No. 03-10843 (PBS), dated August 9, 2004, at 13 ("the Trustee can assert only the rights of the corporation, not the rights of the creditors").  Yet, in this action, Plaintiff is seeking to recover $340 million loaned *to L&H* by *creditors of L&H*.  (See Compl. ¶

---

[1] References herein to Defendant KPMG LLP's Memorandum of Law in Support of Its Motion to Dismiss the Complaint, dated January 7, 2005, are in the form "KPMG US Br. at __;" and references herein to Plaintiff Scott L. Baena's Opposition to Defendants' Motion to Dismiss the Complaint, dated February 11, 2005, are in the form "Opp. Br. at __."

73).  The claims of L&H's creditors, however, do not belong to Plaintiff.  See KPMG US Br. at 6-8.

"The standing issue turns on whether the Trustee has asserted an injury to the corporation caused by [a third party] and whether the corporation would receive the benefit of any recovery." Nisselson v. Lernout, No. 03-10843 (PBS), at 12 (D. Mass. August 9, 2004);[2] see also Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1033, 2004 Del. LEXIS 161 (Del. 2004). Here, the Trustee lacks Article III standing to assert claims against KPMG US because the alleged injury, incurring $340 million of new debt, belongs to the unpaid creditors who extended credit to L&H, not to L&H itself.  See KPMG US Br. at 6-8; Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991), *citing* Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 434 (1972).

In his opposition papers, Plaintiff admits (as he must) that the $340 million is the amount loaned by L&H's creditors to L&H.  Nevertheless, he argues, L&H too can assert claims to recover that same $340 million under the theory of "deepening insolvency."  Opp. Br. at 4-9. Plaintiff relies heavily on Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc. 267 F.3d 340, 354 (3d Cir. 2001) (applying Pennsylvania law), in support of his theory of "deepening insolvency."  Putting aside for the moment whether or not the theory of "deepening insolvency" should be a cognizable method of alleging injury, here, it is apparent that Plaintiff has not alleged "deepening insolvency" in his Complaint.  Indeed, each of the *ad damnum* paragraphs in the Complaint – which governs the standing analysis – explicitly identifies the $340 million in debt as the damages being sought.  (See Compl. ¶¶ 98, 106, 114, 122, 126, 130).

---

[2] The Nisselson opinions are attached as Exhibits A and B to KPMG US's opening brief.

No other damage claim is made in the Complaint, nor is there any mention of any "deepening insolvency" claim or theory in the Complaint.

In addition to the fact that Plaintiff has not alleged "deepening insolvency," such a theory is not the cure-all Plaintiff would have the Court believe. As an initial matter, the theory is not uniformly accepted, see Kittay v. Atlantic Bank (In re Global Serv. Group LLC), 316 B.R. 451, 457-58 (Bankr. S.D.N.Y. 2004) (noting that the nation's courts are divided as to the validity of this theory). Moreover, when a shareholder, investor, or creditor of a corporation has a claim against a third party, "the corporation may not sue the third party *on behalf of the plaintiff even if the corporation may also have been harmed by the third party's actions*." Branch v. Ernst & Young U.S., 1995 WL 791941, at *4 (D. Mass. Dec. 22, 1995) (emphasis added).[3]

In addition, as explained in Tooley, the standing inquiry also requires an analysis of whether the corporation would receive the benefit of the recovery being sought. Tooley, 845 A.2d at 1033; see also Nisselson, No. 03-10843 (PBS), dated August 9, 2004, at 12. It is undisputed that any recovery here would be for the creditors of L&H, and would not go to L&H itself. Accordingly, as with the trustee in Nisselson, Plaintiff here lacks standing under Tooley. See Tooley, 845 A.2d at 1033; see also Williams v. California 1st Bank, 859 F.2d 664, 667 (9th Cir. 1988) (holding trustee has no standing where estate would only recoup administrative costs and the investors would receive the remainder of any recovery).

---

[3] Plaintiff cites to Branch v. Ernst & Young U.S., 311 F. Supp. 2d 179, 182-85 (D. Mass. 2004) in support of his argument that "deepening insolvency" constitutes a distinct injury for purposes of standing analysis. Plaintiff's reliance is misplaced because in that case the court did not endorse "deepening insolvency" as a proper basis for the injury component of the standing inquiry.

