UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT L. BAENA, Litigation Trustee of the Lernout & Hauspie Speech Products, N.V. Litigation Trust,<br><br>Plaintiff,<br><br>v.<br><br>KPMG LLP and KLYNVELD PEAT MARWICK GOERDELER BEDRIJFSREVISOREN,<br><br>Defendants. | Civil Action No. 04-CV-12606-PBS |

**PLAINTIFF'S RESPONSE TO KPMG LLP'S SUBMISSION OF ADDITIONAL AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**

**Introduction**

Plaintiff, Scott L. Baena, Litigation Trustee of the Lernout & Hauspie Speech Products N.V. Litigation Trust ("Plaintiff"), and respectfully submits this response to the Unopposed Motion for Leave to Submit Additional Authority in Further Support of its Motion to Dismiss ("Motion to Submit Additional Authority") filed by Defendant KPMG LLP ("KPMG US").

KPMG US cites In re Advanced RISC Corporation, 2005 U.S. Dist. LEXIS 7239 (D. Mass. Mar. 29, 2005) as supplemental authority, but then departs on a free-wheeling discussion that mischaracterizes Plaintiff's arguments on imputation and *in pari delicto,* and renews and restates argument on of the issues of statute of limitations and deepening insolvency. As such, Plaintiff is compelled to submit this memorandum in response to correct the record.

1

**Argument**

Advanced RISC, supra, apparently is cited as subsequent authority to support KPMG US' position that the doctrines of imputation and *in pari delicto* bar all of Plaintiff's claims against it. On the contrary, the holding in Advanced RISC supports a proposition that Plaintiff did not advance and does not rely upon. Specifically, in ruling on an appeal from a denial of a motion for summary judgment, the Advanced RISC court held "the *in pari delicto* doctrine bars a claim by a bankruptcy trustee **where the debtor would have been so barred before the bankruptcy petition was filed.**" *Id.* at *13 (emphasis added).

Plaintiff has never contended that his status as a trustee of and successor to L&H immunizes him from the application of the *in pari delicto* doctrine. Rather, he contends that under the fact pattern alleged in his Complaint, the *in pari delicto* doctrine cannot be used to bar the claims against the Defendants, whether brought by L&H before its bankruptcy or by Plaintiff thereafter.

KPMG US also attempts to reframe Plaintiff's argument as follows: "the *in pari delicto* doctrine should not bar malpractice claims in the context of an issuer with publicly registered securities." KPMG US then states that such argument is without support and belied by "the application of the doctrine in numerous cases involving public securities offerings." *See*, Motion to Submit Additional Authority, footnote 1. As support, KPMG US cites Official Committee of Unsecured Creditors v. Lafferty, 267 F.3d 340, 345-346, 360 (3d Cir. 2001); In re Dublin Sec., 133 F.3d 377, 379-80 (6th Cir. 1997); and In re Agribiotech, Inc., 2005 U.S. Dist. LEXIS 6466, at *12-*19, *36-*39.

In fact, that is not Plaintiff's argument at all. Plaintiff's position, succinctly stated at oral argument, is "[t]here's never been a case where *in pari delicto* has been applied in the context of

a publicly traded corporation with outside directors and an outside audit committee." *See,* Transcript of hearing, p.17, line 24 - p.18, line 2.  That statement remains accurate despite KPMG US' contention that Lafferty, Dublin Sec. and Agribiotech say otherwise.  Neither Lafferty nor Dublin Sec. were publicly traded companies, so neither case even addresses Plaintiff's argument.  While Agribiotech (decided April 1, 2005) was a publicly traded company, that court's application of the *in pari delicto* doctrine is easily, and dramatically, distinguished by the facts in Plaintiff's Complaint.

     The Agribiotech court ruled (on a motion for summary judgment, not a motion to dismiss) that a bankruptcy trustee's complaint against an accounting firm was barred by the *in pari delicto* doctrine **because the trustee failed to submit evidence of outside directors who were both unaware of the fraud and capable of stopping it had they been made aware of it.** Id. at *40-43.  Plaintiff's Complaint, in stark contrast, alleges that L&H had an Audit Committee with independent outside directors from whom the accounting misconduct was concealed.  *See,* e.g. Complaint, ¶¶ 92, 101, 111 and 119.  The Complaint also alleges that the Audit Committee investigated the accounting malfeasance and that it could have, and would have, taken appropriate action to stop it.  *See,* e.g. Complaint, ¶¶ 59, 67, 79, 80, 83, 87, 93, 102, 112 and 120.  These allegations must be taken as true in deciding both Defendants' motions to dismiss the Complaint.  No claim presenting such a fact pattern has ever been dismissed on the basis of *in pari delicto*.

