UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
SCOTT L. BAENA, LITIGATION          )
TRUSTEE OF THE LERNOUT &            )
HAUSPIE SPEECH PRODUCTS             )
LITIGATION TRUST,                   )
                                    )
            Plaintiff,              )
                                    )
       v.                           ) CIVIL ACTION NO. 04-12606-PBS
                                    )
KPMG LLP AND KLYNVELD PEAT          )
MARWICK GOERDELER                   )
BEDRIJFSREVISOVEN,                  )
                                    )
            Defendant.              )
                                    )
```

**MEMORANDUM AND ORDER**

September 27, 2005

Saris, U.S.D.J.

### I.   INTRODUCTION

This case arises out of an alleged fraudulent scheme at Lernout & Hauspie N.V. ("L&H"), a saga which has spawned a series of actions both against and on behalf of the bankrupt company. In this iteration, Plaintiff Scott L. Baena, Trustee of the L&H Litigation Trust, has filed an action against Defendants KPMG LLP ("KPMG US") and Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren ("KPMG Belgium"), L&H's long-time auditors.[1]  The complaint

---

[1] KPMG US and KPMG Belgium have been named as defendants in several L&H-related Massachusetts actions: a consolidated class action entitled In re Lernout & Hauspie Sec. Litig., Civil Action No. 00-11589-PBS, and four separate actions brought by former shareholders of Dragon and Dictaphone, all of which have been resolved by settlement. Both KPMG US and KPMG Belgium were

alleges that Defendants assisted L&H's management in its elaborate scheme of accounting fraud by certifying audits and issuing opinion letters, which, in part, facilitated the incurrence of $340 million of additional debt due to the Belgian lender that L&H would never be able to repay. The complaint asserts that Defendants' conduct gives rise to claims for violations of Mass. Gen. Laws ch. 93A, aiding and abetting breach of fiduciary duty, and accounting malpractice. Moving to dismiss, Defendants argue, among other things, that the Trustee lacks standing, and that the action is barred by the doctrine of <u>in pari delicto</u>.[2] The Trustee responds that it has a cognizable injury under the theory of "deepening insolvency." After hearing, the motion to dismiss is **ALLOWED**.

## II.  FACTUAL BACKGROUND[3]

---

also named as defendants in an action entitled <u>Nisselson v. Lernout et al.</u>, Civil Action No. 03-10843-PBS, commenced by the Litigation Trustee of the Litigation Trust of Dictaphone (which had also filed a Chapter 11 bankruptcy petition in Delaware). This court dismissed that action in August 2004. <u>See</u> <u>Nisselson v. Lernout</u>, No. 03-10843-PBS (D. Mass. Aug. 9, 2004).

   [2] The complaint asserts claims for violations of Mass. Gen. L. ch. 93A by KPMG U.S. and KPMG Belgium (Counts I and II); aiding and abetting a breach of fiduciary duty against KPMG U.S. and KPMG Belgium (Counts III and IV); and accounting malpractice (Counts V and VI).

   [3] Related cases include a class action against management, the audit committee directors, various KPMG entities and others under the securities fraud laws, as well as suits by the investors in Dictaphone and Dragon. This Court has written several extensive opinions concerning the alleged fraudulent scheme at L&H and the involvement of various persons and entities. Familiarity with the facts set out in those opinions

The complaint alleges the following facts (many of which Defendants dispute).

L&H, a Belgian speech recognition company, has its United States headquarters in Burlington, Massachusetts.  From 1995 to 2000, L&H reported over a 100% rise in revenue and had a stock price of over $70 per share.  L&H suffered a catastrophic fall following the August 2000 revelation that this success was the result of "a systematic and elaborate program of misstatement and overstatement of Company revenue."  (¶¶ 3-6.)  Various members of L&H's management, whom the complaint refers to as the "Breaching Managers," engaged in significant activity to falsely inflate revenue and earnings, including barter transactions, transactions without contracts, and sham transactions with fictitious parties.  (¶¶ 22-23.)