II.     Plaintiff's Claims are Barred by the Doctrines of Imputation and *In Pari Delicto*

"Courts have consistently held that claims for fraud or misrepresentation perpetrated on [creditors] belong exclusively to those [creditors] to the exclusion of the corporation or its successor in interest, where the corporation itself was involved in the wrongdoing." Nisselson, No. 03-10843 (PBS), dated August 9, 2004, at 7 and cases cited therein. Here, there is no doubt, and Plaintiff himself alleges, that L&H's controlling management were central players in the alleged deceptive and fraudulent activities for which the Trustee seeks to find KPMG US liable. The law quite correctly does not let a plaintiff in these circumstances shift responsibility for its own fraud from itself to another party. See KPMG US Br. at 9-13.

Plaintiff does not contest the notion that his claims are subject to dismissal under the doctrines of imputation and *in pari delicto*. Rather, Plaintiff argues in favor of what he calls an exception to these doctrines – the so-called "adverse interest exception." Plaintiff's view of the exception suggests that anytime the alleged fraud of the controlling officers and directors ultimately inures to the detriment of the corporation once exposed, the *in pari delicto* and imputation doctrines are inapplicable. Such a position is nonsense and would cause the exception to swallow the entire well-established doctrine.

Moreover, Plaintiff's argument is based on the entirely irrelevant assertion that the reporting requirements of Section 10A of the 1934 Act "recognize that a manager engaged in a concealed financial fraud acts adversely to the interests of the company." Opp. Br. at 12. Plaintiff argues that because the so-called "Breaching Managers" who engaged in the fraud concealed certain information from the L&H audit committee, they must have been acting adversely to L&H and thus the "adverse interest exception" is applicable. But Section 10A does not purport to inform the well-established common law doctrines of imputation and *in pari*

- 4 -

*delicto*, and no court to KPMG US's knowledge has ever suggested that Congress so intended.[4] Under these doctrines, the initial inquiry is whether those who are alleged to have committed fraud were exercising substantial control over the corporation. Here, the "Breaching Managers" plainly were. See (Compl. ¶¶ 22-42); KPMG US Br. at 4-5. Consequently, "knowledge of officers and directors having substantial control of all activities of a corporation is imputed to the corporation," unless they were acting solely for themselves and not the corporation. Poth v. Russey, 2004 U.S. App. LEXIS 5861, at *31 (4th Cir. Mar. 30, 2004), *quoting* Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 250 (4th Cir. 1967).[5]

Plaintiff's misplaced reliance on Section 10A cannot alter the fact that the Complaint itself does not allege that the "Breaching Managers" committed fraud for their own personal purposes, but rather for purposes of "inflat[ing] L&H's revenues and earnings." (Compl. ¶¶ 22, 30); see also Young v. Deloitte & Touche, 2004 Mass. Super. LEXIS 359, at *29 (Sept. 20, 2004) ("The complaint does not allege that the Officers [falsified the company's financial statements] for their own personal purposes, however, but rather 'in order to meet earnings expectations and fraudulently to maintain the Company's access to debt financing by falsifying base reports.' These are allegations of fact which are binding on the Trustee. By the Massachusetts law . . ., these allegations are also imputed to and binding upon [the company] as knowledge of officers and directors having substantial control of the activities of the corporation." (citations omitted)).

---

[4] Plaintiff's reliance upon Section 10A is equally unavailing because there is no private right of action provided under the statute.

[5] See also In re Atlantic Fin. Mgmt., Inc., 784 F.2d 29, 32 (1st Cir. 1986) ("The business enterprise should bear the burden of the losses created by the mistakes or overzealousness of its agents [because such liability] stimulates the watchfulness of the employer in selecting and supervising the agents." (quotation omitted)) (Breyer, J.); KPMG US Br. at 10-11 and cases cited therein.