     Moreover, Agribiotech does not address, or even discuss, Plaintiff's contention that *in pari delicto* is inapplicable as a doctrine in the context of this case – an audit performed under the requirements of the Securities and Exchange Act of a publicly traded company with independent outside directors – because of the requirements imposed on auditing accountants by

3

Section 10A of the Securities and Exchange Act.  Section 10A requires accountants performing audits to report any indications of fraud or other accounting improprieties to the company's audit committee and, if necessary, the full board of directors.  To allow an accounting firm specifically hired to perform a US GAAP and US GAAS audit of an SEC regulated company to escape its responsibilities by the application of the *in pari delicto* doctrine is inimical to the public policy underlying Section 10A.

Plaintiff submits this is so whether there is an imputation of knowledge or not.  <u>Young v. Deloitte & Touche</u>, 2004 WL 2341344 (Mass. Super. Sept. 20, 2004)(van Gestel, J.), cited by KPMG US on the issue of the imputation of knowledge under Massachusetts state law, recognizes this concept.  In <u>Young</u>, the trustee of a litigation trust sued the predecessor corporation's accountants for fraud, accounting malpractice and violations of Chapter 93A.  The court allowed the trustee's claims on behalf of the corporation to stand despite its finding that, under the allegations in that case, knowledge of the alleged fraud, accounting malpractice and Chapter 93A claims was imputed to the corporation.  Notwithstanding that imputation of knowledge, however, the court dismissed only the trustee's claims that were barred by the statute of limitations.  The court's discussion on that point is worth consideration in the context of the responsibilities of an auditing accountant to its client, particularly in view of KPMG US' contention of the importance of Massachusetts state law in this case.

> To this Court, **the rub is that, despite NutraMax's imputed knowledge of what its officers may have been doing, and its actual knowledge of what its Audit Committee had been told by Deloitte, Deloitte nevertheless provided unqualified audits** for each of the four fiscal years from 1995 to 1998.  Whether those unqualified audits for the 1997 and 1998 audit years not eliminated by the c. 93A limitations period, or the 1998 audit year not eliminated by the fraud and professional malpractice limitations periods, met the minimum standards applicable to Deloitte cannot be determined on the present Rule 12 motion.  **As independent**

4

> **auditors, Deloitte should, at a minimum, have complied with generally accepted accounting standards in conducting its several audits. Can there be compliance and still provide an annual audit opinion that NutraMax's financial statements were free of material misstatements?**

Id. at *11.  *See also,* Beck v. Deloitte & Touche, 144 F.3d 732 (11th Cir. 1998) (reversing the dismissal of a trustee's malpractice action against accounting firm based on knowledge imputed to predecessor corporation, holding that a director's wrongful actions toward his corporation do not have to rise to the level of corporate looting or embezzlement in order to be adverse and thereby prevent imputation).

KPMG US contends it is entitled to the benefits of the *in pari delicto* defense because this Court itself has recognized the factual predicate for the defense in another L&H related case.[1] KPMG US' argument is frankly confusing.  Not only do the Complaint's allegations of independent directors on the Audit Committee who could have, and would have, prevented the malfeasance contradict this contention, but also no ruling by this Court on a motion to dismiss a different complaint, by a different plaintiff, with different allegations of fact could ever form the basis to determine the sufficiency of the allegations in this Complaint.

KPMG US also asserts that Plaintiff's argument for the equitable tolling of the statute of limitations lacks merit.  KPMG US again cites to Advanced RISC, but actually argues §108 of the Bankruptcy Code to support its contention.  However, neither Advanced RISC nor §108, provide support for Defendants' position on the statute of limitations.  Indeed, Advanced RISC does not even discuss the topic.  Section 108 provides only that a trustee may commence an

---

[1] This Court's ruling referred to by KPMG US was made in In Re Lernout & Hauspie Sec. Litig., 208 F. Supp. 2d 74, (D. Mass. 2002), in which this Court considered the motions of certain former senior officers of L&H (Lernout, Hauspie, Bastiaens, and Willart) to dismiss the class plaintiffs' claims against them under Section 20A of the Securities and Exchange Act of 1934.  Those defendants contended that the class plaintiffs' complaint did not adequately plead they were "controlling persons" as that term is used under Section 20A.  In denying the former senior officers' motion to dismiss, this Court ruled that the class plaintiffs' complaint alleged all of the elements necessary for such a claim.

action before the later of i) two years after the filing of the case, or *ii*) the end of the limitations period established by non-bankruptcy law, "**including any suspension of such period occurring on or after the commencement of the case.**" *See,* 11 U.S.C. §108 (emphasis added).