As L&H's auditors, the KPMG Defendants had "continuous and unfettered access" to L&H's financial information and provided extensive consulting services to L&H.  (¶¶ 47, 50.)  On numerous occasions, despite internal e-mails from auditors expressing reservations about L&H's transactions, Defendants allowed L&H to record the revenue in its financial statements.  (¶¶ 51-60, 66.)

---

is assumed.  See, e.g., In re Lernout & Hauspie Sec. Litig., 208 F. Supp. 2d 74 (D. Mass. June 19, 2002); In re Lernout & Hauspie Sec. Litig., 230 F. Supp. 2d 152 (D. Mass. Aug 19, 2002); In re Lernout & Hauspie Sec. Litig., 286 B.R. 33 (D. Mass. Nov. 18, 2002); Bamberg v. Cowen, 236 F. Supp. 2d 79 (D. Mass. Dec. 9, 2002); In re Lernout & Hauspie Sec. Litig., 236 F. Supp. 2d 161 (D. Mass. Jan. 13, 2003).

In addition, Defendants knew that L&H's internal accounting department was "functionally inadequate," but still issued unqualified audit opinions regarding L&H's financial statements. (¶¶ 61-62.)  KPMG performed its audit functions primarily out of its Boston office.  (¶ 97.)

The conduct which gives rise to the asserted $340 million of damages in this case arises from L&H's March 2000 acquisitions of Dictaphone Corp. ("Dictaphone") and Dragon Systems, Inc. ("Dragon").  (¶ 68.)  Despite their knowledge of questionable practices at L&H, Defendants issued an opinion letter certifying L&H's balance sheets and statements of operations for fiscal years 1998 and 1999.  (¶ 69.)  Without these certifications, "L&H would not have been able to complete the acquisitions of Dictaphone and Dragon."  (¶ 71, 94.)  Furthermore, if Defendants had exposed the Breaching Managers' activities to L&H's independent directors, they would have "prevented the dissemination of the false financial information" that was integral to the Dictaphone and Dragon acquisitions.  (¶ 112.)  In order to finance these acquisitions, L&H incurred $340 million in new debt.  (¶ 73.)  Unfortunately, because the company's financial statements were based on an ongoing scheme to falsify revenue, L&H could not possibly have satisfied these new obligations.  (¶ 77.)

Soon after the acquisitions of Dictaphone and Dragon, L&H

entered a downward spiral thanks to a series of <u>Wall Street Journal</u> articles revealing the company's widespread overstatement and fabrication of revenue. (¶ 78.) The articles, which appeared in August and September 2000, triggered both SEC and internal Audit Committee investigations. (¶ 80.) These developments sent the corporation into a "free fall," with the stock price eventually falling below one dollar per share by December 15, 2000. (¶ 84.)

L&H filed for Chapter 11 bankruptcy protection on November 29, 2000, in the United States Bankruptcy Court for the District of Delaware, and soon thereafter it became evident that the corporation could not be reorganized. On March 13, 2001, the United States Trustee appointed an official Committee of Unsecured Creditors. The Plan of Liquidation vests authority to maintain and prosecute claims with a litigation trustee appointed by the Committee of Unsecured Creditors, which on April 2, 2004 appointed plaintiff Baena as litigation trustee. On May 30, 2003, the Bankruptcy Court confirmed L&H's proposed Plan of Liquidation of the Company under Chapter 11, which became effective April 2, 2004. (¶¶ 88-89).

The Litigation Trustee seeks to recover damages from Defendants "including, but not limited to, the incurrence of $340 million of debts that L&H could not possibly repay." (¶ 96.)

### III. DISCUSSION

**A.   Motion to Dismiss Standard**

For purposes of this motion, the Court takes as true "the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor."  Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992) (citing Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990)).  A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6) unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Roeder v. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

**B.   Standing**

Defendants vigorously contest the Trustee's standing under Article III of the Constitution, arguing the corporation suffered no distinct injury from that of the creditors.  Secondly, Defendants argue that the Trustee's claim is barred by the doctrine of in pari delicto.

To have standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).  "The injury alleged must be, for example, distinct and palpable, and not abstract or conjectural or

hypothetical. The injury must be fairly traceable to the challenged action, and relief from the injury must be likely to follow from a favorable decision." Allen, 468 U.S. at 751 (internal citations omitted).