Indeed, according to Plaintiff, it was L&H that used the alleged fraud to boost its stock price and to acquire other entities fraudulently. It was these allegedly fraudulent acquisitions of Dictaphone and Dragon *by L&H* that Plaintiff himself alleges caused the damage for which he seeks to recover. See Cenco Inc. v. Seidman & Seidman, 686 F.2d 449, 451-56 (7th Cir. 1982) (holding when fraud involves scheme to increase the apparent worth of the company, which enabled the company to obtain certain benefits, the acts of the company's corrupt managers could properly be imputed to the company); see also FDIC v. Shrader & York, 991 F.2d 216, 224 (5th Cir. 1993) ("It is 'inaccurate' and goes 'too far' to say that the exception involving adverse interest applies if 'the individual interests of an agent are to any extent adverse to that of his principal.'" (citation omitted)); Beck v. Deloitte & Touche, 144 F.3d 732, 736 (11th Cir. 1998) ("[T]he knowledge of a corporate officer whose fraud or misbehavior brings short-term gain to the corporation, or merely injures a third party, is imputed to the corporation, even if the officer's misbehavior ultimately causes the corporation's insolvency."); Demoulas v. Demoulas, 428 Mass. 555, 584-85 (1998) ("knowledge of officers and directors having substantial control of all activities of a corporation is imputed to the corporation." (citation omitted)).

In sum, there is no dispute that the "Breaching Managers" had the authority to cause L&H to enter into these allegedly fraudulent transactions and to borrow money from L&H's creditors to do so, and did so to boost L&H's value and its earnings. (See Compl. ¶¶ 22, 30). Accordingly, the allegedly fraudulent conduct of the "Breaching Managers" is imputed to L&H, notwithstanding the possibility that one or more of the "Breaching Managers" may have attempted to conceal their allegedly fraudulent activities from others at L&H, among many others. See Breeden v. Kirkpatrick & Lockhart LLP, 336 F.3d 94, 100 (2d Cir. 2003) ("The fundamental principle of agency [is] that the misconduct of managers [or other agents] within the

scope of their employment will normally be imputed to the corporation."); see also id. at 97 (holding that "trustee lacked standing to sue third parties where the fraud was perpetrated by the debtor itself"); Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1093-95 (2d Cir. 1995) (activities of general partners imputed to numerous entities under their control).

III.     Plaintiff's Breach of Fiduciary Duty and Malpractice Claims are Time-Barred

Plaintiff concedes that (1) "the applicable statute of limitations for each of [Plaintiff's] malpractice and aiding and abetting breach of fiduciary duty claims is three years," Opp. Br. at 18; (2) "at least by November 2000, when L&H filed [for] bankruptcy, L&H had notice that Defendants might have committed malpractice that is the subject of Counts V and VI of the Complaint," id.; and (3) "under common application of the accrual and discovery rules the statute of limitations for each of these claims has run." Opp. Br. at 3.

Plaintiff nonetheless seeks to avoid dismissal under the applicable statutes of limitations by half-heartedly asserting that "the operative date on which the statute of limitations should be deemed to begin is October 2001 at the earliest . . . the point at which L&H ceased operations, and its bankruptcy efforts converted from a reorganization to a liquidation." Id. at 19.  As demonstrated in KPMG US's opening brief, see KPMG US Br. at 13-20, the applicable date upon which a cause of action accrues is when the injured party "knows or in the exercise of reasonable diligence should know the facts giving rise to the cause of action." Frank Cook, Inc. v. Hurwitz, 10 Mass. App. Ct. 99, 106 (1980); see also KPMG US Br. at 14 and cases cited therein.  It is not, as Plaintiff would have this Court believe, when L&H had notice that it "had actually suffered an appreciable harm," Opp. Br. at 18.  Indeed, this Court previously has so found, in connection with the L&H-related claims asserted by other plaintiffs with far more attenuated relationships to the alleged misconduct than L&H itself.  See Bamberg v. SG Cowen,

236 F. Supp. 2d 79, 85 (D. Mass. 2002) (Saris, J.) (holding that the same events outlined in KPMG US's opening brief here were sufficient "storm warnings" to put a reasonable investor on notice of claims against SG Cowen, L&H's financial advisor, for statute of limitations purposes).