Such a suspension of the applicable non-bankruptcy limitations period is the foundation of Plaintiff's argument that none of his claims are barred by the statute of limitations in this case. The basis for such a suspension arises from the unique circumstances of the case – simultaneous insolvency proceedings in both the United States and in Belgium, including a period during which L&H sought to reorganize – and claims with damages measured by the doctrine of deepening insolvency. Because a reorganization in bankruptcy restructuring the company and its debts could have eliminated the damages of deepening insolvency, there is a basis to equitably toll the limitations period for claims seeking such damages until the time the debtor is determined to be unable to reorganize. For L&H, that time was October 2001, and Plaintiff commenced this action within three years (the non-bankruptcy limitations period) of that date. Plaintiff contends such a tolling is both fair and limited in its application. The circumstances giving rise to such a tolling upsets no precedent and would apply in the future only if such a unique fact situation were to arise again.

Finally, KPMG US contends that it is an open question as to whether deepening insolvency is legally cognizable concept. Deepening insolvency is not an open legal question. No case, with the sole exception of a state court decision in Utah, has rejected it. Deepening insolvency is a measure of damages caused to a financially troubled company, like L&H, when its existence is artificially prolonged so that it is allowed to incur additional and inappropriate debt. *See, e.g.,* Lafferty, supra; Schacht v. Brown, 711 F.2d 1343 (7th Cir. 1983) (sharply

distinguishing its earlier decision in <u>Cenco v. Seidman</u>, 686 F.2d 449 (7th Cir.1982) that was heavily relied upon by Defendants); and <u>Branch v. Ernst & Young</u>, 311 F.Supp. 2d 179, 182 (D. Mass 2004) (negligence claim by trustee against accountant for issuing an unqualified opinion that resulted in bank being saddled with an additional $250 million debt, holding that in"a deepening insolvency case...the law requires that the fair market value method be used.").

In this case, the amount of damages suffered by L&H is the additional debt L&H was required to incur as part of its disastrous acquisitions of Dragon and Dictaphone. Those acquisitions, and the additional debt L&H had to incur to conclude them, were only possible because of the malfeasance of the Defendants in keeping the accounting misconduct out of sight. The additional debt incurred by L&H and, therefore, the damages of deepening insolvency, was at least $340,000,000.

While KPMG US candidly admits that its supplemental authority does not discuss deepening insolvency, it argues once again that, even if it is a cognizable theory, Plaintiff has failed to properly allege it in his Complaint. KPMG US contends that Plaintiff impermissibly seeks to recover for harm to the creditors of L&H and focuses on the fact that Plaintiff's allege damages, in excess of $340,000,000, are the same amount listed as owing to L&H's creditors in its bankruptcy schedules. KPMG US has it backwards. As Plaintiff explained in oral argument, the fact that Plaintiff is able to allege such a direct causation between the malfeasance of Defendants and the incurrence of specific debts makes this case a paradigm of deepening insolvency.

## Conclusion

Plaintiff submits that neither the additional authority of submitted by KPMG US, nor its argument or authority put forth in its earlier papers and at the hearing provide a basis to grant the

7

Defendants' motions to dismiss. Plaintiff respectfully requests that this Court deny such motions in their entirety and require Defendants to answer the Complaint.

>Respectfully submitted,
>
>SCOTT L. BAENA, LITIGATION TRUSTEE OF THE LERNOUT & HAUSPIE SPEECH PRODUCTS N.V. LITGATION TRUST
>
>By his attorneys,
>
>_____/s/_____
>Joel G. Beckman BBO # 553086
>William C. Nystrom BBO # 559656
>Nystrom Beckman & Paris LLP
>10 St. James Avenue, 16th Floor
>Boston, Massachusetts 02116
>Telephone No. (617)-778-9100
>Facsimile No. (617)-778-9110

Dated: June 2, 2005

## CERTIFICATE OF SERVICE

I, Joel G. Beckman, hereby certify that on June 2, 2005, I caused a true copy of the foregoing document to be served upon all counsel of record by First Class postage pre-paid mail.

| | |
|---|---|
| Michael P. Carroll | George A. Salter |
| Michael S. Flynn | Nicholas W.C. Corson |
| Suong T. Nguyen | Hoa Hoang |
| Davis Polk & Wardwell | 875 Third Avenue |
| 450 Lexington Avenue | New York, NY 10022 |
| New York, NY 10017 | *Attorneys for Klynveld Peat* |
| *Attorneys for KPMG LLP* | *Marwick Goerdeler* |
| *212.450.4000 Telephone* | *Bedrijfsrevisoren* |
| *212.450.3800 Facsimile* | *212.918.3000 Telephone* |

>_____/s/_____
>Joel G. Beckman

8

MIAMI 886888.1 7554321648