Therefore, in order for the Trustee to have standing, he must allege injuries to L&H itself, and not injuries to third parties, such as L&H's creditors who currently will not be repaid. In re Rare Coin Galleries of Am., Inc., 862 F.2d 896, 901 (1st Cir. 1988) ("The trustee steps into the shoes of the debtor for the purposes of asserting or maintaining the debtor's causes of action, which become property of the estate."). "It is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118-20 (2d Cir. 1991) (citing Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 434 (1972) ("A claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation.")).

To satisfy this requirement of demonstrating an injury to the debtor corporation, the Trustee advances a nascent theory of injury known as "deepening insolvency." The term refers to "fraudulent prolongation of a corporation's life beyond insolvency." See Schacht v. Brown, 711 F.2d 1343, 1350 (7th Cir.

7

1983).  The Trustee argues that L&H, the debtor, suffered a distinct injury by incurring $340 million of additional debt, saddling the company with a burden so large that it could not possibly recover, forcing it, first to enter bankruptcy, and subsequently, to liquidate.  Plaintiffs' theory is based on the contention that Defendants' conduct in certifying inaccurate financial statements allowed L&H to prolong its artificial solvency and to receive more credit, which, under the circumstances, was a detriment rather than a benefit.

As this is a diversity case, the question is whether the alleged theory of injury -- deepening insolvency -- is cognizable under state law, in this case Massachusetts.[4]  Although neither Massachusetts, nor the First Circuit has examined closely the

---

[4] Neither party has questioned that the appropriate state law in this case is that of Massachusetts.  Because this case was transferred from the United States Bankruptcy Court for the District of Delaware, this Court must apply the choice of law rules of Delaware, the original forum state.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 243 n.8 (1981) (noting "where a case is transferred pursuant to 28 U.S.C. § 1404(a), it must apply the choice-of-law rules of the state from which the case was transferred").  In tort cases, Delaware follows the Restatement (Second) of Conflict of Laws, which provides that "the rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties."  Gloucester Holding Corp. v. U.S. Tape and Sticky Prods., LLC, 832 A.2d 116, 124 (Del. Ch. 2003).  Though the sides have not disputed the question, this Court will apply Massachusetts law because the complaint alleges that L&H's U.S. operations were headquartered in Burlington, MA, and because KPMG US performed its audit functions related to this case from its Boston office.  (Compl. ¶¶ 26, 97.)

validity of "deepening insolvency" as a cause of action, other courts have struggled with the theory. See Kittay v. Atlantic Bank of N.Y. (In re Global Serv. Group LLC), 316 B.R. 451, 457-59 (Bankr. S.D.N.Y. 2004) (collecting cases both accepting and rejecting the notion of deepening insolvency as an independent cause of action or a measure of damages for breach of fiduciary duty). See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 349 (3d Cir. 2001) (holding "if faced with issue, the Pennsylvania Supreme Court would determine that 'deepening insolvency' may give rise to a cognizable injury"); Bloor v. Dansker (In re Investors Funding Corp. of New York Sec. Litig.), 523 F. Supp. 533, 541 (S.D.N.Y. 1980) (finding that increased debt encouraged by auditors' negligent conduct was detrimental to the corporation). Cf. Branch v. Ernst & Young, 311 F. Supp. 2d 179, 182 (D. Mass. 2004) (mentioning in passing what the appropriate measure would be for the value of a company in a deepening insolvency case).

The Court need not, however, decide whether the deepening insolvency theory is cognizable under Massachusetts law because Plaintiff's claims are barred by the doctrine of in pari delicto, which "provides that a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim." Id. at 354.

The doctrine of in pari delicto has been recognized by

9

courts in the First Circuit.  *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 28 (1st Cir. 1990) (stating "in the context of one wrongdoer suing a co-conspirator, these [traditional equitable] standards similarly suggest that parties generally *in pari delicto* should be left where they are found.").  *See* *Merrill Lynch v. Nickless (In re Advanced RISC Corp.)*, 324 B.R. 10, 14 (D. Mass. 2005).