Here, it is clear from the Complaint that all of the necessary information to form the allegations asserted by the Trustee was eminently "knowable" as of at least September 21, 2000 when L&H's audit committee commissioned its own independent investigation. See KPMG US Br. at 16-17; Bamberg, 236 F. Supp. 2d at 85. As of that date, L&H had more than sufficient facts, as well as the ability to investigate and discover the alleged misrepresentations and omissions described in the Complaint, to trigger commencement of the limitations period. See Commonwealth v. Delaney, 425 Mass. 587, 592 (1997); see also KPMG US Br. at 17 and cases cited therein.

Because, as Plaintiff concedes, the Complaint was filed nearly four years after L&H admitted its own accounting "errors and irregularities," (Compl. ¶ 83), and at that time Plaintiff became aware of the facts giving rise to his causes of action, see Opp. Br. at 18, Plaintiff's breach of fiduciary duty and malpractice claims should be dismissed as untimely. See Dodds v. Cigna Sec., Inc., 12 F.3d 346, 352 n.3 (2d Cir. 1993) (resolution on motion to dismiss appropriate where relevant facts "can be gleaned from the complaint").

IV.     Plaintiff's Consumer Protection Act Claim Fails as a Matter of Law

Plaintiff's Consumer Protection Act claim fails for multiple reasons. First, a plain reading of Plaintiff's Chapter 93A claim in Count I demonstrates that it is based on KPMG US's alleged malpractice – which is a claim sounding in negligence. See KPMG US Br. at 24-26 and cases cited therein. Plaintiff concedes that "a claim for violation of Chapter 93A requires more

than allegations of mere negligence." Opp. Br. at 16. Accordingly, Plaintiff's claim should be dismissed for this reason alone.

In his opposition, Plaintiff suggests that his Chapter 93A claim is not in fact based on negligence and inexplicably supports this argument with language from KPMG US's prior motion to transfer this action to this Court, as opposed to relying upon his own Complaint. See Opp. Br. at 16-18.[6] In its prior motion to transfer, KPMG US highlighted similarities between Plaintiff's allegations and those previously alleged in complaints from various L&H-related investor actions pending before this Court. See KPMG US Mot. to Trans. at 6-7, attached as Exhibit A to Declaration of David W. Trench. However, the related investor actions contained claims sounding in both fraud and negligence, while Plaintiff's Complaint here only contains claims sounding in negligence.[7] KPMG US's comparison of the allegations does nothing to change that fact. In any event, because the *Complaint* asserts accounting malpractice as the basis of its 93A claim, and the alleged negligence does not amount to an unfair or deceptive act under Chapter 93A, see Darviris v. Petros, 59 Mass. App. Ct. 323, 329-30 (2003), Plaintiff's Chapter 93A claim fails. See Northern Voyager L.P. v. Cross Sound Ferry, Inc., 2003 U.S. App. LEXIS 16057, at *6-*10 (1st Cir. Aug. 5, 2003) (affirming dismissal of Chapter 93A claim because Plaintiff failed to allege conduct that constitutes unfair trade practices).[8]

---

[6] Plaintiff asserts that KPMG US filed its motion to transfer on August 2, 2004. See Opp. Br. at 16. This is incorrect. August 2, 2004 is the date on which Plaintiff filed his untimely Complaint. KPMG US filed its motion to transfer in the United States Bankruptcy Court for the District of Delaware on October 4, 2004. (See Exhibit A to Declaration of David W. Trench In Support of Plaintiff's Opposition to KPMG US' Motion to Dismiss the Complaint, dated February 11, 2005) (hereinafter "Exhibit A to Declaration of David W. Trench").

[7] For example, in Nisselson v. Lernout, No. 03-10843 (PBS), the plaintiff alleged (1) violation of Section 10(b); (2) common law fraud; (3) aiding and abetting common law fraud; (4) negligent misrepresentation; (5) violation of Chapter 93A; (6) conspiracy to defraud; and (7) violation of the RICO statute.

[8] Relatedly, the First Circuit has also made clear that "[w]hile the question of 'whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for (…continued)

- 9 -

Second, Plaintiff's 93A claim should be dismissed as a matter of law because Plaintiff cannot establish (and has not sufficiently alleged) that any purported unfair conduct occurred primarily *and* substantially in Massachusetts.  See KPMG US Br. at 21-24.  The Massachusetts Supreme Judicial Court has interpreted Section 11 to require judges to determine whether the "center of gravity" of the circumstances that give rise to the claim is "primarily *and* substantially" within the Commonwealth.  Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 473 (2003) (emphasis added).  Here, the Trustee's Complaint alleges a total of two (2) facts in support of his contention that unfair and deceptive acts on the part of KPMG US were centered in Massachusetts.  First, he alleges that the Belgian company, L&H, had its United States headquarters in Burlington, Massachusetts.  (Compl. ¶ 26).  He also alleges that KPMG US "performed its audit functions primarily out of its Boston office." (Compl. ¶ 97).