While some courts assess the doctrine of *in pari delicto* as an equitable defense, the Second Circuit and courts in the First Circuit have viewed it as a standing issue.  *See* *Breeden v. Kirkpatrick & Lockhart LLP (In re The Bennett Funding Group, Inc.)*, 336 F.3d 94, 99-100, 102 (2d Cir. 2003) (finding that if the *in pari delicto* doctrine applies to the corporation, then the Trustee does not have standing to sue).  This Court assessed the *in pari delicto* doctrine as a standing issue in a recent case arising from the alleged L&H accounting fraud.  *See* *Nisselson v. Lernout*, No. 03-10843-PBS, slip op. at 7 (D. Mass. Aug. 9, 2004) (holding that the litigation trustee for the new company emerging from the bankruptcy proceeding of L&H had no standing to sue for damages which were sustained by shareholders and was barred by the doctrine of *in pari delicto*).  *See also* *Erricola v. Gaudette (In re Gaudette)*, 241 B.R. 491, 500 (Bankr. D.N.H. 1999) (finding that the Trustee lacked standing to sue numerous defendants on grounds that the debtor corporation was a co-conspirator in the

fraud); Goldin v. Primavera Familienstifung, TAG Assocs., Ltd. (In re Granite Partners), 194 B.R. 318, 328 (Bankr. S.D.N.Y. 1996) ("If in pari delicto applies, the trustee cannot sue the third parties for injury that the corporation suffered in connection with the fraudulent scheme."). But see Lafferty, 267 F.3d at 346 ("An analysis of standing does not include an analysis of equitable defenses, such as in pari delicto.").

The parties agree that the Trustee may only bring causes of action which the debtor corporation possessed at the time of the bankruptcy. See Lafferty, 267 F.3d at 356 (rejecting the argument that post-petition events allowed the trustee to bring claims the corporation would not have possessed at the time of bankruptcy); In re Mediators, Inc., 105 F.3d 822, 825-26 (2d Cir. 1997) ("The Bankruptcy Code places a trustee in the shoes of the bankrupt corporation and affords the trustee standing to assert any claims that the corporation could have instituted prior to filing its petition for bankruptcy."); In re Advanced RISC, 324 B.R. at 16 (holding that "the in pari delicto doctrine bars a claim by a bankruptcy trustee where the debtor would have been so barred before the bankruptcy petition was filed"). Therefore, if the in pari delicto doctrine would have barred L&H from bringing a claim against Defendants, then the Trustee is barred as well. See Wagoner, 944 F.2d at 118 (holding that "when a bankrupt corporation has joined with a third party in defrauding its

11

creditors, the trustee cannot recover against the third party for the damage to the creditors.").

Whether L&H could have brought this claim depends on whether the conduct of the Breaching Managers is imputed to the corporation, thus barring the claim by both L&H and the Trustee. The question of imputation is governed by state law, in this case Massachusetts. See In re Bennett Funding, 336 F.3d at 100 ("State law determines whether a right to sue belongs to the debtor in a bankruptcy proceeding."); In re Advanced RISC Corp., 324 B.R. at 14 ("State law determines the circumstances under which the misconduct of corporate actors may be imputed to the corporation.").

The Supreme Judicial Court of Massachusetts has set forth the following governing rule on imputation:

> The general rule is that the knowledge of an officer of the corporation obtained while acting outside the scope of his official duties, in relation to a manner in which he acted for himself and not for the corporation, is not, merely because of his office, to be imputed to the corporation. However, knowledge of officers and directors having substantial control of all activities of a corporation is imputed to the corporation. When all corporate power is exercised by a few who perform misdeeds, knowledge of those misdeeds must be imputed to the corporation.

Demoulas v. Demoulas, 428 Mass. 555, 584-85, 703 N.E.2d 1149, 1170 (Mass. 1998) (internal citations omitted).