Neither the existence of L&H's U.S. headquarters in Boston, nor the conclusory and unsupported allegations that KPMG US "performed . . . audit functions primarily out of its Boston office," (Compl. ¶ 97), are sufficient to establish that KPMG US committed any unfair and deceptive acts primarily and substantially in Massachusetts.  See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990) ("Under Rule 12(b)(6), [this Court] need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation.").  Indeed, Plaintiff does not dispute that his own Complaint alleges that the "Breaching Managers" committed the fraud outside of Massachusetts in Belgium where L&H's financial statements were prepared, issued, and signed by L&H management and where the audit opinions with respect to those financial statements were issued.  See KPMG US Br. at 22-23.

---

(continued…)
consideration as a [Chapter 93A] violation is a question of law."  Northern Voyager L.P., 2003 U.S. App. LEXIS, at *6, *quoting* Saint-Gobain Indus. Ceramics v. Wellons, Inc., 246 F.3d 64, 73 (1st Cir. 2001).

In its opposition papers, Plaintiff does not seriously contest the notion that the center of gravity is outside of Massachusetts, but rather argues that the "primarily and substantially condition" is an affirmative defense not to be determined on a motion to dismiss. See Opp. Br. at 15. Whether or not the "primarily and substantially condition" is an affirmative defense, however, is irrelevant because an unbroken line of First Circuit opinions has clearly held that affirmative defenses may be adjudicated on a motion to dismiss. Where, as here, "the defense is obvious on the face of the pleadings," Salois v. Dime Sav. Bank, FSB, 1996 U.S. Dist. LEXIS 21901, at *14 (D. Mass. Nov. 13, 1996) (Saris, J.), "an affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim." Greene v. Rhode Island, 2005 U.S. App. LEXIS 2252, at *10 (1st Cir. Feb. 11, 2005).[9] Accordingly, courts continue to address the "primarily and substantially condition" post-Kuwaiti in the context of a motion to dismiss. See, e.g., Fillmore v. Leasecomm Corp., 2004 Mass. Super. LEXIS 574, at *16-*18 (2004) ("[Defendant] is not subject to a 93A claim in this state and its Motion to Dismiss . . . is allowed."); see also Zyla v. Wadsworth, 360 F.3d 243, 255 (1st Cir. 2004) (affirming dismissal of Chapter 93A claim and holding "primarily and substantially" condition to be "a question of law"). Thus, for this independent reason and the reasons stated above, and in KPMG US's opening brief, Plaintiff's Chapter 93A claim should be rejected.

---

[9] See also In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003) (same); Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001) (same); Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 592 (1st Cir. 1989) (same).

## CONCLUSION

For the reasons set forth above, and in KPMG US's opening brief, KPMG US respectfully requests that this Court grant KPMG US's Motion and dismiss the Complaint with prejudice.

Dated:  February 25, 2005                    Respectfully Submitted,

                                             _____/s/ Kristin G. McGurn_____

| | |
|---|---|
| Michael P. Carroll | Kevin J. Lesinski (BBO #554140) |
| Michael S. Flynn | William J. Hanlon (BBO # 551878) |
| Sean C. Knowles | Kristin G. McGurn (BBO #559687) |
| Julian J. Moore | SEYFARTH SHAW LLP |
| Caroline Alice Keller | World Trade Center East |
| DAVIS POLK & WARDWELL | Two Seaport Lane |
| 450 Lexington Avenue | Suite 300 |
| New York, NY 10017 | Boston, MA 02210-2028 |
| (212) 450-4000 | Telephone:    (617) 946-4800 |
| | Telecopier:    (617) 946-4801 |

---

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each party electronically and by first-class mail on February 25, 2005.
/s/  Kristin G. McGurn

---