In this case, Defendants argue that because the Breaching Managers controlled L&H and perpetrated the fraud which gives

rise to this action, Defendants should not be liable. The Complaint itself catalogues a laundry list of fraudulent activities that inflated L&H's earnings and "caused" the corporation to incur the $340 million of debt. (Compl. ¶¶ 22-43.) In prior securities litigation against the Breaching Managers, the Senior Officers of L&H, this Court detailed the facts alleged. In re Lernout & Hauspie Sec. Litig., 208 F. Supp. 2d 74, 85, 90-91 (D. Mass. 2002) ("Lernout, Hauspie, Bastiaens, and Willaert each exercised control over the decision-making processes of L&H.").

The Plaintiffs do not contest that the Breaching Managers exercised substantial control over L&H's corporate activities. Instead, Plaintiffs argue that the Breaching Managers' actions should fall under the "adverse interest" exception to the in pari delicto doctrine. The "adverse interest" exception states that "a principal is not affected by the knowledge of an agent in a transaction in which the agent secretly is acting adversely to the principal and entirely for his own or another's purposes." Sunrise Props. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C., 425 Mass. 63, 66-67, 679 N.E.2d 540, 543 (Mass. 1997). But, under Massachusetts law, when a senior officer of a corporation who is an agent of the corporation and "who was acting within the scope of his employment when he learned of circumstances that might give rise to a claim against both him

and [the corporation]. . . .under ordinary agency principles," his knowledge is imputed to the corporation.  <u>Id.</u> at 67.

Plaintiffs argue that the Breaching Managers acted adversely to the corporation because their schemes resulted in the corporation incurring detrimental debt.  Plaintiffs also argue that the adverse interest exception applies to the Breaching Managers' conduct because it was concealed from L&H's audit committee and independent directors who could have prevented the malfeasance had they known of it.  However, Plaintiffs do not argue that the Breaching Managers acted to loot the corporation, but rather to "falsely and artificially inflate[] L&H's revenues and earnings."  (Compl. ¶22.)  Courts have been loath to apply the adverse interest exception in the context of fraud to increase the value of the corporation.  <u>See</u> <u>In re Bennett Funding</u>, 336 F.3d at 100-01 (finding that <u>in pari delicto</u> applied to a case where managers were engaged in fraud to boost value of the corporation); <u>Cenco, Inc. v. Seidman & Seidman</u>, 686 F.2d 449, 454 (7th Cir. 1982) (finding that far-reaching fraud by management designed to increase stock price and earnings could be imputed to the corporation and that responsibility should not be shifted to the auditor).  Furthermore, the case does not resemble paradigmatic cases that have applied the adverse interest exception because agents were engaged in a fraud solely for their own benefit.  <u>See</u> <u>Union Old Lowell Nat'l Bank v. Paine</u>, 318 Mass.

313, 324, 61 N.E.2d 666, 672 (Mass. 1945) (applying adverse interest exception when a bank employee secretly invested customers' bonds in a speculative scheme without the knowledge of the bank).

Plaintiffs argue that any actions by L&H management which contributed to the artificial prolongation of L&H's existence and the incurrence of debts it could not repay must be adverse to the interests of the company.  See Schacht, 711 F.2d at 1348.

However, recognition of the theory of deepening insolvency need not eviscerate the long-standing doctrine of in pari delicto, which prevents the corporation from recovering damages due to a fraud of its own making.  See Lafferty, 267 F.3d at 359-60 (finding that in pari delicto bars a claim of deepening insolvency when those who controlled the corporation perpetrated the underlying fraud).  Even when all reasonable inferences are drawn in favor of plaintiff, the adverse interest exception, styled in Massachusetts as action taken "entirely for [the agent's] own or another's purposes," is inapplicable.  There is no allegation in the complaint that the Breaching Managers engaged in the fraud exclusively to further their own purposes, but rather to boost L&H's revenues and value.

Plaintiffs argue that because the corporation is publicly traded it should be exempted from the in pari delicto doctrine.  True, the Defendants' duties under the Securities Exchange Act

15

required them to inform the L&H audit committee of any possible illegal acts, and they failed to do so. See 15 U.S.C. § 78j-1(b)(1)(B) (2000); SEC v. Solucorp. Indus. Ltd., 197 F. Supp. 2d 4, 10 (S.D.N.Y. 2002). However, this federal statutory duty, enforceable by the SEC, does not purport to give the corporation a cause of action under state law when its inside managers were complicit in the fraud.

Plaintiffs insist that because the Breaching Managers' fund was allegedly concealed from L&H's audit committee and its independent directors, the fraud should not be imputed to the corporation. They argue that there has never been a case where in pari delicto has been applied in the context of publicly traded corporation with outside directors and an outside audit committee. They find support for that argument in In re Agribiotech, No. 02-0537, 2005 U.S. Dist. LEXIS 6466, at *39-42 (D. Nev. Apr. 1, 2005), which barred a bankrupt corporation's complaint against an accounting firm because the trustee failed to submit evidence of outside directors who were both unaware of the fraud and capable of stopping it had they been aware. This dicta suggests, plaintiffs argue, that a public corporation should be disaggregated, and that the doctrine of in pari delicto should be inappplicable when the inside directors are involved in the fraud but the audit committee and independent outside directors are not. The In re Agribiotech court explicitly did

16

not reach the question of whether the doctrine of <u>in pari delicto</u> would apply if independent directors existed who could have stopped the fraud.  <u>Id.</u> at *40.

Furthermore, that independent directors existed does not obviate that the Breaching Managers controlled the corporation, perpetrated the fraud, and, in the words of the complaint, "caused" the $340 million of additional debt to be incurred.  As such, the corporation cannot sustain a claim against Defendants arising out of its own misdeeds.  See <u>In re Bennett Funding</u>, 336 F.3d at 101 (applying doctrine of <u>in pari delicto</u> even though corporation had independent directors because the managers perpetrated the fraud and controlled the corporation's activities); <u>Lafferty</u>, 267 F.3d at 360 (applying the doctrine of <u>in pari delicto</u>, noting that "the possible existence of any innocent independent directors does not alter the fact that the [managers] controlled and dominated the Debtors.").  Furthermore, this Court recently applied the doctrine of <u>in pari delicto</u> to a publicly traded corporation in connection with the L&H fraud.  See <u>Nisselson</u>, No. 03-10843-PBS, slip op. at 9 (applying the doctrine of <u>in pari delicto</u> against a publicly traded subsidiary of L&H).

Plaintiffs cite a non-precedential Massachusetts Superior Court case for the contention that even if knowledge of the fraud is imputed to the corporation, claims under Chapter 93A, of

17

accounting fraud, and professional malpractice against Defendants may still be sustained.  See Young v. Deloitte & Touche, LLP, 18 Mass.L.Rptr. 287, at *31 (Mass. Super. 2004) ("To this Court, the rub is that, despite NutraMax's imputed knowledge of what its Officers may have been doing. . .Deloitte nevertheless provided unqualified audits for each of the four fiscal years from 1995 to 1998.").  However, that case did not address the doctrine of in pari delicto.  Rather, the court rejected the argument that there were insufficient allegations of causation and reliance.  Id.

In sum, the complaint alleges that because the Defendants failed to expose the fraud by those controlling the Plaintiff corporation, and the fraud succeeded, the Defendants should bear responsibility for the Breaching Managers' fraud.  Such a result is inconsistent with the doctrine of in pari delicto.[5]

---

[5] While plaintiffs allege a fraudulent scheme, which KPMG asserted, they also assert claims of accounting malpractice and aiding and abetting a breach of fiduciary duty.  Many courts have held that the doctrine applies to these claims as well.  See, e.g., Lafferty, 267 F.3d at 345-46, 360; Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1094 (2d Cir. 1995) (holding that the doctrine of in pari delicto precluded debtor from asserting professional malpractice claim); In re Advanced RISC Corp., 324 B.R. at 16 (applying defense of in pari delicto to negligence claim).  Moreover, both causes of action are governed by a three-year statute of limitations and thus are time-barred.  See Bamberg, 236 F. Supp. 2d at 85.

**ORDER**

The Court **ALLOWS** the motion to dismiss. (Docket Nos. 38 & 41).

                                                **S/PATTI B. SARIS**
                                                United States District Judge